**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| RAI STRATEGIC HOLDINGS, INC. AND R.J. REYNOLDS VAPOR COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA INC.; and PHILIP MORRIS PRODUCTS S.A.<br><br>Defendants. | Case No. 1:20-cv-00393-LO-TCB |
| ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA INC.; and PHILIP MORRIS PRODUCTS S.A.<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>RAI STRATEGIC HOLDINGS, INC. AND R.J. REYNOLDS VAPOR COMPANY<br><br>Counterclaim Defendants. |  |

## DEFENDANTS ALTRIA CLIENT SERVICES LLC AND PHILIP MORRIS USA INC.'S PARTIAL ANSWER TO COMPLAINT AND COUNTERCLAIMS

Altria Client Services LLC ("ACS") and Philip Morris USA Inc. ("PM USA") respectfully submit their Partial Answer in response to Plaintiffs RAI Strategic Holding, Inc. ("RAI") and R.J. Reynolds Vapor Company's ("RJRV") (collectively, "RJR") Complaint. To the extent not specifically admitted herein, the allegations of the Complaint are denied, including any allegations contained in the headings of the Complaint.

## INTRODUCTION AND PRELIMINARY STATEMENT OF ACS AND PM USA

RJR appears to have brought this action in the hopes of stopping the innovative IQOS heated tobacco system, which has a proven track record in switching smokers away from combustible cigarettes, from disrupting its core business in combustible cigarettes and overtake its secondary line of e-vapor products.  Having failed to develop a competing offering in the heated tobacco space, RJR apparently now seeks to block that space in its entirety by bringing this meritless litigation.  But in its haste to do so, RJR has overlooked the fact that its own line of e-vapor products (which are far less effective in switching smokers away from combustible cigarettes than IQOS) infringe multiple patents owned by ACS and PM USA.

ACS and PM USA have a strong legacy of leadership in traditional tobacco products, with profitable premium products and iconic brands, including Marlboro, Benson & Hedges, Parliament, and Virginia Slims.  While ACS and PM USA will continue to lead in traditional tobacco products, ACS and PM USA recognize that adult preferences are changing.  Thus, ACS and PM USA partnered with co-defendant Philip Morris Products S.A. ("PMP") to commercialize IQOS, a product that heats rather than burns tobacco to produce an aerosol instead of smoke (known as a "Heat-Not-Burn" or "HNB" product) in the United States.  ACS and PM USA have also amassed a substantial portfolio of intellectual property, covering numerous innovations relating to smoke-free technologies, including both heated tobacco and e-vapor products.

PMP first launched IQOS in select cities in Italy and Japan in 2014.  It is now sold in over 50 countries throughout the world.  To date, over 10.6 million smokers have switched to IQOS and given up smoking for good.  This number is growing daily.  PMP conducted 10 clinical studies on IQOS and published over 340 peer-reviewed articles on reduced risk products.  There are also

over 30 independent studies corroborating PMP's findings with respect to IQOS.  Among the findings: IQOS produces an aerosol with 90 to 95% less toxins than cigarette smoke.

In 2019, after a lengthy review, the United States Food and Drug Administration ("FDA") granted PMP's request for a pre-market authorization to commercialize IQOS through PM USA in the United States.  In granting that request, the FDA determined that marketing IQOS "would be appropriate for the protection of the public health."  To date, no other HNB or e-vapor product has received such an authorization.

Apparently concerned by the commercial threat posed by IQOS, RJR is now attempting to stop IQOS with this case.  But in its haste to stop IQOS, RJR committed two fatal errors.  First, it asserted meritless patent claims.  Second, it overlooked the fact that its own e-vapor products infringe multiple patents owned by ACS, PM USA and co-defendant PMP.  ACS and PM USA thus respond to RJR's Complaint and bring counterclaims to recover the considerable damages flowing from RJR's infringement.

## RESPONSES TO THE SPECIFIC ALLEGATIONS OF COMPLAINT

### THE PARTIES

1.      ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 1 of the Complaint and, on that basis, deny them.

2.      ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 2 of the Complaint and, on that basis, deny them.

3.      ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 3 of the Complaint and, on that basis, deny them.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 8 of the Complaint and, on that basis, deny them.

9.      ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 9 of the Complaint and, on that basis, deny them.

10.      ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 10 of the Complaint and, on that basis, deny them.

## JURISDICTION AND VENUE

11.      Paragraph 11 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the Complaint purports to be an action arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, but ACS and PM USA deny that there is any legal or factual basis for such action.

12.      Paragraph 12 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit for purposes of this action only that this Court has personal jurisdiction over it.  ACS and PM USA otherwise deny the allegations in paragraph 12 of the Complaint.

13.      Paragraph 13 contains legal conclusions to which no answer is required.  ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 13 of the Complaint and, on that basis, deny them.

14.      Paragraph 14 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit for purposes of this action only that venue exists in this District for the claims against ACS and PM USA pursuant to 28 U.S.C. §§ 1391 and

1400(b).  ACS and PM USA otherwise deny the allegations of paragraph 14 of the Complaint relating to ACS and PM USA.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 14 of the Complaint and, on that basis, deny them.  ACS and PM USA specifically denies the allegations of paragraph 14 of the Complaint relating to ACS and PM USA's alleged infringement of any patents.

15.    ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 15 of the Complaint and, on that basis, deny them.

## FACTUAL BACKGROUND

**THE ASSERTED PATENTS**

16.    In lieu of responding to the allegations in paragraph 16, ACS and PM USA have filed a motion to dismiss concurrently with this Partial Answer directed to the allegations of this paragraph.

17.    In lieu of responding to the allegations in paragraph 17, ACS and PM USA have filed a motion to dismiss concurrently with this Partial Answer directed to the allegations of this paragraph.

