**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| RAI STRATEGIC HOLDINGS, INC. AND R.J. REYNOLDS VAPOR COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA, INC.; and PHILIP MORRIS PRODUCTS S.A.<br><br>Defendants. | Case No. 1:20-cv-00393-LO-TCB |
| ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA, INC.; and PHILIP MORRIS PRODUCTS S.A.<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>RAI STRATEGIC HOLDINGS, INC. AND R.J. REYNOLDS VAPOR COMPANY<br><br>Counterclaim Defendants. | |

## DEFENDANT PHILIP MORRIS PRODUCTS S.A.'S PARTIAL ANSWER TO THE AMENDED COMPLAINT AND COUNTERCLAIMS

Defendant Philip Morris Products S.A. ("PMP" or "Defendant") respectfully submits its Partial Answer in response to Plaintiffs RAI Strategic Holding, Inc. ("RAI") and R.J. Reynolds Vapor Company's ("RJRV") (collectively, "RJR") Amended Complaint.  To the extent not specifically admitted herein, the allegations of the Amended Complaint are denied, including any allegations contained in the headings of the Amended Complaint.

## INTRODUCTION AND PRELIMINARY STATEMENT OF PMP

RJR appears to have brought this action in the hopes of stopping PMP's innovative IQOS heated tobacco system, which has a proven track record in switching smokers away from combustible cigarettes, from disrupting its core business in combustible cigarettes and overtaking its secondary line of e-vapor products.  Having failed to develop a competing offering in the heated tobacco space, RJR apparently now seeks to block that space in its entirety by bringing this meritless litigation.  But in its haste to do so, RJR has overlooked the fact that its own line of e-vapor products (which are far less effective in switching smokers away from combustible cigarettes than IQOS) infringe multiple patents owned by PMP.

While Philip Morris International, PMP's ultimate parent, built its success on the basis of combustible cigarettes, it has committed itself to building its future on the basis of smoke-free products that are substantially less harmful than combustible cigarettes.  Consistent with that vision, PMP has emerged as the global leader and pioneer in reduced-risk alternatives to combustible cigarettes ("Reduced Risk Products" or "RRPs").  PMP has invested over seven billion dollars since 2008 on research and development relating to RRPs such as IQOS.  And it has amassed a substantial portfolio of intellectual property, covering numerous innovations relating to smoke-free technologies, including both heated tobacco and e-vapor products.

PMP first launched IQOS, a product that heats rather than burns tobacco to produce an aerosol instead of smoke (known as a "Heat-Not-Burn" or "HNB" product), in select cities in Italy and Japan in 2014.  It is now sold in over 57 countries throughout the world.  To date, over 11.2 million smokers have switched to IQOS and given up smoking for good, and this number is growing daily.  PMP conducted 10 clinical studies on IQOS and published over 340 peer-reviewed articles on RRPs.  There are also over 30 independent studies corroborating PMP's findings with

respect to IQOS.  Among the findings: IQOS produces an aerosol with 90 to 95% less toxins than cigarette smoke.

In 2019, after a lengthy review, the United States Food and Drug Administration ("FDA") granted PMP's request for a pre-market authorization to commercialize IQOS (through its distributor, Altria) in the United States.  In granting that request, the FDA determined that marketing IQOS "would be appropriate for the protection of the public health."  Only July 7, 2020, the FDA authorized the marketing of a version of IQOS as a modified risk tobacco product, finding that IQOS "significantly reduces the production of harmful and potentially harmful chemicals."  To date, no other HNB or e-vapor product has received these authorizations.

Apparently concerned by the commercial threat posed by IQOS, RJR is now attempting to stop IQOS with this case.  But in its haste to stop IQOS, RJR committed two fatal errors.  First, it asserted meritless patent claims.  Second, it overlooked the fact that its own e-vapor products infringe multiple patents owned by PMP and co-defendants Altria Client Services and Philip Morris USA, Inc.  PMP thus responds to RJR's Complaint and brings counterclaims to recover the considerable damages flowing from RJR's infringement.

## RESPONSES TO THE SPECIFIC ALLEGATIONS OF COMPLAINT

### THE PARTIES

1.     PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 1 of the Complaint and, on that basis, denies them.

2.     PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 2 of the Complaint and, on that basis, denies them.

3.     PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 3 of the Complaint and, on that basis, denies them.

4.      PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 4 of the Complaint and, on that basis, denies them.

5.      PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 5 of the Complaint and, on that basis, denies them.

6.      Admitted.

## JURISDICTION AND VENUE

7.      Paragraph 7 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that the Complaint purports to be an action arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, but PMP denies that there is any legal or factual basis for such action.

8.      PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 8 of the Complaint and, on that basis, denies them.

9.      Paragraph 9 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits for purposes of this action only that this Court has personal jurisdiction over it.  PMP otherwise denies the allegations in paragraph 9 of the Complaint.

10.     PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 10 of the Complaint and, on that basis, denies them.

11.     Paragraph 11 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits for purposes of this action only that venue exists in this District for the claims against PMP pursuant to 28 U.S.C. §§ 1391 and 1400(b).  PMP otherwise

denies the allegations in paragraph 11 of the Complaint.  PMP specifically denies the allegations of paragraph 11 of the Complaint relating to PMP's alleged infringement of any patents.

## FACTUAL BACKGROUND

**THE ASSERTED PATENTS**

12.     PMP admits that the face of U.S. Patent No. 9,814,268 ("the '268 patent") states that it is titled "Tobacco-containing smoking article."  PMP further admits that the face of the '268 patent states that it issued on November 4, 2017 and that it includes two independent claims.  PMP admits that Plaintiffs have quoted claim 16 of the '268 patent in paragraph 12 of the Complaint.  PMP otherwise denies the allegations in paragraph 12 of the Complaint.

13.     The Court has stayed Plaintiff's Counts Two, Three, and Four pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  PMP will provide a response at the appropriate time when the stay is lifted.

14.     The Court has stayed Plaintiffs' Counts Two, Three, and Four pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  PMP will provide a response at the appropriate time when the stay is lifted.

15.     The Court has stayed Plaintiffs' Counts Two, Three, and Four pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  PMP will provide a response at the appropriate time when the stay is lifted.

16.     The Court has stayed Plaintiffs' Counts Two, Three, and Four pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  PMP will provide a response at the appropriate time when the stay is lifted.

17.     The Court has stayed Plaintiffs' Counts Two, Three, and Four pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  PMP will provide a response at the appropriate time when the stay is lifted.

18.     The Court has stayed Plaintiffs' Counts Two, Three, and Four pursuant to 28 U.S.C. § 1659.  *See* Dkt. 27.  PMP will provide a response at the appropriate time when the stay is lifted.