18.    The Court has stayed Plaintiff's Counts Three, Four, and Five pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will provide a response at the appropriate time when the stay is lifted.

19.    The Court has stayed Plaintiff's Counts Three, Four, and Five pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will provide a response at the appropriate time when the stay is lifted.

20.    The Court has stayed Plaintiff's Counts Three, Four, and Five pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will provide a response at the appropriate time when the stay is lifted.

21.     The Court has stayed Plaintiff's Counts Three, Four, and Five pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will provide a response at the appropriate time when the stay is lifted.

22.     The Court has stayed Plaintiff's Counts Three, Four, and Five pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will provide a response at the appropriate time when the stay is lifted.

23.     The Court has stayed Plaintiff's Counts Three, Four, and Five pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will provide a response at the appropriate time when the stay is lifted.

24.     ACS and PM USA admit that the face of U.S. Patent No. 10,492,542 ("the '542 patent") states that it is titled "Smoking articles and use thereof for yielding inhalation materials." ACS and PM USA further admit that the face of the '542 patent states that it issued on December 3, 2019 and that it includes two independent claims.  ACS and PM USA admit that Plaintiffs have quoted claim 1 of the '542 patent in paragraph 24 of the Complaint.  ACS and PM USA otherwise deny the allegations in paragraph 24 of the Complaint.

**THE ACCUSED PRODUCTS**

25.     ACS and PM USA admit that the IQOS system includes an electrically powered device that comprises a holder and a charger, and a disposable tobacco unit.  ACS and PM USA otherwise deny the allegations in paragraph 25 of the Complaint.

26.     Paragraph 26 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that PM USA imports and sells after importation certain IQOS systems into the United States.  ACS and PM USA admit that PM USA oversees the stores in Atlanta, Georgia and in this District at 3402 W. Cary St. in the Carytown district of Richmond, Virginia that offer to sell and sell certain IQOS systems and disposable

tobacco units.  ACS and PM USA further admit that some of the packaging for the IQOS device that it sells in the United States recites:  "Manufactured for Philip Morris USA, Richmond VA. Made in Malaysia," and that some of the packaging for the tobacco unit states:  "Mfd. for Philip Morris USA, Richmond, VA.  Made in Italy."  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 26 of the Complaint and, on that basis, deny them.

27.     Paragraph 27 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the IQOS holder, into which the tobacco unit is placed, heats the tobacco via a heating blade.  ACS and PM USA admit the adult consumer pushes a button to turn on the heating unit.  ACS and PM USA further admit the holder includes a battery and supplies heat to the tobacco unit via the heating blade for six minutes or 14 puffs, whichever comes first.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 27 of the Complaint and, on that basis, deny them.

28.     Paragraph 28 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the IQOS system's tobacco unit is designed for heating, not for burning or smoking, and contains a processed tobacco plug.  ACS and PM USA admit the tobacco plug is made from tobacco leaves, which are ground and formed into tobacco sheets, called cast-leaf.  ACS and PM USA further admit the adult consumer draws on the tobacco unit to inhale a nicotine containing aerosol.  ACS and PM USA admit that the tobacco unit is available in different flavors, including regular and menthol flavors.  ACS and PM USA further admit that the tobacco unit is sometimes referred to as a HeatStick or Marlboro

HeatStick.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 28 of the Complaint and, on that basis, deny them.

29.     Paragraph 29 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the IQOS device includes a charger for charging the holder and is sold with an AC power adaptor for recharging the charger.  ACS and PM USA further admit that the charger contains its own battery that charges the holder.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 29 of the Complaint and, on that basis, deny them.

30.     Paragraph 30 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the holder, tobacco unit, and the charger are authorized by the FDA for use as part of the IQOS system.  ACS and PM USA specifically deny the allegations of paragraph 30 of the Complaint relating to ACS and PM USA's alleged infringement of the Asserted Patents.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 30 of the Complaint and, on that basis, deny them.

31.     Paragraph 31 contains legal conclusions to which no answer is required.  ACS and PM USA specifically deny the allegations of paragraph 31 of the Complaint relating to ACS and PM USA's alleged infringement of the Asserted Patents.

32.     Paragraph 32 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that PM USA sells the charger, holder, tobacco unit, and a cleaner.  ACS and PM USA further admit that the tobacco units are sold separately in, for example, packs of 20.  ACS and PM USA are without knowledge or information

sufficient to admit or deny the remaining allegations in paragraph 32 of the Complaint and, on that basis, deny them.

33.     Paragraph 33 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that PM USA offers for sale and sells the IQOS device with a User Guide and Quick Start Guide.  ACS and PM USA specifically deny any allegations related to infringement of the Asserted Patents.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 33 of the Complaint and, on that basis, deny them.

34.     ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 34 of the Complaint and, on that basis, deny them.

35.     Paragraph 35 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit the adult consumer inserts the tobacco unit into the holder, which contains an electronically controlled heater.  ACS and PM USA admit the adult consumer pushes a button to turn on the heater, and then draws on the tobacco unit to inhale a nicotine containing aerosol.  ACS and PM USA admit the tobacco units respond to the warming of the heat blade inside the holder, which heats the tobacco, and that the tobacco reaches a temperature below 350°C, which is a high enough temperature to release a nicotine-containing aerosol without burning the tobacco.

36.     ACS and PM USA admit that ACS is licensed to distribute, offer to sell, and sell the IQOS system and the corresponding tobacco sticks in the U.S. and that PM USA has submitted purchase orders to Philip Morris Products S.A. for certain IQOS systems since at least October 2019.  ACS and PM USA deny the remaining allegations of paragraph 36.