19.     PMP admits that the face of U.S. Patent No. 10,492,542 ("the '542 patent") states that it is titled "Smoking articles and use thereof for yielding inhalation materials."  PMP further admits that the face of the '542 patent states that it issued on December 3, 2019 and that it includes

two independent claims.  PMP admits that Plaintiffs have quoted claim 1 of the '542 patent in paragraph 19 of the Complaint.  PMP otherwise denies the allegations in paragraph 19 of the Complaint.

## THE ACCUSED PRODUCTS

20.     PMP admits that it has developed a heat-not-burn tobacco heating system called IQOS and the IQOS system includes an electrically powered device that comprises a holder and a charger, and a disposable tobacco unit.  PMP otherwise denies the allegations in paragraph 20 of the Complaint.

21.     Paragraph 21 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that some of the packaging for the IQOS device sold in the United States recites:  "Manufactured for Philip Morris USA, Richmond VA.  Made in Malaysia," and that some of the packaging for the tobacco unit states:  "Mfd. for Philip Morris USA, Richmond, VA.  Made in Italy."  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 21 of the Complaint and, on that basis, denies them.

22.     Paragraph 22 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that the holder, into which the tobacco unit is placed, heats the tobacco via a heating blade.  PMP admits the adult consumer pushes a button to turn on the heating unit.  PMP further admits the holder includes a battery and supplies heat to the tobacco unit via the heating blade for six minutes or 14 puffs, whichever comes first.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 22 of the Complaint and, on that basis, denies them.

23.     Paragraph 23 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that the IQOS system's tobacco unit is designed for heating, not for burning or smoking, and contains a processed tobacco plug.  PMP admits the tobacco plug is made from tobacco leaves, which are ground and formed into tobacco sheets, called cast-leaf.  PMP further admits the adult consumer draws on the tobacco unit to inhale a nicotine containing aerosol.  PMP admits that the tobacco unit is available in different flavors, including regular and menthol flavors.  PMP further admits that the tobacco unit is sometimes referred to as a HeatStick or Marlboro™ HeatStick.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 23 of the Complaint and, on that basis, denies them.

24.     Paragraph 24 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that the IQOS device includes a charger for charging the holder and is sold with an AC power adaptor for recharging the charger.  PMP further admits that the charger contains its own battery that charges the holder.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 24 of the Complaint and, on that basis, denies them.

25.     Paragraph 25 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that the holder, tobacco unit, and the charger are authorized by the FDA for use as part of the IQOS system.  PMP specifically denies the allegations of paragraph 25 of the Complaint relating to PMP's alleged infringement of any patents.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 25 of the Complaint and, on that basis, denies them.

26.     Paragraph 26 contains legal conclusions to which no answer is required.  PMP specifically denies the allegations of paragraph 26 of the Complaint relating to PMP's alleged infringement of any patents.

27.     Paragraph 27 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that it sells the charger, holder, tobacco unit, and a cleaner outside the United States.  PMP further admits that the tobacco units are sold separately in, for example, packs of 20.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 27 of the Complaint and, on that basis, denies them.

28.     Paragraph 28 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that it offers for sale and sells the IQOS device with a User Guide and Quick Start Guide outside the United States.  PMP specifically denies any allegations related to infringement of the Asserted Patents.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 28 of the Complaint and, on that basis, denies them.

29.     PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 29 of the Complaint and, on that basis, denies them.

30.     Paragraph 30 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits the adult consumer inserts the tobacco unit into the holder, which contains an electronically controlled heater.  PMP admits the adult consumer pushes a button to turn on the heater, and then draws on the tobacco unit to inhale a nicotine containing aerosol.  PMP admits the tobacco units respond to the warming of the heat blade inside the holder, which heats the tobacco, and that the tobacco reaches a temperature below 350°C, which is a high enough temperature to release a nicotine-containing aerosol without burning the tobacco.

31.     PMP admits that ACS is licensed to distribute, offer to sell, and sell the IQOS system and the corresponding tobacco sticks in the U.S.   PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 31 of the Complaint and, on that basis, denies them.

32.     PMP admits that ACS is licensed to distribute, offer to sell, and sell the IQOS system and the corresponding tobacco sticks in the U.S.   PMP further admits that some of the packaging for the IQOS device that it sells in the United States recites:  "Manufactured for Philip Morris USA, Richmond VA.  Made in Malaysia," and that some of the packaging for the tobacco unit states:  "Mfd. for Philip Morris USA, Richmond, VA.  Made in Italy."  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 32 of the Complaint and, on that basis, denies them.

33.     Paragraph 33 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that PMP prosecuted PMTAs with the FDA seeking approval to offer for sale and sell the IQOS system in the United States, and that ACS and PM USA consulted with Philip Morris Products S.A. in preparation of certain aspects of a PMTA. PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 33 of the Complaint and, on that basis, denies them.

**THE IMPORTATION, SALE, OFFER FOR SALE, AND DISTRIBUTION OF
IQOS DEVICES**

34.     PMP admits that, on or around May 24, 2017, it filed PMTAs with the FDA seeking approval to offer for sale and sell the IQOS system in the United States.  PMP admits that Altria Client Services LLC and Philip Morris USA, Inc. consulted on the preparation of certain aspects of a PMTA application.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 34 of the Complaint and, on that basis, denies them.

35.     Admitted.

36.     PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 36 of the Complaint and, on that basis, denies them.

37.     Paragraph 37 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that admit that IQOS systems are manufactured by third parties outside of the United States and certain IQOS systems are imported and sold in the United States.   PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 37 of the Complaint and, on that basis, denies them.

**DEFENDANTS KNOW OF THE ASSERTED PATENTS, KNOW AND SPECIFICALLY INTEND THAT THE IQOS PRODUCTS INFRINGE THE ASSERTED PATENTS, AND KNOW THAT THE IQOS PRODUCTS ARE ESPECIALLY MADE OR ESPECIALLY ADAPTED FOR USE IN INFRINGING THE ASSERTED PATENTS**

38.     Paragraph 38 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP admits that the face of U.S. Design Patent No. D844,221 and U.S. Patent No. 10,258,087 list U.S. Patent No. 7,726,320 ("the '320 patent"); and the face of U.S. Patent No. 10,278,424 lists U.S. Patent No. 9,078,473.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 38 of the Complaint and, on that basis, denies them.

39.     Denied.

40.     Denied.

<div align="center">COUNT ONE</div>

41.     PMP re-alleges, adopts, and incorporates by reference the allegations included within paragraphs 1 through 40 as if fully set forth herein.

42.     PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 42 of the Complaint and, on that basis, denies them.

43.     Paragraph 43 contains legal conclusions to which no answer is required.  To the extent an answer is required, PMP denies the remaining allegations in paragraph 43.

44.     Denied.

45.     PMP admits that the quoted language in paragraph 45 appears in claim 16 of the '268 patent.

46.     Paragraph 46 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP states that the IQOS system includes an electrically powered device that comprises a holder and a charger, and a disposable tobacco unit.  PMP otherwise denies the allegations in paragraph 46.