37.     ACS and PM USA admit that PM USA is licensed to distribute, offer to sell, and sell the IQOS system and the corresponding tobacco sticks in the U.S. and that PM USA has submitted purchase orders to Philip Morris Products S.A. for certain IQOS systems since at least October 2019.  ACS and PM USA further admit that some of the packaging for the IQOS device that it sells in the United States recites:  "Manufactured for Philip Morris USA, Richmond VA.  Made in Malaysia," and that some of the packaging for the tobacco unit states:  "Mfd. for Philip Morris USA, Richmond, VA.  Made in Italy."  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 37 of the Complaint and, on that basis, deny them.

38.     ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 38 of the Complaint and, on that basis, deny them.

39.     Paragraph 39 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that Philip Morris Products S.A. prosecuted PMTAs with the FDA seeking approval to offer for sale and sell the IQOS system in the United States, and that ACS and PM USA consulted with Philip Morris Products S.A. in preparation of certain aspects of a PMTA.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 39 of the Complaint and, on that basis, deny them.

**THE IMPORTATION, SALE, OFFER FOR SALE, AND DISTRIBUTION OF IQOS DEVICES**

40.     ACS and PM USA admit that, on or around May 24, 2017, Philip Morris Products S.A. prosecuted PMTAs with the FDA seeking approval to offer for sale and sell the IQOS system in the United States, and that ACS and PM USA consulted with Philip Morris Products S.A. in preparation of certain aspects of a PMTA.  ACS and PM USA are without knowledge or

information sufficient to admit or deny the remaining allegations in paragraph 40 of the Complaint and, on that basis, deny them.

41.    Admitted

42.    Paragraph 42 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that PM USA has submitted purchase orders to Philip Morris Products S.A. for certain IQOS systems since at least October 2019.

43.    Paragraph 43 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the IQOS system is manufactured by third parties outside the United States.  ACS and PM USA admit that PM USA imports and sells certain IQOS products in the United States.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 43 of the Complaint and, on that basis, deny them.

**DEFENDANTS KNOW OF THE ASSERTED PATENTS, KNOW AND SPECIFICALLY INTEND THAT THE IQOS PRODUCTS INFRINGE THE ASSERTED PATENTS, AND KNOW THAT THE IQOS PRODUCTS ARE ESPECIALLY MADE OR ESPECIALLY ADAPTED FOR USE IN INFRINGING THE ASSERTED PATENTS**

44.    Paragraph 44 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that the face of U.S. Patent No. 10,123,566 and U.S. Design Patent No. D844,221 list U.S. Patent No. 8,314,591 ("the '591 patent"); the face of U.S. Design Patent No. D844,221 and U.S. Patent No. 10,258,087 list U.S. Patent No. 7,726,320 ("the '320 patent"); and the face of U.S. Patent No. 10,278,424 lists U.S. Patent No. 9,078,473. ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 44 of the Complaint and, on that basis, deny them.

45.    Denied.

46.    Denied.

## COUNTS ONE AND TWO

47-66.  In lieu of responding to the allegations in paragraphs 47-66, ACS and PM USA have filed a motion to dismiss concurrently with this Partial Answer directed to the allegations of these paragraphs.

## COUNTS THREE THROUGH FIVE

67-96.  The Court has stayed Counts Three, Four, and Five of the Complaint under 28 U.S.C. § 1659.  *See* Dkt. 27.  ACS and PM USA will respond to these counts at the appropriate time when the stay is lifted.

## COUNT SIX

97.  ACS and PM USA re-allege, adopt, and incorporate by reference the allegations included within paragraphs 1 through 96 as if fully set forth herein.

98.  ACS and PM USA are without knowledge or information sufficient to admit or deny the allegations in paragraph 98 of the Complaint and, on that basis, deny them.

99.  Paragraph 99 contains legal conclusions to which no answer is required.  To the extent an answer is required, ACS and PM USA admit that PM USA imports and sells certain IQOS products in the United States.  ACS and PM USA are without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 99 of the Complaint and, on that basis, deny them.

100.  Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

101.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

102.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

103.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

104.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

105.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original

patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

106.   Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

## RESPONSE TO PRAYER FOR RELIEF

107.   ACS and PM USA deny that Plaintiffs are entitled to any relief sought in its Complaint or any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without altering any applicable burdens of proof or burdens of persuasion, ACS and PM USA assert the following defenses to the Complaint and reserves its right to assert additional defenses.

## FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

ACS and PM USA do not and have not infringed any valid, enforceable, asserted claim of the Asserted Patents, either literally or under the doctrine of equivalents, under any theory of infringement.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and 116, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel and Disclaimer)

Plaintiffs are barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Asserted Patents or related patent applications, from asserting any interpretation of any valid, enforceable claim of the Asserted Patents that would be broad enough to cover any Accused Product alleged to infringe the Asserted Patents, either literally or under the doctrine of equivalents.

## FOURTH AFFIRMATIVE DEFENSE

### (Equitable Defenses)

Plaintiffs' attempted enforcement of the Asserted Patents against ACS and PM USA is barred by one or more of the equitable doctrines, such as estoppel, acquiescence, waiver, and unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

Plaintiffs' claims for damages are statutorily limited or barred by 35 U.S.C. §§ 286 and/or 287.

## SIXTH AFFIRMATIVE DEFENSE

### (Preclusion of Costs)

Plaintiffs are barred under 35 U.S.C. § 288 from recovering costs associated with its action.

## SEVENTH AFFIRMATIVE DEFENSE

### (No Injunctive Relief)

Plaintiffs are not entitled to injunctive relief as they have, at a minimum, an adequate remedy at law upon any finding of infringement and have not suffered any irreparable injury.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Willfulness)

Plaintiffs are barred from obtaining a finding of willfulness or receiving enhanced damages because they have not alleged that ACS and PM USA engaged in reprehensible conduct, and ACS and PM USA have engaged in no such conduct, which is a prerequisite for a willfulness finding and an award of enhanced damages.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted, for at least the reasons described in the Motion to Dismiss filed in this action.