47.     Paragraph 47 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP states that the IQOS system includes an electrically powered device that comprises a battery.  PMP otherwise denies the allegations of paragraph 47.

48.     Paragraph 48 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP states that the document cited speaks for itself.  PMP otherwise denies the allegations of paragraph 48.

49.     PMP admits that the quoted language in paragraph 49 appears in claim 16 of the '268 patent.

50.     Paragraph 50 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP denies the allegations in paragraph 50.

51.     PMP admits that the quoted language in paragraph 51 appears in claim 16 of the '268 patent.

52.     Paragraph 52 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP denies the allegations in paragraph 52.

53.     PMP admits that the quoted language in paragraph 53 appears in claim 16 of the '268 patent.

54.     Paragraph 54 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP admits that the IQOS system includes a holder that comprises a battery.  PMP otherwise denies the allegations in paragraph 54.

55.     PMP admits that the quoted language in paragraph 55 appears in claim 16 of the '268 patent.

56.     Paragraph 56 contains legal conclusions to which no response is required.  To the extent an answer is required, PMP denies the allegations of paragraph 56.

57.     PMP states that the document cited in paragraph 57 speaks for itself.  PMP otherwise denies the remaining allegations of paragraph 57.

58.     PMP admits that the quoted language in paragraph 58 appears in claim 16 of the '268 patent.

59.     PMP states that the document cited in paragraph 59 speaks for itself.  PMP otherwise denies the remaining allegations of paragraph 59.

60.     PMP admits that the quoted language in paragraph 60 appears in claim 16 of the '268 patent.

61.     Denied.

62.     PMP admits that the quoted language in paragraph 62 appears in claim 16 of the '268 patent.

63.     PMP states that the document cited in paragraph 63 speaks for itself.  PMP otherwise denies the allegations in paragraph 63.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Paragraph 69 contains a summary request for relief, and no response is required. To the extent a response is required, PMP denies that Plaintiffs are entitled to any relief sought in their Complaint or any relief whatsoever.

## COUNTS TWO THROUGH FOUR

70-158. The Court has stayed Counts Two, Three, and Four of the Complaint under 28 U.S.C. § 1659.  *See* Dkt. 27.  The Amended Complaint improperly adds allegations to Counts that this Court expressly stayed under 19 U.S.C. § 1659(a).  *See* Dkt. 27.  This is not permitted. Plaintiffs cannot amend allegations for stayed counts without leave of the Court.  *See, e.g., Sandisk Corp. v. Phison Elecs. Corp.*, Nos. 07-cv-605, 2008 WL 4533715 (W.D. Wis. Sept. 17, 2008) (addressing motions practice where the parties sought leave of the court to lift a stay under 19 U.S.C. § 1659 to proceed with ministerial discovery).  Consequently, the new allegations set forth in Counts Two, Three, and Four from the Amended Complaint are not properly part of this action. (Dkt. 52, ¶¶ 70-158).  Absent this Court lifting the stay imposed by its June order, which Plaintiffs failed to confer on and failed to move for, Plaintiffs have no ability to amend any portion of the stayed Counts.  PMP will respond to these counts if they are properly amended and at the appropriate time when the stay is lifted.

## COUNT FIVE
## INFRINGEMENT OF U.S. PATENT NO. 10,432,542

159.     PMP re-alleges, adopts, and incorporates by reference the allegations included within paragraphs 1 through 158 as if fully set forth herein.

160.    PMP is without knowledge or information sufficient to admit or deny the allegations in paragraph 160 of the Complaint and, on that basis, denies them.

161.    Paragraph 161 contains legal conclusions to which no answer is required.  PMP is without knowledge or information sufficient to admit or deny the remaining allegations in paragraph 161 of the Complaint and, on that basis, denies them.

162.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

163.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

164.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

165.    Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original

patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

166.   Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

167.   Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

168.   Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

169.   Denied.  Plaintiffs filed for the '542 patent in September 2019 and attempted to draft claims directed at the Accused Products, but the claims are far removed from the alleged invention possessed at the time of filing and described by the inventors when they filed the original patent application on August 9, 2011 and are therefore invalid for, among other things, lack of written description, anticipation, and obviousness.

## RESPONSE TO PRAYER FOR RELIEF

170.    PMP denies that Plaintiffs are entitled to any relief sought in their Complaint or any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without altering any applicable burdens of proof or burdens of persuasion, PMP asserts the following defenses to the Complaint and reserves its right to assert additional defenses.

## FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

PMP does not and has not infringed any valid, enforceable, asserted claim of the Asserted Patents, either literally or under the doctrine of equivalents, under any theory of infringement.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel and Disclaimer)

Plaintiffs are barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Asserted Patents or related patent applications, from asserting any interpretation of any valid, enforceable claim of the Asserted Patents that would be broad enough to cover any Accused Product alleged to infringe the Asserted Patents, either literally or under the doctrine of equivalents.

16

## FOURTH AFFIRMATIVE DEFENSE

### (Equitable Defenses)

Plaintiffs' attempted enforcement of the Asserted Patents against PMP is barred by one or more of the equitable doctrines, such as estoppel, acquiescence, waiver, and unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

Plaintiffs' claims for damages are statutorily limited or barred by 35 U.S.C. §§ 286 and/or 287.

## SIXTH AFFIRMATIVE DEFENSE

### (Preclusion of Costs)

Plaintiffs are barred under 35 U.S.C. § 288 from recovering costs associated with its action.

## SEVENTH AFFIRMATIVE DEFENSE

### (No Injunctive Relief)

Plaintiffs are not entitled to injunctive relief as they have, at a minimum, an adequate remedy at law upon any finding of infringement and have not suffered any irreparable injury.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Willfulness)

Plaintiffs are barred from obtaining a finding of willfulness or receiving enhanced damages because they have not alleged that PMP engaged in reprehensible conduct, and PMP has engaged in no such conduct, which is a prerequisite for a willfulness finding and an award of enhanced damages.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted, for at least the reasons described in the Motion to Dismiss filed in this action.

## RESERVATION OF RIGHTS

PMP hereby reserves the right to amend its Partial Answer and reserves all defenses set out in Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, which become applicable after the substantial completion of discovery or otherwise in litigation.

## COUNTERCLAIMS[1]

Counterclaim Plaintiff Philip Morris Products S.A. ("PMP" or "Counterclaim Plaintiff") hereby counterclaims and alleges against Counterclaim Defendants R.J. Reynolds Vapor Company ("RJRV") and RAI Strategic Holdings, Inc. ("RAI") (collectively, "RJR" or "Counterclaim Defendants") as follows:

## NATURE OF THE ACTION

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to (i) address infringement and obtain damages resulting from RJRV's unauthorized making, using, sale, offer for sale, and/or importation into the United States through its infringing "VUSE" e-vapor products; and (ii) obtain a declaration that Counterclaim Defendants' asserted patents are invalid and not infringed.