## RESERVATION OF RIGHTS

ACS and PM USA hereby reserve the right to amend its Partial Answer and reserves all defenses set out in Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, which become applicable after the substantial completion of discovery or otherwise in litigation.

## COUNTERCLAIMS

Counterclaim Plaintiffs Altria Client Services LLC ("ACS") and Philip Morris USA, Inc. ("PM USA") (collectively, "Counterclaim Plaintiffs") hereby counterclaim and allege against Counterclaim Defendants R.J. Reynolds Vapor Company ("RJRV") and RAI Strategic Holdings, Inc. ("RAI") (collectively, "RJR" or "Counterclaim Defendants") as follows:

## NATURE OF THE ACTION

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to (i) address infringement and obtain damages resulting from RJRV's

unauthorized making, using, sale, offer for sale, and/or importation into the United States through its infringing "VUSE" e-vapor products; and (ii) obtain a declaration that Counterclaim Defendants' asserted patents are invalid and not infringed.

2.     ACS and PM USA hold patents on innovative e-vapor technologies, including inventions covered by U.S. Patent Nos. 6,803,545 ("the '545 patent") and 10,420,374 ("the '374 patent") (collectively, "the ACS and PM USA Asserted Patents").

3.     RJRV, without authorization, makes, imports, uses, offers for sale, and/or sells a line of "VUSE" e-vapor products, including the VUSE ALTO, VUSE SOLO, VUSE CIRO, and VUSE VIBE Power Units and associated "Flavor Packs" (which RJRV also refers to as "cartridges," "tanks," and "pods") (collectively, "the Accused VUSE Vapor Products") that infringe the ACS and PM USA Asserted Patents.  *See* https://vusevapor.com.  RJRV provides the Accused VUSE Vapor Products in a kit containing a VUSE Power Unit, USB charger, and one or more Flavor Packs.  RJRV also provides the VUSE Power Unit and USB charger without any Flavor Packs.  The Flavor Packs are also sold separately, for example, in packages containing only Flavor Packs.

4.     Counterclaim Defendants have incorrectly alleged that ACS and PM USA infringe U.S. Patent Nos. 8,314,591 ("the '591 patent"); 9,814,268 ("the '268 patent"); and 10,492,542 ("the '542 patent") (collectively, "the RJR Asserted Patents").  ACS and PM USA do not infringe any valid, enforceable, asserted claim of the RJR Asserted Patents.  ACS and PM USA therefore seek a declaration that the asserted claims of the RJR Asserted Patents are invalid and not infringed.  In addition, Counterclaim Defendants have asserted U.S. Patent Nos. 9,839,238; 9,901,123; and 9,930,915, which have been stayed pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.

## PARTIES

5.      RAI is a North Carolina corporation with its principal place of business located at 401 North Main Street, Winston-Salem, North Carolina 27101.  Upon information and belief, RAI is a wholly-owned subsidiary of Reynolds American Inc., which in turn is a wholly-owned subsidiary of British American Tobacco plc, a publicly-traded company on the London Stock Exchange headquartered in London, England.

6.      RJRV is a North Carolina corporation with its principal place of business located at 401 North Main Street, Winston-Salem, North Carolina 27101.  Upon information and belief, RJRV is a wholly-owned subsidiary of Reynolds American Inc., which in turn is a wholly-owned subsidiary of British American Tobacco plc, a publicly-traded company on the London Stock Exchange headquartered in London, England.

7.      ACS is a Virginia corporation with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

8.      PM USA is a Virginia Corporation with its principal place of business at 6601 West Broad Street, Richmond, Virginia 23230.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the Patent Act of the United States, 35 U.S.C. § 1, *et seq.*

10.      Personal jurisdiction is proper in this Court over Counterclaim Defendants at least because Counterclaim Defendants have consented to the Court's jurisdiction by filing the Complaint in this Court, and because, on information and belief, Counterclaim Defendants have engaged in infringing acts in this jurisdiction.

11.     Venue is proper at least because Counterclaim Defendants have consented to venue through their filing of this lawsuit in this Court, pursuant to 28 U.S.C. §§ 1391 and 1400.

12.     In their Complaint, Counterclaim Defendants allege that ACS and PM USA infringe the RJR Asserted Patents.  ACS and PM USA deny that they infringe any valid, enforceable, asserted claim of the '542 patent and have moved to dismiss the remaining RJR Asserted Patents.  An actual controversy has thus arisen and now exists between ACS, PM USA, and the Counterclaim Defendants.

## THE ACS AND PM USA ASSERTED PATENTS

13.     The '545 patent is entitled "Electrically Heated Smoking System and Methods for Supplying Electrical Power from a Lithium Ion Power Source," and issued on October 12, 2004. PM USA owns the entire right, title, and interest in and to the '545 patent.  A true and accurate copy of the '545 patent is attached as Exhibit A.

14.     The '374 patent is entitled "Electronic Smoke Apparatus," and issued on September 24, 2019.  ACS owns the entire right, title, and interest in and to the '374 patent.  A true and accurate copy of the '374 patent is attached as Exhibit B.

15.     The allegations provided below are exemplary and without prejudice to ACS and PM USA's infringement contentions that will be provided pursuant to the Court's scheduling order and local civil rules.  In providing these allegations, ACS and PM USA do not convey or imply any particular claim construction or the precise scope of the claims of the ACS and PM USA Asserted Patents.  ACS and PM USA's proposed claim constructions will be provided pursuant to the Court's scheduling order and local civil rules.

16.     As detailed below, each element of at least one claim of each of the ACS and PM USA Asserted Patents is literally present in the Accused Products.  To the extent that any claim

element is not literally present in the Accused Vuse Vapor Products, each such element is present under the doctrine of equivalents.