2.      PMP holds patents on innovative e-vapor technologies, including inventions covered by U.S. Patent Nos. 9,814,265 ("the '265 patent"); 10,555,556 ("the '556 patent"); and 10,104,911 ("the '911 patent") (collectively, "the PMP Asserted Patents").

---

[1] Counterclaim Plaintiff has already set forth its counterclaims within the Answer and Counterclaims to the original Complaint. Dkt. No. 40. Counterclaim Defendants will respond to the Counterclaims by August 3, 2020, pursuant to the Court's Order. Dkt. No. 49. Out of an abundance of caution, Counterclaim Plaintiff reproduces its Counterclaims here. The Counterclaims are identical to its original Counterclaims, except that Counterclaim Plaintiff no longer asserts Counts IV and V of the original Counterclaims, which were directed to the withdrawn '591 patent, and is not moving to dismiss the '268 patent at this time.

3.       RJRV, without authorization, makes, imports, uses, offers for sale, and/or sells a line of "VUSE" e-vapor products, including the VUSE ALTO, VUSE SOLO, VUSE CIRO, and VUSE VIBE Power Units and associated "Flavor Packs" (which RJRV also refers to as "cartridges," "tanks," and "pods") (collectively, "the Accused VUSE Vapor Products") that infringe the PMP Asserted Patents.  *See* https://vusevapor.com.  RJRV provides the Accused VUSE Vapor Products in a kit containing a VUSE Power Unit, USB charger, and one or more Flavor Packs.  RJRV also provides the VUSE Power Unit and USB charger without any Flavor Packs.  The Flavor Packs are also sold separately, for example, in packages containing only Flavor Packs.

4.       Counterclaim Defendants have incorrectly alleged that PMP infringes U.S. Patent Nos. 9,814,268 ("the '268 patent") and 10,492,542 ("the '542 patent") (collectively, "the RJR Asserted Patents").  PMP does not infringe any valid, enforceable, asserted claim of the RJR Asserted Patents.  PMP therefore seeks a declaration that the asserted claims of the RJR Asserted Patents are invalid and not infringed.  In addition, Counterclaim Defendants have asserted U.S. Patent Nos. 9,839,238; 9,901,123; and 9,930,915, which have been stayed pursuant to 28 U.S.C. § 1659. *See* Dkt. 27.

## **PARTIES**

5.       RAI is a North Carolina corporation with its principal place of business located at 401 North Main Street, Winston-Salem, North Carolina 27101.  Upon information and belief, RAI is a wholly-owned subsidiary of Reynolds American Inc., which in turn is a wholly-owned subsidiary of British American Tobacco plc, a publicly-traded company on the London Stock Exchange headquartered in London, England.

6.       RJRV is a North Carolina corporation with its principal place of business located at 401 North Main Street, Winston-Salem, North Carolina 27101.  Upon information and belief,

RJRV is a wholly-owned subsidiary of Reynolds American Inc., which in turn is a wholly-owned subsidiary of British American Tobacco plc, a publicly-traded company on the London Stock Exchange headquartered in London, England.

7.     Philip Morris Products S.A. is organized under the laws of Switzerland with its principal place of business located at Quai Jeanrenaud 3, 2000 Neuchâtel, Switzerland.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and the Patent Act of the United States, 35 U.S.C. § 1, *et seq.*

9.     Personal jurisdiction is proper in this Court over Counterclaim Defendants at least because Counterclaim Defendants have consented to the Court's jurisdiction by filing the Complaint in this Court, and because, on information and belief, Counterclaim Defendants have engaged in infringing acts in this jurisdiction.

10.     Venue is proper at least because Counterclaim Defendants have consented to venue through their filing of this lawsuit in this Court, pursuant to 28 U.S.C. §§ 1391 and 1400.

11.     In their Complaint, Counterclaim Defendants allege that PMP infringes the RJR Asserted Patents.  PMP denies that it infringes any valid, enforceable asserted claim of the RJR Asserted Patents.  An actual controversy has thus arisen and now exists between PMP and the Counterclaim Defendants.

## THE PMP ASSERTED PATENTS

12.     The '265 patent is titled "Permeable Electric Thermal Resistor Foil for Vaporizing Fluids from Single-Use Mouthpieces with Vaporizer Membranes," and issued on November 14, 2017.  PMP owns the entire right, title, and interest in and to the '265 patent.  A true and accurate copy of the '265 patent is attached as Exhibit A.

13.    The '556 patent is titled "Cartridge for an Aerosol-Generating System," and issued on February 11, 2020.  PMP owns the entire right, title, and interest in and to the '556 patent.  A true and accurate copy of the '556 patent is attached as Exhibit B.

14.    The '911 patent is titled "Aerosol Generating System with Prevention of Condensate Leakage," and issued on October 23, 2018.  PMP owns the entire right, title, and interest in and to the '911 patent.  A true and accurate copy of the '911 patent is attached as Exhibit C.

15.    The allegations provided below are exemplary and without prejudice to PMP's infringement contentions that will be provided pursuant to the Court's scheduling order and local civil rules.  In providing these allegations, PMP does not convey or imply any particular claim constructions or the precise scope of the claims of the PMP Asserted Patents.  PMP's proposed claim constructions will be provided pursuant to the Court's scheduling order and local civil rules.

16.    As detailed below, each element of at least one claim of each of the PMP Asserted Patents is literally present in the Accused Products.  To the extent that any claim element is not literally present in the Accused Vuse Vapor Products, each such element is present under the doctrine of equivalents.

## COUNTERCLAIM I: INFRINGEMENT OF U.S. PATENT NO. 9,814,265 (AGAINST RJRV)

17.    PMP re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 16 as though fully set forth herein.

18.    RJRV has directly and indirectly infringed, and continues to infringe, one or more claims of the '265 patent, including claim 1, both literally and under the doctrine of equivalents, by making, using, importing, selling, and/or offering to sell in the United States without authority,

at least the VUSE ALTO, together with its associated Flavor Packs (collectively, "the '265 Accused Products"), in violation of 35 U.S.C. § 271.

19.    Claim 1 recites a "vaporizer device for vaporizing a substance containing at least one active and/or aroma material, comprising."  The '265 Accused Products comprise a vaporizer device for vaporizing a substance containing at least one active and/or aroma material.  For example, as shown in the screenshots from their website reproduced below, RJRV describes its VUSE ALTO product as an "e-cig" to provide a customized "vaping experience."  RJRV further states that "Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist."  A picture of an assembled VUSE ALTO product is shown below.  The bottom portion ("Power Unit") of the VUSE ALTO includes a battery which supplies power to the top portion ("Flavor Pack").  The Flavor Pack of the VUSE ALTO includes nicotine and a flavor such as "Golden Tobacco."



Big performance. Small package. Inspired design. Get it all with this complete kit that includes one Alto power unit, one Alto magnetic charger, and one flavor pack of your choice (two flavor pods included).