## COUNTERCLAIM I: INFRINGEMENT OF U.S. PATENT NO. 6,803,545 (AGAINST RJRV)

17.     Counterclaim Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 to 16 as though fully set forth herein.

18.     RJRV has directly and indirectly infringed, and continue to infringe, one or more claims of the '545 patent, including claim 1, both literally and under the doctrine of equivalents, by making, using, importing, selling, and/or offering to sell in the United States without authority, at least the VUSE ALTO, VUSE SOLO, and VUSE VIBE, together with their associated Flavor Packs (collectively, "the '545 Accused Products"), in violation of 35 U.S.C. § 271.

19.     Claim 1 recites an "electrically heated smoking system comprising."  The '545 Accused Products comprise an electrically heated smoking system.  For example, as shown in the screenshots from their website reproduced below, RJRV describes its VUSE ALTO product as an "e-cig" to provide a customized "vaping experience."  RJRV further states that "Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist."  A picture of an assembled VUSE ALTO product is shown below.  The bottom portion ("Power Unit") of the VUSE ALTO includes a battery that supplies power to the top portion ("Flavor Pack").  The Flavor Pack of the VUSE ALTO product includes a heating element that electrically heats liquid in a reservoir to generate smoke.





# Alto Complete Kit

Power Unit + 2 Flavor Pods

$19.98

★★★★★ | 88 Reviews
**Device Color:** Silver

**Nicotine Level:**

| 1.8% | 2.4% | **5.0%** |

**Flavor:**

Golden Tobacco

**Qty**

1

**ADD TO CART**

Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync with your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

• All-in-One Device
• Powerful 350mAh Battery
• 1.8%, 2.4%, and 5.0% Nicotine Options
• 1.8 mls of e-Liquid
• Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (highlighting in yellow)



https://vusevapor.com/faqs (highlighting in yellow)



20.     Claim 1 recites "at least one electrical resistance heating element."  The '545 Accused Products comprise at least one electrical resistance heating element.  For example, the image below shows a heating element in a VUSE ALTO product.  The heating element includes electrical contacts and converts electrical energy to heat.



21.     Claim 1 recites "a lithium ion power source electrically connected to the at least one electrical resistance heating element."  The '545 Accused Products comprise a lithium ion power source electrically connected to the at least one electrical resistance heating element.  For example, the image below shows a lithium ion battery in a VUSE ALTO.  The lithium ion battery of the VUSE ALTO is electrically connected to the heating element.



22.     Claim 1 recites "a controller to control a flow of modulated pulses of electrical power from the lithium ion power source to the at least one electrical resistance heating element to prevent damage to the lithium ion power source."  The '545 Accused Products comprise a controller to control a flow of modulated pulses of electrical power from the lithium ion power source to the at least one electrical resistance heating element to prevent damage to the lithium ion power source.  For example, the image below shows a lithium ion battery in the VUSE ALTO, along with a printed circuit board that includes a controller.  On information and belief, the controller controls the flow of electrical power from the battery to the heating element.



23.    For example, the image below shows modulated pulses of electrical power delivered from the lithium ion battery to the heating element of the VUSE ALTO.  The controller controls, among other things, the modulated pulses delivered to the VUSE ALTO heater and prevents damage to the lithium ion battery through this control.



24

24.     The VUSE SOLO and VIBE do not differ materially from the VUSE ALTO with respect to infringement of the '545 patent and, therefore, infringe the '545 patent for the reasons described above.

25.     RJRV also actively, knowingly, and intentionally induces infringement of one or more claims of the '545 patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, offer for sale, sell, and/or import the '545 Accused Products, in this judicial district and elsewhere in the United States.  RJRV has been aware of the '545 patent at least as of June 29, 2020.  With this knowledge, on information and belief, RJRV continues to actively encourage, instruct, and promote the use of the '545 Accused Products by adult consumers in the United States, with knowledge that the induced acts constitute direct infringement of the '545 patent.  For example, RJRV posts marketing materials on its website (vusevapor.com) and provides instructions with the '545 Accused Products.  *See, e.g.*, http://vusevapor.com/faqs; Instruction Card Included in '545 Accused Products' Packaging (directing users to "Charge Unit," "Attach Pod/Cartridge/Tank," and "Vape & Enjoy!").  By at least these affirmative acts, RJRV actively encourages use of the '545 Accused Products, that results in direct infringement of the '545 patent in the United States, with the specific intent to induce, or was at a minimum willfully blind of inducing, infringement of the '545 patent.

26.     On information and belief, RJRV knowingly and intentionally contributes to the infringement of one or more claims of the '545 patent under 35 U.S.C. § 271(c).  For example, adult consumers directly infringe one or more claims of the '545 patent in the United States as alleged above.  RJRV has been aware of the '545 patent since at least June 29, 2020.  On information and belief, RJRV continues to offer for sale and sell in the United States the '545 Accused Products (such as Flavor Packs and Power Units) that are material components of the

patented invention, are especially made and/or especially adapted for use to infringe the '545 patent, are not a staple article of commerce suitable for substantial non-infringing use, and have no substantial non-infringing uses, and RJRV does so knowing or should have known that such products are especially made or especially adapted for use in infringement of the '545 patent.

27.     Counterclaim Plaintiffs have suffered and continue to suffer damages as a result of RJRV's infringement of the '545 patent.

## COUNTERCLAIM II: INFRINGEMENT OF U.S. PATENT NO. 10,420,374 (AGAINST RJRV)

28.     Counterclaim Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 to 27 as though fully set forth herein.

29.     RJRV has directly and indirectly infringed, and continue to infringe, one or more claims of the '374 patent, including claim 1, both literally and under the doctrine of equivalents, by making, using, importing, selling, and/or offering to sell in the United States without authority, at least the VUSE SOLO, ALTO, VIBE, CIRO, together with their associated Flavor Packs (collectively, "the '374 Accused Products"), in violation of 35 U.S.C. § 271.