The Alto all-in-one pod mod is a hassle-free e-cig with smooth delivery. Pocket-sized and lightweight, this sleek little device is the perfect option to sync with your ever-moving lifestyle.

The Alto offers a tight draw and no visible airflow slots—just like puffing on a cigarette. And it offers rounded edges and a rounded mouthpiece too.

The Alto squeezes a 350mAh battery inside its smooth metal casing (available in slate or red) to power your inspiration all day long.

Customize your vaping experience with one of three flavors: golden tobacco, rich tobacco, and menthol. The Alto also lets you customize your nicotine level. All flavors now offer 1.8%, 2.4% and 5.0% nicotine options.

- All-in-One Device
- Powerful 350mAh Battery
- 1.8%, 2.4%, and 5.0% Nicotine Options
- 1.8 mls of e-Liquid
- Quick Connect USB Charging System

https://vusevapor.com/alto-complete-kit (highlighting in yellow)

## Product Information

**What is Vuse?**                                                                                       —

Vuse is an E-cigarette brand with several innovative vapor products on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and Vuse Vibe.

**How do Vuse products work?**                                                                          —

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (highlighting in yellow)



23

20.     Claim 1 recites "a mouthpiece, having at least one fluid inlet and at least one fluid outlet."  The '265 Accused Products comprise a mouthpiece, having at least one fluid inlet and at least one fluid outlet.  For example, as shown below, the VUSE ALTO Flavor Pack includes a mouthpiece with a fluid inlet at one end and a fluid outlet at the other end.



21.     Claim 1 recites "a heating device, configured to be connected to the mouthpiece."  The '265 Accused Products comprise a heating device, configured to be connected to the mouthpiece.  For example, as shown below, the VUSE ALTO includes a heating device that is connected to the mouthpiece.



22.     Claim 1 recites "a thermal resistor comprising a metallic foil or a thin sheet in a shape of a dual coil and/or sinuous line, having two ends and dimensions substantially the same as a cross-section of a cigarette or a cigar, wherein interspaces of the shape are configured to allow a flow of fluid therethrough."  The '265 Accused Products comprise a thermal resistor comprising a metallic foil or a thin sheet in a shape of a dual coil and/or sinuous line, having two ends and dimensions substantially the same as a cross-section of a cigarette or a cigar, wherein interspaces of the shape are configured to allow a flow of fluid therethrough.  For example, as shown below, the VUSE ALTO heater includes a thin sheet of metal in the shape of an "S" (a sinuous line) that is a thermal resistor, with dimensions substantially the same as a cross-section of a cigarette (which have a diameter of roughly between 5 and 8 mm) or cigar (which can be box-pressed).  The interspaces of the S-shaped heater allow fluid to flow through.



23.     Claim 1 recites "at least one contact tab including a first contact tab and a second contact tab being connected to respective opposed ends of the dual coil and/or sinuous line of the

thermal resistor, the first contact tab and the second contact tab not being in direct contact with each other." The '265 Accused Products comprise at least one contact tab including a first contact tab and a second contact tab being connected to respective opposed ends of the dual coil and/or sinuous line of the thermal resistor, the first contact tab and the second contact tab not being in direct contact with each other. For example, as shown below, the S-shaped metal sheet includes two contact tabs connected to opposite ends of the "S." The contact tabs are not in direct contact with each other.



24. Claim 1 recites "at least one vaporizer membrane disposed in contact with the thermal resistor and being permeable to the flow of fluid, and which is wetted or can be wetted with the substance containing the at least one active and/or aroma material." The '265 Accused Products comprise at least one vaporizer membrane disposed in contact with the thermal resistor and being permeable to the flow of fluid, and which is wetted or can be wetted with the substance containing the at least one active and/or aroma material. For example, as shown below, the VUSE ALTO includes a porous, ceramic membrane in contact with the S-shaped metal that is permeable

to the flow of liquid, and is be wetted because it is in contact with the flavored liquid containing liquid and a flavor, such as "Golden Tobacco."



Permeable vaporizer membrane

25. Claim 1 recites "the thermal resistor and the at least one vaporizer membrane are arranged orthogonally or at an angle to a direction of the flow of fluid in the mouthpiece." The '265 Accused Products comprise a thermal resistor and the at least one vaporizer membrane that are arranged orthogonally or at an angle to a direction of the flow of fluid in the mouthpiece. For example, as shown below, the S-shaped metal sheet and the ceramic membrane are arranged orthogonal to the direction of the flow of the fluid, which is indicated by the arrow.



26.     RJRV also actively, knowingly, and intentionally induces infringement of one or more claims of the '265 patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, offer for sale, sell, and/or import the '265 Accused Products, in this judicial district and elsewhere in the United States.  RJRV has been aware of the '265 patent at least as of June 29, 2020.  With this knowledge, on information and belief, RJRV continues to actively encourage, instruct, and promote the use of the '265 Accused Products by adult consumers in the United States, with knowledge that the induced acts constitute direct infringement of the '265 patent.  For example, RJRV posts marketing materials on its website (vusevapor.com) and provides instructions with the '265 Accused Products.  *See, e.g.*, http://vusevapor.com/faqs; Instruction Card Included in '265 Accused Products' Packaging (directing users to "Charge Unit," "Attach Pod/Cartridge/Tank," and "Vape & Enjoy!").  By at least these affirmative acts, RJRV actively encourages use of the '265 Accused Products, that results in direct infringement of the '265 patent in the United States, with the specific intent to induce, or was at a minimum willfully blind of inducing, infringement of the '265 patent.

27.     On information and belief, RJRV knowingly and intentionally contributes to the infringement of one or more claims of the '265 patent under 35 U.S.C. § 271(c).  For example,

adult consumers directly infringe one or more claims of the '265 patent in the United States as alleged above.  RJRV has been aware of the '265 patent since at least June 29, 2020.  On information and belief, RVRJ continues to offer for sale and sell in the United States the '265 Accused Products (such as Flavor Packs and Power Units) that are material components of the patented invention, are especially made and/or especially adapted for use to infringe the '265 patent, are not a staple article of commerce suitable for substantial non-infringing use, and have no substantial non-infringing uses, and RJRV does so knowing or should have known that such products are especially made or especially adapted for use in infringement of the '265 patent.

28.     Counterclaim Plaintiff has suffered and continues to suffer damages as a result of RJRV's infringement of the '265 patent.

## COUNTERCLAIM II: INFRINGEMENT OF U.S. PATENT NO. 10,555,556 (AGAINST RJRV)

29.     PMP re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 28 as though fully set forth herein.

30.     RJRV has directly and indirectly infringed, and continue to infringe, one or more claims of the '556 patent, including claim 1, both literally and under the doctrine of equivalents, by making, using, importing, selling, and/or offering to sell in the United States without authority, at least the VUSE VIBE, and its associated Flavor Packs (collectively, "the '556 Accused Products"), in violation of 35 U.S.C. § 271.