30.     Claim 1 recites an "electronic vaping device comprising."  The '374 Accused Products comprise an "electronic vaping device."  For example, as shown in the screenshots from their website reproduced below, RJRV describes its VUSE SOLO product as an "e-cig" that provides adult consumers with a "vaping experience."



[https://vusevapor.com/solo-complete-kit](https://vusevapor.com/solo-complete-kit) (highlighting in yellow)

31.     Claim 1 recites "a puff sensor assembly."  The '374 Accused Products include a puff sensor assembly.  For example, as shown below, the VUSE SOLO comprises a circuit board assembly with a puff sensor.  The images below show the front and back of the circuit board.

27



32.     Claim 1 recites "a controller."  The '374 Accused Products include a controller. For example, as shown below, the VUSE SOLO includes a controller, Atmel ATtiny84, shown in the red box below.



33.    Claim 1 recites "a metal casing."  The '374 Accused Products include a metal casing.  For example, as shown below, the Accused VUSE SOLO includes a metal casing that holds the puff sensor assembly.



34.    Claim 1 recites "a capacitor arranged in the metal casing and connected to the controller."  The '374 Accused Products include a capacitor arranged in the metal casing and connected to the controller.  For example, as shown below, the Accused VUSE SOLO includes a capacitor, which is connected to the controller.



35.    For example, a schematic diagram of the VUSE SOLO's puff sensor shows a capacitor connected to a controller.



36.    Claim 1 recites "a flexible conductive membrane and a rigid conductive plate spaced apart by an insulating ring spacer between the flexible conductive membrane and the rigid conductive plate." The '374 Accused Products include a flexible conductive membrane and a rigid conductive plate spaced apart by an insulating ring spacer between the flexible conductive membrane and the rigid conductive plate. For example, as shown in the below pictures, the

Accused VUSE SOLO includes a flexible conductive membrane and a rigid conductive plate spaced apart by an insulating ring spacer.





37.     Claim 1 recites "an air dielectric between the flexible conductive membrane and the rigid conductive plate."  On information and belief, the '374 Accused Products include an air dielectric between the flexible conductive membrane and the rigid conductive plate.  For example, in the below diagram, the Accused VUSE SOLO includes an air dielectric between the membrane and the plate.



38.    Claim 1 recites "the flexible conductive membrane is configured to deform in response to airflow through the electronic vaping device."  On information and belief, the '374 Accused Products include a flexible conductive membrane configured to deform in response to airflow through the electronic vaping device.  For example, the Accused VUSE SOLO includes a flexible conductive membrane configured to deform based on a drawing action or a blowing action by an adult consumer through the electronic vaping device.



39.     Claim 1 recites "the puff sensor assembly is configured to sense rate and direction of the airflow through the electronic vaping device."  The '374 Accused Products include a puff sensor assembly configured to sense rate and direction of airflow through the electronic vaping device.  For example, as shown below, the Accused VUSE SOLO includes an in-sensor chip that senses capacitance characteristics between the rigid conductive plate and flexible membrane.  The capacitance characteristics sensed by the in-sensor chip are affected by the rate and direction of airflow through the electronic vaping device.



40.     For example, as further shown below, the Accused VUSE SOLO distinguishes between a draw action (air flowing in an inhale direction) and a blowing action (air flowing in an exhale direction), and provides a visual indication to the adult consumer when a draw action is

detected.  As another example, the detection of a rate and direction of the airflow through the electronic vaping device is also shown in the VUSE SOLO instruction manual.



41.     Claim 1 recites "detect a draw action at a mouth-end piece of the electronic vaping device based on the rate and direction of the airflow through the electronic vaping device."  The '374 Accused Products detect a draw action at the mouth-end piece of the electric vaping device based on the rate and direction of airflow through the electronic vaping device.  For example, as shown below, the Accused VUSE SOLO includes an in-sensor chip that senses capacitance characteristics between the rigid conductive plate and flexible membrane. A draw action is detected based at least in part on a change in distance between the flexible conductive membrane and rigid conductive plate during the draw action.



42.    Claim 1 recites "detect a blowing action at the mouth-end piece of the electronic vaping device based on the rate and direction of the airflow through the electronic vaping device." The '374 Accused Products detect a blowing action at the mouth-end piece of the electronic vaping device based on the rate and direction of airflow through the electronic vaping device.  For example, as shown below, the Accused VUSE SOLO includes an in-sensor chip that senses capacitance characteristics between the rigid conductive plate and flexible membrane.  A blowing action is detected based at least in part on a change in distance between the flexible conductive membrane and rigid conductive plate.



43.    Claim 1 recites "actuate a heater in response to detecting the draw action, but not in response to detecting the blowing action."  The '374 Accused Products actuate a heater in response to detecting the draw action, but not in response to detecting the blowing action.  For example, the Accused VUSE SOLO detects a draw action, detects a blowing action, and transmits electricity through the heater in response to detecting the draw action, but not in response to detecting a blow action, as shown above in paragraphs 38 to 42.

44.    The VUSE ALTO, VIBE, and CIRO do not differ materially from the VUSE SOLO with respect to infringement of the '374 patent and, therefore, infringe the '374 patent for the reasons described above.

45.     RJRV also actively, knowingly, and intentionally induces infringement of one or more claims of the '374 patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, offer for sale, sell, and/or import the '374 Accused Products, in this judicial district and elsewhere in the United States.  RJRV has been aware of the '374 patent at least as of June 29, 2020.  With this knowledge, on information and belief, RJRV continues to actively encourage, instruct, and promote the use of the '374 Accused Products by adult consumers in the United States, with knowledge that the induced acts constitute direct infringement of the '374 patent.  For example, RJRV posts marketing materials on its website (vusevapor.com) and provides instructions with the '374 Accused Products.  *See, e.g.*, http://vusevapor.com/faqs; Instruction Card Included in '374 Accused Products' Packaging (directing users to "Charge Unit," "Attach Pod/Cartridge/Tank," and "Vape & Enjoy!").  By at least these affirmative acts, RJRV actively encourages use of the '374 Accused Products, that results in direct infringement of the '374 patent in the United States, with the specific intent to induce, or was at a minimum willfully blind of inducing, infringement of the '374 patent.