31.     Claim 1 recites "a cartridge for use in an aerosol-generating system, comprising." The '556 Accused Products comprise a cartridge for use in an aerosol-generating system.  The VUSE VIBE Flavor Packs are a cartridge of use in an aerosol-generating system.  For example, as shown below, RJRV describes the VUSE VIBE as an "e-cig" with "e-liquid cartridges" that hold "1.9mls of e-Liquid."





**Vibe Complete Kit**

Power Unit + Flavor Pack (2 Tanks per Pack)

$23.98

★★★★★  |  749 Reviews

**Nicotine Level:**

3.0%

**Flavor:**

Original

**Qty**

1

ADD TO CART

If you crave power and performance, the Vibe is the vape for you. And with a sleek, compact body, you'll enjoy both performance and aesthetics. Get the Vibe power unit and one flavor pack of your choice (two tanks included in this ready-to-go kit.

The most powerful e-cig in the Vuse line, the Vibe boasts an ultra-long-lasting 600mAh battery. This powerhouse of a device also offers Vuse's largest e-liquid cartridges. Each pod holds 1.9mls of 3.0% nicotine, so you can be sure the Vibe will always be ready to help you charge beyond expectations. Cartridges are also easy to swap, so mix them up to suit your mood.

- All-in-One Device
- Ultra-Powerful 600mAh Battery
- 3.0% Nicotine
- 1.9mls of e-Liquid

32.    Claim 1 recites "a liquid storage portion, comprising a housing configured to hold a liquid aerosol-forming substrate, the housing having an opening, wherein the liquid storage portion comprises at least two parts in fluid communication with each other." The '556 Accused Products comprise a liquid storage portion, comprising a housing configured to hold a liquid aerosol-forming substrate, the housing having an opening, wherein the liquid storage portion comprises at least two parts in fluid communication with each other. For example, the VUSE VIBE includes a cartridge that stores the e-liquid. The cartridge comprises a housing with an opening and two parts in fluid communication with each other as shown below.

30



33.     Claim 1 recites "a first part of the liquid storage portion comprising a first capillary material, provided in a vicinity of the opening of the housing."   The '556 Accused Products comprise a first part of the liquid storage portion comprising a first capillary material, provided in a vicinity of the opening of the housing.   For example, in the VUSE VIBE cartridge, a first capillary material with a heating coil wrapped around it is near the opening of the housing as shown below.



34.     Claim 1 recites "a second capillary material in fluid contact with the first capillary material and spaced apart from the opening by the first capillary material."  The '556 Accused Products comprise a second capillary material in fluid contact with the first capillary material and spaced apart from the opening by the first capillary material.  For example, the VUSE VIBE cartridge includes a second capillary material, which is a round pad capillary material, that is in contact with the first capillary material with a heating coil wrapped around it, and spaced apart from the opening of the housing by the first capillary material with a heating coil wrapped around it.



35.    Claim 1 recites "a second part of the liquid storage portion comprising a container configured to hold the liquid aerosol-forming substrate and to supply the liquid to the second capillary material."  The '556 Accused Products comprise a second part of the liquid storage portion comprising a container configured to hold the liquid aerosol-forming substrate and to supply the liquid to the second capillary material.  For example, the VUSE VIBE cartridge includes a container that holds the "e-liquid," which forms an aerosol when in use.  The e-liquid is supplied to the round pad capillary material.



36.     RJRV also actively, knowingly, and intentionally induces infringement of one or more claims of the '556 patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, offer for sale, sell, and/or import the '556 Accused Products, in this judicial district and elsewhere in the United States.  RJRV has been aware of the '556 patent at least as of June 29, 2020.  With this knowledge, on information and belief, RJRV continues to actively encourage, instruct, and promote the use of the '556 Accused Products by adult consumers in the United States, with knowledge that the induced acts constitute direct infringement of the '556 patent.  For example, RJRV posts marketing materials on its website (vusevapor.com) and provides instructions with the '556 Accused Products.  *See, e.g.*, http://vusevapor.com/faqs; Instruction Card Included in '556 Accused Products' Packaging (directing users to "Charge Unit," "Attach Pod/Cartridge/Tank," and "Vape & Enjoy!").  By at least these affirmative acts, RJRV actively encourages use of the '556 Accused Products, that results in direct infringement of the '556 patent in the United States, with the specific intent to induce, or was at a minimum willfully blind of inducing, infringement of the '556 patent.

37.     On information and belief, RJRV knowingly and intentionally contributes to the infringement of one or more claims of the '556 patent under 35 U.S.C. § 271(c).  For example, adult consumers directly infringe one or more claims of the '556 patent in the United States as

alleged above.  RJRV has been aware of the '556 patent since at least June 29, 2020.  On information and belief, RVRJ continues to offer for sale and sell in the United States the '556 Accused Products (such as Flavor Packs) that are material components of the patented invention, are especially made and/or especially adapted for use to infringe the '556 patent, are not a staple article of commerce suitable for substantial non-infringing use, and have no substantial non-infringing uses, and RJRV does so knowing or should have known that such products are especially made or especially adapted for use in infringement of the '556 patent.

38.     Counterclaim Plaintiff has suffered and continues to suffer damages as a result of RJRV's infringement of the '556 patent.

## COUNTERCLAIM III: INFRINGEMENT OF U.S. PATENT NO. 10,104,911 (AGAINST RJRV)

39.     PMP re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 38 as though fully set forth herein.

40.     RJRV has directly and indirectly infringed, and continues to infringe, one or more claims of the '911 patent, including claim 1, literally or under the doctrine of equivalents, by making, using, importing, selling, and/or offering to sell in the United States without authority, at least the VUSE SOLO, CIRO, and VIBE, together with their associated Flavor Packs (collectively, "the '911 Accused Products"), in violation of 35 U.S.C. § 271.

41.     Claim 1 recites an "aerosol generating system for heating a liquid aerosol-forming substrate, the system comprising."  The '911 Accused Products comprise an aerosol generating system for heating a liquid aerosol-forming substrate.  For example, as shown in the screenshots from their website reproduced below, RJRV describes its VUSE SOLO product as an "e-cig" for a quality "vaping experience."  Further, RJRV states that "Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist."  A picture of an assembled VUSE

SOLO product is shown below.  The bottom portion ("Power Unit") of the VUSE SOLO product includes a battery which supplies power to the top portion ("Flavor Pack").  The Flavor Pack of the VUSE SOLO includes a heating element and a liquid substrate that is heated to generate aerosol.





### Solo Complete Kit

PowerUnit + Flavor Pack (2 Cartridges per Pack)

$23.98

★★★★☆   |   491 Reviews

**Nicotine Level:**

4.8%

**Flavor:**

🔴 Original

**Qty**

1

ADD TO CART

Keep it simple with the Solo. This straightforward ==e-cig== offers both convenience and value—while still providing the consistent, quality ==vaping experience== Vuse is known for. To make it even simpler, this complete kit comes with everything you need to get started, including one power unit and one flavor pack of your choice (two flavor cartridges included).