46.     On information and belief, RJRV knowingly and intentionally contributes to the infringement of one or more claims of the '374 patent under 35 U.S.C. § 271(c).  For example, adult consumers directly infringe one or more claims of the '374 patent in the United States as alleged above.  RJRV has been aware of the '374 patent since at least June 29, 2020.  On information and belief, RVRJ continues to offer for sale and sell in the United States the '374 Accused Products (such as Flavor Packs and Power Units) that are material components of the patented invention, are especially made and/or especially adapted for use to infringe the '374 patent, are not a staple article of commerce suitable for substantial non-infringing use, and have

no substantial non-infringing uses, and RJRV does so knowing or should have known that such products are especially made or especially adapted for use in infringement of the '374 patent.

47.     Counterclaim Plaintiffs have suffered and continue to suffer damages as a result of RJRV's infringement of the '374 patent.

## COUNTERCLAIM III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '591 PATENT (AGAINST RJRV AND RAI)

48.     Counterclaim Plaintiffs restate and incorporate by reference each of the allegations of its Counterclaims in paragraphs 1-47.

49.     In its Complaint, Counterclaim Defendants allege that Counterclaim Plaintiffs have infringed and are currently infringing claims 1, 2, and 7 of the '591 patent by importing, selling, offering for sale, and/or distributing the IQOS system in the United States.

50.     Counterclaim Plaintiffs deny these claims of infringement and believe that the Complaint has been filed without good cause for believing the allegations to be true.  In particular, Counterclaim Defendants' Complaint fails to articulate a sufficient basis for alleging that the IQOS system meets all the limitations of claims 1, 2, and 7 of the '591 patent, either literally or under the doctrine of equivalents.  For example, and at a minimum, the IQOS system fails to meet the "forming an electrical contact with said personal vaporizing unit" limitation.

51.     Further, Counterclaim Defendants' Complaint fails to articulate any basis for alleging that the IQOS system meets all the limitations of any claim of the '591 patent.

52.     Thus, for at least the reasons described above, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the alleged infringement of the '591 patent.

## COUNTERCLAIM IV: DECLARATORY JUDGMENT OF INVALIDITY OF THE '591 PATENT (AGAINST RJRV AND RAI)

53.     Counterclaim Plaintiffs restate and incorporate by reference each of the allegations of its Counterclaims in paragraphs 1-52.

54.     In its Complaint, Counterclaim Defendants allege that the '591 patent is valid.

55.     Counterclaim Plaintiffs deny that the '591 patent is valid and assert that it is invalid for failure to comply with the requirements of 35 U.S.C. §101 *et seq.*

56.     For example, the claims of the '591 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on International Patent Application Publication No. WO 2008/139411, U.S. Patent No. 6,637,430, U.S. Patent Application Publication No. 2009/0283103, and U.S. Patent No. 5,144,962, alone or in combination with one another.

57.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the alleged validity of the '591 patent.

58.     Counterclaim Plaintiffs are entitled to declaratory judgment from this Court that the asserted claims of the '591 patent are invalid.

## COUNTERCLAIM V: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '268 PATENT (AGAINST RJRV AND RAI)

59.     Counterclaim Plaintiffs restate and incorporate by reference each of the allegations of its Counterclaims in paragraphs 1-58.

60.     In its Complaint, Counterclaim Defendants allege that Counterclaim Plaintiffs have infringed and are currently infringing claims 16 and 17 of the '268 patent by importing, selling, offering for sale, and/or distributing the IQOS system in the United States.

61.     Counterclaim Plaintiffs deny these claims of infringement and believe that the Complaint has been filed without good cause for believing the allegations to be true.  In particular, Counterclaim Defendants' Complaint fails to articulate a sufficient basis for alleging that the IQOS system meets all the limitations of claims 16 and 17 of the '268 patent, either literally or under the doctrine of equivalents.  For example, and at a minimum, the IQOS system fails to meet the "tubular cartridge with two open ends allowing air to flow therethrough" limitation.

62.     Further, Counterclaim Defendants' Complaint fails to articulate any basis for alleging that the IQOS system meets all the limitations of any claim of the '268 patent.

63.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the alleged infringement of the '268 patent.

### COUNTERCLAIM VI: DECLARATORY JUDGMENT OF INVALIDITY OF THE '268 PATENT (AGAINST RJRV AND RAI)

64.     Counterclaim Plaintiffs restate and incorporate by reference each of the allegations of its Counterclaims in paragraphs 1-63.

65.     In its Complaint, Counterclaim Defendants allege that the '268 patent is valid.

66.     Counterclaim Plaintiffs deny that the '268 patent is valid and assert that it is invalid for failure to comply with the requirements of 35 U.S.C. §101 *et seq.*

67.     For example, the claims of the '268 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on U.S. Patent No. 5,249,586, U.S. Patent No. 5,865,185, U.S. Patent Publication No. 2007/0102013, U.S. Patent No. 5,144,962, and U.S. Patent No. 4,947,874, alone or in combination with one another.

68.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the alleged validity of the '268 patent.

69.     Counterclaim Plaintiffs are entitled to declaratory judgment from this Court that the asserted claims of the '268 patent are invalid.

## COUNTERCLAIM VII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '542 PATENT (AGAINST RJRV AND RAI)

70.     Counterclaim Plaintiffs restate and incorporate by reference each of the allegations of its Counterclaims in paragraphs 1-69.