The Solo is about the same size, look and feel as a traditional ==cigarette.== The sleek, compact unit houses a 270mAh battery that powers a dose of inspiration any time you need it. Just snap on the simple USB charger when you're due to power up.

You're sure to find a Solo flavor that jives with your tastes. Each cartridge holds 0.5mls of e-liquid with 4.8% nicotine—a small amount that packs a strong punch.

- All-in-One Device
- Compact 270mAh Battery
- 4.8% Nicotine
- 0.5mls of e-Liquid
- Snap-to-Charge USB

https://vusevapor.com/solo-complete-kit (annotations in yellow)



Product Information

**What is Vuse?**                                                                                          —

Vuse is an E-cigarette brand with several innovative vapor products on the market, including our flagship brands, Vuse Solo, Vuse Ciro, and Vuse Vibe.

**How do Vuse products work?**                                                                     —

Vuse power units heat our proprietary liquids and produce an aerosol, which is a vapor-like mist.

Please review the product-specific FAQs and the User Guide applicable to your Vuse power unit for information on proper handling, storage, and charging of your Vuse power unit.

https://vusevapor.com/faqs (annotations in yellow)

**Aerosol generating system for heating a liquid aerosol-forming substrate**

42.     Claim 1 recites "an aerosol-forming chamber."  The '911 Accused Products comprise an aerosol-forming chamber.  For example, aerosol is formed in an aerosol-forming chamber of the VUSE SOLO product as the liquid substrate is heated by the heating element, as shown below in the close-up view of the VUSE SOLO product.



43.     Claim 1 recites "leakage prevention means configured to prevent or reduce leakage

of liquid aerosol condensate from the aerosol generating system."  Claim 1 further recites "wherein

the leakage prevention means comprises at least one cavity in a wall of the aerosol-forming

chamber, for collecting liquid condensate formed from the aerosol-forming substrate."  The '911

Accused Products comprise leakage prevention means configured to prevent or reduce leakage of

liquid aerosol condensate from the aerosol generating system.  The '911 Accused Products further

comprise leakage prevention means that comprises at least one cavity in a wall of the aerosol-

forming chamber, for collecting liquid condensate formed from the aerosol-forming substrate.  For

example, as shown in the cross-section of the VUSE SOLO product in the image on the right

below, the VUSE SOLO includes a cavity located in a wall of the aerosol forming chamber.  This

cavity serves to collect liquid condensate formed from the aerosol-forming substrate and prevent

or reduce leakage of liquid aerosol condensate formed from the VUSE SOLO product.



44.    Claim 1 recites "wherein the at least one cavity is a blind hole recessed in the wall

of the aerosol-forming chamber and has an open end, a closed end, and a longitudinal direction

extending between the open end and the closed end."  Claim 1 further recites "wherein the at least

one cavity has a largest cross-sectional dimension x taken along a cross-section of the cavity in a

direction perpendicular to the longitudinal direction of the cavity, where x is 0.5 mm, or 1 mm, or

between 0.5 mm and 1 mm." The '911 Accused Products include at least one cavity that is a blind hole recessed in the wall of the aerosol-forming chamber and [that] has an open end, a closed end, and a longitudinal direction extending between the open end and the closed end. The '911 Accused Products further include at least one cavity [that] has a largest cross-sectional dimension x taken along a cross-section of the cavity in a direction perpendicular to the longitudinal direction of the cavity, where x is 0.5 mm, or 1 mm, or between 0.5 mm and 1 mm. For example, as shown in the cross-section of the VUSE SOLO on the left below, the cavity is a blind hole recessed in the wall of the aerosol-forming chamber of the VUSE SOLO. Also, as labeled in the cross-section of the VUSE SOLO on the left below, the bottom of the cavity is an "open end" and the top of the cavity is the "closed end." The longitudinal direction of the cavity extends along the length of the VUSE SOLO. Further, as shown below in the cross-section of the VUSE SOLO on the right, the cross-sectional dimension of the cavity, which is perpendicular to the longitudinal direction of the cavity, is about 0.9 mm, which is between 0.5 mm and 1 mm.



45.     The Vuse CIRO and VIBE do not differ materially from the Vuse SOLO with respect to infringement of the '911 patent and, therefore, infringe the '911 patent for the reasons described above.

46.     RJRV also actively, knowingly, and intentionally induces infringement of one or more claims of the '911 patent under 35 U.S.C. § 271(b) by actively encouraging others to make, use, offer for sale, sell, and/or import the '911 Accused Products, in this judicial district and elsewhere in the United States.  RJRV has been aware of the '911 patent at least as of June 29, 2020.  With this knowledge, on information and belief, RJRV continues to actively encourage, instruct, and promote the use of the '911 Accused Products by adult consumers in the United States, with knowledge that the induced acts constitute direct infringement of the '911 patent.  For example, RJRV posts marketing materials on its website (vusevapor.com) and provides instructions with the '911 Accused Products.  *See, e.g.*, http://vusevapor.com/faqs; Instruction Card Included in '911 Accused Products' Packaging (directing users to "Charge Unit," "Attach Pod/Cartridge/Tank," and "Vape & Enjoy!").  By at least these affirmative acts, RJRV actively encourages use of the '911 Accused Products, that results in direct infringement of the '911 patent in the United States, with the specific intent to induce, or was at a minimum willfully blind of inducing, infringement of the '911 patent.

47.     On information and belief, RJRV knowingly and intentionally contributes to the infringement of one or more claims of the '911 patent under 35 U.S.C. § 271(c).  For example, adult consumers directly infringe one or more claims of the '911 patent in the United States as alleged above.  RJRV has been aware of the '911 patent since at least June 29, 2020.  On information and belief, RVRJ continues to offer for sale and sell in the United States the '911 Accused Products (such as Flavor Packs and Power Units) that are material components of the

patented invention, are especially made and/or especially adapted for use to infringe the '911 patent, are not a staple article of commerce suitable for substantial non-infringing use, and have no substantial non-infringing uses, and RJRV does so knowing or should have known that such products are especially made or especially adapted for use in infringement of the '911 patent.

48.     Counterclaim Plaintiff has suffered and continues to suffer damages as a result of RJRV's infringement of the '911 patent.

## COUNTERCLAIM IV: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '268 PATENT (AGAINST RJRV AND RAI)

49.     Counterclaim Plaintiff restates and incorporates by reference each of the allegations of its Counterclaims in paragraphs 1-48.

50.     In their Complaint, Counterclaim Defendants allege that Counterclaim Plaintiff has infringed and is currently infringing claims 16 and 17 of the '268 patent by importing, selling, offering for sale, and/or distributing the IQOS system in the United States.

51.     Counterclaim Plaintiff denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true.  In particular, Counterclaim Defendants' Complaint fails to articulate a sufficient basis for alleging that the IQOS system meets all the limitations of claims 16 and 17 of the '268 patent, either literally or under the doctrine of equivalents.  For example, and at a minimum, the IQOS system fails to meet the "tubular cartridge with two open ends allowing air to flow therethrough" limitation.