71.     In its Complaint, Counterclaim Defendants allege that Counterclaim Plaintiffs have infringed and are currently infringing claims 1-30 of the '542 patent by importing, selling, offering for sale, and/or distributing the IQOS system in the United States.

72.     Counterclaim Plaintiffs deny these claims of infringement and believe that the Complaint has been filed without good cause for believing the allegations to be true.  In particular, Counterclaim Defendants' Complaint fails to articulate a sufficient basis for alleging that the IQOS system meets all the limitations of claims 1-30 of the '542 patent, either literally or under the doctrine of equivalents.  For example, and at a minimum, the IQOS system fails to meet the "a heating projection extending at least partially in the receiving chamber towards the proximal end of the housing and terminating at a free end which is configured to be inserted into the disposable aerosol forming substance" limitation of claim 1, and the "wherein the heating projection projects through the disposable aerosol forming substance of the disposable cigarette so that the heating member is in direct contact with at least a portion of the disposable aerosol forming substance" limitation of claim 19.

73.     Further, Counterclaim Defendants' Complaint fails to articulate any basis for alleging that the IQOS system meets all the limitations of any claim of the '542 patent.

74.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the alleged infringement of the '542 patent.

## COUNTERCLAIM VIII: DECLARATORY JUDGMENT OF INVALIDITY OF THE '542 PATENT (AGAINST RJRV AND RAI)

75.     Counterclaim Plaintiffs restate and incorporate by reference each of the allegations of its Counterclaims in paragraphs 1-74.

76.     In its Complaint, Counterclaim Defendants allege that the '542 patent is valid.

77.     Counterclaim Plaintiffs deny that the '542 patent is valid and assert that it is invalid for failure to comply with the requirements of 35 U.S.C. §101 *et seq.*

78.     For example, the claims of the '542 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on U.S. Patent No. 7,726,320 and U.S. Patent Pub. No. 2011/0147486, alone or in combination with one another.  As another example, the claims of the '542 patent are invalid under 35 U.S.C. § 112 because "receiving chamber…for receiving the disposable aerosol forming substance" lacks written description support.

79.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the alleged validity of the '542 patent.

80.     Counterclaim Plaintiffs are entitled to declaratory judgment from this Court that the asserted claims of the '542 patent are invalid.

## DEMAND FOR JURY TRIAL

81.     ACS and PM USA hereby demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectfully request judgment in their favor and against Counterclaim Defendants as follows:

A.      Judgment of infringement of the '545 patent against RJRV;

B.      Judgment of infringement of the '374 patent against RJRV;

C.      An award of damages adequate to compensate ACS and PM USA for the infringement that has occurred, pursuant to 35 U.S.C. § 284, including prejudgment and post-judgment interest;

D.      An award of treble damages for willful infringement pursuant to 35 U.S.C. § 284;

E.      An accounting and/or supplemental damages for all damages occurring after any discovery cutoff;

F.      Declare that ACS and PM USA have not infringed, and are not now infringing any valid, enforceable, asserted claim of the RJR Asserted Patents;

G.      Declare that all asserted claims of the RJR Asserted Patents are invalid;

H.      Hold that no damages or royalties, attorneys' fees, costs, pre- or post-judgment interest, or any other compensation or damages are due or owed by ACS and PM USA to RJR for any of the acts alleged in RJR's Complaint;

I.      Hold that RJR is not entitled to injunctive relief;

J.      Permanently enjoin RJR, its successors and assigns, and anyone acting in concert therewith or on its behalf, from attempting to enforce the RJR Asserted Patents against ACS, PM USA, or any parents, affiliates, or subsidiaries of ACS or PM USA or their respective officers, agents, employees, successors, and assigns;

K.      An award of attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

L.      Costs and expenses in this action; and

M.      An award of any additional relief, in law and in equity, as the Court deems just and reasonable.


Dated: June 29, 2020                               Respectfully submitted,

                                                   */s/ Maximilian A. Grant*
                                                   Maximilian A. Grant (VSB No. 91792)
                                                   maximilian.grant@lw.com
                                                   Matthew J. Moore (*pro hac vice* pending)
                                                   matthew.moore@lw.com
                                                   LATHAM & WATKINS LLP
                                                   555 Eleventh Street, N.W., Ste. 1000
                                                   Washington, DC 20004
                                                   Tel: (202) 637-2200; Fax: (202) 637-2201

                                                   Clement J. Naples (*pro hac vice* pending)
                                                   clement.naples@lw.com
                                                   LATHAM & WATKINS LLP
                                                   885 Third Avenue
                                                   New York, NY 10022-4834
                                                   Tel: (212) 906-1200; Fax: (212) 751-4864

                                                   Gregory K. Sobolski (*pro hac vice* pending)
                                                   Gregory.sobolski@lw.com
                                                   LATHAM & WATKINS LLP
                                                   505 Montgomery Street, Suite 2000
                                                   San Francisco, CA 94111
                                                   Tel: (415) 391-0600; Fax: (415) 395-8095

                                                   Brenda L. Danek (*pro hac vice* pending)
                                                   brenda.danek@lw.com
                                                   LATHAM & WATKINS LLP
                                                   330 North Wabash Avenue, Suite 2800
                                                   Chicago, IL 60611
                                                   Tel: (312) 876-7700; Fax: (312) 993-9767

                                                   *Counsel for Defendants Altria Client*
                                                   *Services LLC and Philip Morris USA Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2020, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record:

/s/ Maximilian A. Grant
Maximilian A. Grant  (VSB No. 91792)
**LATHAM & WATKINS LLP**
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201
Email: max.grant@lw.com

*Counsel for Defendants Altria Client
Services LLC and Philip Morris USA Inc.*