52.     Further, Counterclaim Defendants' Complaint fails to articulate any basis for alleging that the IQOS system meets all the limitations of any claim of the '268 patent.

53.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiff and Counterclaim Defendants concerning the alleged infringement of the '268 patent.

## COUNTERCLAIM V: DECLARATORY JUDGMENT OF INVALIDITY OF THE '268 PATENT
## (AGAINST RJRV AND RAI)

54.     Counterclaim Plaintiff restates and incorporates by reference each of the allegations of its Counterclaims in paragraphs 1-53.

55.     In their Complaint, Counterclaim Defendants allege that the '268 patent is valid.

56.     Counterclaim Plaintiff denies that the '268 patent is valid and asserts that it is invalid for failure to comply with the requirements of 35 U.S.C. §101 *et seq.*

57.     For example, the claims of the '268 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on U.S. Patent No. 5,249,586, U.S. Patent No. 5,865,185, U.S. Patent Publication No. 2007/0102013, U.S. Patent No. 5,144,962, and U.S. Patent No. 4,947,874, alone or in combination with one another.

58.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiff and Counterclaim Defendants concerning the alleged validity of the '268 patent.

59.     Counterclaim Plaintiff is entitled to declaratory judgment from this Court that the asserted claims of the '268 patent are invalid.

## COUNTERCLAIM VI: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '542 PATENT
## (AGAINST RJRV AND RAI)

60.     Counterclaim Plaintiff restates and incorporates by reference each of the allegations of its Counterclaims in paragraphs 1-59.

61.     In their Complaint, Counterclaim Defendants allege that Counterclaim Plaintiff has infringed and is currently infringing claims 1-30 of the '542 patent by importing, selling, offering for sale, and/or distributing the IQOS system in the United States.

62.     Counterclaim Plaintiff denies these claims of infringement and believes that the Complaint has been filed without good cause for believing the allegations to be true. In particular, Counterclaim Defendants' Complaint fails to articulate a sufficient basis for alleging that the IQOS system meets all the limitations of claims 1-30 of the '542 patent, either literally or under the doctrine of equivalents. For example, and at a minimum, the IQOS system fails to meet the "a heating projection extending at least partially in the receiving chamber towards the proximal end of the housing and terminating at a free end which is configured to be inserted into the disposable aerosol forming substance" limitation of claim 1, and the "wherein the heating projection projects through the disposable aerosol forming substance of the disposable cigarette so that the heating member is in direct contact with at least a portion of the disposable aerosol forming substance" limitation of claim 19.

63.     Further, Counterclaim Defendants' Complaint fails to articulate any basis for alleging that the IQOS system meets all the limitations of any claim of the '542 patent.

64.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiff and Counterclaim Defendants concerning the alleged infringement of the '542 patent.

## COUNTERCLAIM VII: DECLARATORY JUDGMENT OF INVALIDITY OF THE '542 PATENT (AGAINST RJRV AND RAI)

65.     Counterclaim Plaintiff restates and incorporates by reference each of the allegations of its Counterclaims in paragraphs 1-64.

66.     In their Complaint, Counterclaim Defendants allege that the '542 patent is valid.

67.     Counterclaim Plaintiff denies that the '542 patent is valid and asserts that it is invalid for failure to comply with the requirements of 35 U.S.C. §101 *et seq.*

68.     For example, the claims of the '542 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on U.S. Patent No. 7,726,320 and U.S. Patent Pub. No. 2011/0147486, alone or in combination with one another.  As another example, the claims of the '542 patent are invalid under 35 U.S.C. § 112 because "receiving chamber…for receiving the disposable aerosol forming substance" lacks written description support.

69.     Thus, an immediate, real and justiciable controversy has arisen and exists between Counterclaim Plaintiff and Counterclaim Defendants concerning the alleged validity of the '542 patent.

70.     Counterclaim Plaintiff is entitled to declaratory judgment from this Court that the asserted claims of the '542 patent are invalid.

## DEMAND FOR JURY TRIAL

71.     PMP hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectfully request judgment in their favor and against Counterclaim Defendants as follows:

A.     Judgment of infringement of the '265 patent against RJRV;

B.     Judgment of infringement of the '556 patent against RJRV;

C.     Judgment of infringement of the '911 patent against RJRV;

D.     An award of damages adequate to compensate PMP for the infringement that has occurred, pursuant to 35 U.S.C. § 284, including prejudgment and post-judgment interest;

E.     An award of treble damages for willful infringement pursuant to 35 U.S.C. § 284;

F.     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff;

G.      Declare that PMP has not infringed, and is not now infringing any valid, enforceable, asserted claim of the RJR Asserted Patents;

H.      Declare that all asserted claims of the RJR Asserted Patents are invalid;

I.      Hold that no damages or royalties, attorneys' fees, costs, pre- or post-judgment interest, or any other compensation or damages are due or owed by PMP to RJR for any of the acts alleged in RJR's Complaint;

J.      Hold that RJR is not entitled to injunctive relief;

K.      Permanently enjoin RJR, its successors and assigns, and anyone acting in concert therewith or on its behalf, from attempting to enforce the RJR Asserted Patents against PMP or any parents, affiliates, or subsidiaries of PMP or its respective officers, agents, employees, successors, and assigns;

L.      An award of attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

M.      Costs and expenses in this action; and

N.      An award of any additional relief, in law and in equity, as the Court deems just and reasonable.


Dated: July 27, 2020                           Respectfully submitted,

                                               */s/ Maximilian A. Grant*
                                               Maximilian A. Grant (VSB No. 91792)
                                               maximilian.grant@lw.com
                                               Matthew J. Moore (*pro hac vice* pending)
                                               matthew.moore@lw.com
                                               LATHAM & WATKINS LLP
                                               555 Eleventh Street, N.W., Ste. 1000
                                               Washington, DC 20004
                                               Tel: (202) 637-2200; Fax: (202) 637-2201

Clement J. Naples (*pro hac vice* pending)
clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel: (212) 906-1200; Fax: (212) 751-4864

Gregory K. Sobolski (*pro hac vice* pending)
Gregory.sobolski@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600; Fax: (415) 395-8095

Brenda L. Danek (*pro hac vice* pending)
brenda.danek@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700; Fax: (312) 993-9767

*Counsel for Defendant Philip Morris Products S.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of July, 2020, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record:

<div style="margin-left: 50%">

*/s/ Maximilian A. Grant*

Maximilian A. Grant (VSB No. 91792)

**LATHAM & WATKINS LLP**

555 Eleventh Street, N.W., Suite 1000

Washington, DC 20004

Telephone: (202) 637-2200

Facsimile: (202) 637-2201

Email: max.grant@lw.com

*Counsel for Defendant Philip Morris Products S.A.*

</div>