**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RAI STRATEGIC HOLDINGS, INC. and R.J. REYNOLDS VAPOR COMPANY,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA, INC.; and PHILIP MORRIS PRODUCTS S.A.,<br><br>Defendants and Counterclaim Plaintiffs. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil No. 1:20-cv-00393-LO-TCB |

## JOINT PROPOSED DISCOVERY PLAN PURSUANT TO RULE 26(f)

Pursuant to Federal Rule of Civil Procedure 26(f) and this Court's Order dated August 10, 2020 (Dkt. 79), Plaintiffs RAI Strategic Holdings, Inc. ("RAI") and R.J. Reynolds Vapor Company ("RJRV") (collectively, "Reynolds" or "Plaintiffs-Counterclaim Defendants"), and Defendants Altria Client Services LLC ("ACS"), Philip Morris USA, Inc. ("PM USA"), and Philip Morris Products S.A. ("PMP") (collectively, "Defendants," or "Defendants-Counterclaim Plaintiffs"), hereby submit this Joint Proposed Discovery Plan Pursuant to Rule 26(f) in advance of the Rule 16(b) Pretrial Conference on Wednesday, **September 9, 2020 at 11:00 a.m.**  The parties conferred on August 19, 2020 and August 31, 2020, where they considered the nature and basis of the claims, defenses, possibility of prompt settlement or resolution of this case, trial before a magistrate judge, disclosures under Rule 26(a)(1), and development of a discovery plan.

## I.      SCHEDULE

A.      **Reynolds's Position:**  Plaintiff RJRV has moved to sever and transfer Defendants' infringement counterclaims (Dkt. 65, Counterclaims I-III; Dkt. 66, Counterclaims I-II) (collectively, claims relating to the "Defendants' Patents").  *See* Dkt. 67.  Should Defendants' infringement

1

counterclaims not be severed and not be transferred, Reynolds plans to move for a separate trial on those claims under Rule 42(b), which provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

Reynolds requests that the schedule for trial and pre-trial matters on Defendants' infringement counterclaims (*i.e.*, claims relating to the Defendants' Patents) be adjusted to give Reynolds a fair and adequate time to respond to those claims. In particular, due to the difference in time between when Reynolds asserted its patent infringement claims (on **April 9, 2020**), and when Defendants asserted their five patent infringement counterclaims (on **June 29, 2020**, about 12 weeks later), Reynolds requests that the schedule for trial and pre-trial matters on Defendants' infringement counterclaims be adjusted accordingly, with the pre-trial conference and trial set for a time approximately 12 weeks later than the claims relating to the Reynolds Patents (*i.e.*, Reynolds un-stayed claims (Dkt. 52, Counts one and five), and Defendants' declaratory judgment counterclaims (Dkt. 65, Counterclaims IV-VII; Dkt. 66, Counterclaims III-VI)). Defendants' arguments below regarding the timing of various amendments of pleadings are confusing, irrelevant, and contrary to the facts. *First*, the important dates to consider are the dates when each side was first put on notice of the other side's infringement claims. Those dates are **April 9, 2020**, when Reynolds first asserted its patents, and **June 29, 2020**, when Defendants first asserted their counterclaim patents. That is when each side was able to begin its investigation and defense of the other side's claims. *Second,* the later amendments to the pleadings by each party (i.e., Reynolds's amended complaint on July 13, 2020 (Dkt. 52) and Defendants' amended answer and counterclaims on July 27, 2020 (Dkts. 65 and 66)), did not assert any new patents, and are irrelevant to the date when each side was first put on notice of the other side's claims. *Finally*, Defendants' argument below regarding when the pleadings on each sides claims "closed" is similarly irrelevant to the fundamental issue of notice of the patent

2

infringement claims. But in any event, it is Reynolds's pleadings that "closed" first. Defendants answered Reynolds's claims on July 27, 2020 (Dkts. 65 and 66), "closing" the pleadings on Reynolds's claims. Reynolds answered Defendants' counterclaims on August 3, 2020 (Dkts. 69 and 70), "closing" the pleadings on Defendants' counterclaims.

Furthermore, Reynolds does not believe that it is feasible to complete the additional fact and expert discovery necessary for Defendants' five additional patent infringement claims in the timeframe currently set by the Court (by January 8, 2021), and believes it would be impossible to complete it in the arbitrarily shortened timeframe for fact discovery proposed by Defendants (November 13, 2020). For instance, Reynolds was only able to begin its investigation and search for experts when it learned of the Defendants' infringement claims on June 29, 2020. That each side's claims accuse different potentially reduced-risk smoke-free alternatives to smoking does not alleviate the prejudice to Reynolds of having to litigate on a 12 week shorter schedule than Defendants, nor does it prohibit trying such claims on separate schedules. *See Samsung Elecs. Co. v. Nvidia Corp.*, No. 3:14CV757, 2015 WL 13723075, at *1 (E.D. Va. May 19, 2015) (severing defendant's infringement counterclaims brought 5 months later than plaintiff's claims in spite of defendant's argument that: (i) both sides' infringement claims "relate to the same type of products" and (ii) plaintiff was on notice of defendant's asserted patents for over a year (No. 3:14-cv-00757-REP-DJN, Dkt. 135, 5)). For judicial economy, efficient case management, and to achieve justice in these matters, Reynolds's respectfully requests that this Court ensure that it have the same fair opportunity to defend itself that Defendants seek. *See Samsung Elecs. Co.,* 2015 WL 13723075, at *1 (where Judge R. Payne found that severance of each side's infringement claims would "serve the interest of justice and judicial efficiency; will avoid the prejudice to the Plaintiff that is almost certain to occur by trying unrelated patent issues to a jury; will make case management more effective, thereby

enabling the pretrial and trial process to achieve justice in this complex matter; and finding that severance will work no prejudice to the defendants.").

For the convenience of the Court, Reynolds's proposed deadlines for the claims relating to the Reynolds Patents and the claims relating to the Defendants' Patents (to the extent that they are not severed or transferred) are set forth in **Exhibit A**.

B.     **Defendants' Position:**  Defendants' proposed schedule follows the Court's order (Dkt. 79) that all discovery, including discovery on Defendants' counterclaims, is completed by January 8, 2021.  Accordingly, Defendants propose one schedule for all claims in the case, as set forth in **Exhibit B**.

Further, a single schedule (per the Court's order) will serve judicial economy.  All of the claims at issue are patent infringement claims, and all involve patents directed to potentially reduced-risk smoke-free alternatives to smoking.  A single schedule with a single deadline for fact discovery, expert discovery, and claim construction briefing will (1) facilitate an orderly and streamlined discovery process on these technologically related claims and (2) conserve the Court's resources because the Court will only need to conduct a single claim construction hearing, a single pretrial conference, and a single trial.  Plaintiffs' proposal will force the parties and Court to contend with arbitrarily staggered deadlines, and participate in two claim construction hearings, two pretrial conferences, and two trials.  *See Broadcom Corp. v. Sony Corp.*, No. 16-1052 JVS (JCGx), 2016 WL 9108039, at *4 (C.D. Cal. Dec. 20, 2016) (separate case deadlines "hinders judicial economy" and forces court to "spend twice the amount of judicial resources to resolve a dispute between the same parties, who are represented by the same attorneys").

Plaintiffs contend that their patent claims are entitled to proceed first because they purportedly filed their complaint first.  But Plaintiffs conceded that their initial complaint was deficient, and voluntarily amended their complaint without opposing Defendants' motion to dismiss.  Plaintiffs

4

therefore filed their operative complaint *after* Defendants' complaint.  *See* Dkt. 39, 40, 52. Accordingly, if anything, Defendants' claims should proceed first.  Indeed, Defendants filed their counterclaims as soon as their response to the complaint was due—before any scheduling order issued, and before discovery began.

Plaintiffs also contend that it is not "feasible" to complete fact and expect discovery on Defendants' counterclaims in the current timeframe provided by the Court's order.  But Plaintiffs filed suit in this Court, and should not be permitted to re-write the Court's order that discovery be complete by January 8, 2020 because of its complaint that the Court's timeline is not "feasible." Moreover, Plaintiffs' complaint that they had 12 fewer weeks to investigate and search for experts is irrelevant.  First, expert reports are months away.  Second, Plaintiffs appear to have had no problem finding experts as they have already stated that they will be filing IPRs in the "near future."  Third, Plaintiffs' assertion is suspect given that the parties have been litigating each other in multiple U.S. and foreign jurisdictions.  Finally, discovery began on the same date for all claims and is already proceeding in parallel on all claims.  Both Plaintiffs and Defendants have served discovery covering all claims, confirming that a single schedule for discovery is feasible and practical.

At bottom, Plaintiffs' proposal is a request that the Court sever *and delay* Defendants' counterclaims—even if the Court denies Plaintiffs' pending motion to sever Defendants' counterclaims.  Tellingly, the only case Plaintiffs cite (*Samsung*) concerns severance, confirming that Plaintiffs' schedule is nothing more than another request for severance.  Regardless, *Samsung* is easily distinguishable.  There, the court severed counterclaims filed more than five months after the complaint was filed, alleging infringement of over 200 accused products, after a scheduling order was already entered.  And, unlike here, the technologies between the claimant's and counterclaimant's patents were markedly different (semiconductor manufacturing, computer cases and circuit design on the one hand and graphics processing on the other). *Samsung Elecs. Co. v.*

*Nvidia Corp.*, No. 3:14cv757, 2015 WL 13723075, at \*1 (E.D. Va. May 19, 2015); *see also* Dkt. 65, 87 in No. 3:14cv757 (E.D. Va.).  Defendants' proposed schedule should be adopted and all claims at issue here should proceed on the same schedule (**Exhibit B**).

A chart with the parties' competing schedules is shown below.

| Event | Plaintiffs' Proposal* | Defendants' Proposal* |
|---|---|---|
| File Protective Order | September 9, 2020 (or move for one to be heard September 11, 2020) | September 2, 2020 |
| Rule 26(a)(1) Initial Disclosures | September 9, 2020 | September 9, 2020 |
| Parties to Exchange Claim Terms for Construction | October 2, 2020 | October 2, 2020 |
| Parties to Exchange Preliminary Claim Constructions and Extrinsic Evidence In Support Thereof | October 9, 2020 | October 9, 2020 |
| Substantially Complete Document Production | No date offered | October 23, 2020 |
| Parties File Simultaneous Opening Claim Construction Briefs | October 23, 2020 | October 23, 2020 |
| Parties File Simultaneous Responsive Claim Construction Briefs | November 6, 2020 | November 6, 2020 |
| Claim Construction Hearing | November 13, 2020 | November 10-13, 2020 |
| Close of Fact Discovery | January 8, 2021 | November 13, 2020 |
| Opening Expert Reports for Party with Burden of Proof | November 25, 2020 | November 20, 2020 |
| Responsive Expert Reports for Party without Burden of Proof | December 22, 2020 | December 18, 2020 |
| Close of Expert Discovery (Defendants) Close of Fact/Expert Discovery (Plaintiffs) | January 8, 2021 | January 8, 2021 |
| Parties to Electronically File On or Before PTC the Rule 26(a)(3) Disclosures; List of Exhibits for Trial; List of Witnesses for Trial; Written Stipulation of Uncontested Facts | January 15, 2021 | January 15, 2021 |
| Deadline to File Dispositive Motions | January 15, 2021 | January 15, 2021 |
| Final Pretrial Conference (1:30 pm) | January 15, 2021 | January 15, 2021 |

| Event | Plaintiffs' Proposal* | Defendants' Proposal* |
|---|---|---|
| Objections to Exhibits | January 25, 2021 | January 25, 2021 |
| Briefing on *Daubert* Motions and Motions *In Limine* | TBD:  At least 14 days before trial | Set for hearing at least 14 days before trial |
| Trial | TBD:  4-8 weeks after the Final Pretrial Conference | TBD |

\* Plaintiffs' proposed dates apply to claims relating to Reynolds's asserted patents only. Defendants' proposed dates apply to all claims in the case.

## II.    SETTLEMENT

The parties will comply with any and all directions by the Court to mediate or pursue settlement discussions.

## III.    TRIAL

A.    The parties do not consent to the exercise of jurisdiction by a United States Magistrate Judge for trial and entry of final judgment.  A jury trial has been demanded.

B.    At this early stage of the proceedings, the parties' estimates for trial time are set forth below.

C.    **Reynolds's Position:**  Reynolds's believes that the parties should meet and confer about the length of the trial(s) after this Court rules on the pending motion to sever and transfer and any necessary motion for a separate trial, and prior to the final pre-trial conference(s).  At this time, Reynolds estimates that a trial on claims relating to the Reynolds Patents in this action will take approximately five (5) full trial days and a trial on Defendants' infringement counterclaims will take eight (8) full trial days.  To the extent that the motion to sever and transfer is denied and that the motion for separate trials is denied, Reynolds estimates that the total time for trial of each side's claims will take thirteen (13) full trial days.

D.    **Defendants' Position:**  At this time, Defendants-Counterclaim Plaintiffs anticipate that the trial on all claims will take approximately 10 court days to complete.

## IV.    <u>INITIAL DISCLOSURES</u>

The parties agree to exchange Federal Rule 26(a)(1) Initial Disclosures on or before **September 9, 2020**.

## V.    <u>JOINDER OF PARTIES AND AMENDMENT OF THE PLEADINGS</u>

Any amendment of the pleadings or joinder of additional parties shall be governed by the Federal Rules.

## VI.    <u>FACT DISCOVERY</u>

A.    This Discovery Plan shall not be construed to limit the parties' rights to initiate or oppose discovery, nor limit their rights to timely supplement or otherwise amend their disclosures consistent with the Federal Rules.

B.    **Preservation and Timing:**  The parties are taking all reasonable steps necessary to preserve all discoverable material.  The parties agree to produce documents on a rolling basis in response to document requests in this case.  The parties shall provide or make all materials obtained from third parties pursuant to Rule 45 available to other parties within three (3) business days of receipt.

C.    **Limits on Written Discovery:**  Neither side shall serve on the other side more than thirty (30) interrogatories, including parts and subparts, without leave of the Court.

D.    **Depositions**

1.    A party may not exceed five (5) non-party, non-expert witness depositions. The deposition of any non-party who is a named inventor on a patent-in-suit will be considered a party deposition.  The parties agree that Reynolds may take a maximum of seventy (70) deposition hours of ACS and PM USA, including depositions of named inventors of the patents-in-suit; and a maximum of seventy (70) deposition hours of PMP, including depositions of

named inventors of the patents-in-suit. The parties agree that ACS, PM USA, and PMP (*i.e.*, Defendants) may jointly take a maximum of seventy (70) deposition hours of Reynolds, including depositions of named inventors of the asserted patents.

2. Individually-noticed depositions that are conducted entirely in English will presumptively be limited to one day of seven (7) hours on the record; individually noticed depositions that are conducted at least partially through a translator will presumptively be limited to a total of ten (10) hours on the record. Whether the length of an on-the-record deposition time on a single day will exceed seven (7) hours is subject to the preferences and discretion of the witness. The parties agree to negotiate in good faith if it appears that a particular deposition warrants terms, conditions and/or time limits different than those specified above, and nothing in this section shall be interpreted to prevent the parties from agreeing to such different terms, conditions and/or time limits for a particular deposition.

3. For fact witnesses located within or outside the U.S., the parties agree to conduct the deposition in a city convenient to the witness. The requesting party is responsible for arranging the location of the deposition in the city specified by the producing party. The parties will endeavor to schedule depositions in blocks in the same location to lessen the costs and burden of travel.

4. For expert witnesses, the parties agree to make reasonable efforts to conduct depositions near Alexandria, VA and to avoid conducting simultaneous depositions. For a non-party witness, the parties agree to conduct the

deposition in a city reasonably agreeable to the non-party witness. The requesting party is responsible for arranging the location of the deposition in the agreed-upon city. Nothing in this subsection restricts a party's ability to seek compliance with applicable discovery rules and any ruling(s) by the Court with regard to third-party witnesses.

5. For both fact and expert witnesses, the parties will work together to reach an agreed resolution should the global pandemic prevent or make impossible in-person depositions. It shall be each witness' choice whether to conduct his/her deposition in person or by remote means.

6. The parties agree that, notwithstanding Local Civil Rule 30(D)-(E), each party shall bear its own costs and fees for transporting its counsel of record to any deposition taken beyond a division of this Court.

E. **Production of Samples:** The parties agree to work cooperatively in good faith to exchange product samples, and specifically requested components thereof, in a timely manner so that counsel and/or experts have sufficient time to analyze them under the applicable schedule. Samples will be sent to the address(es) designated by the receiving party.

F. **Documents Received in Response to a Subpoena:** Any party who receives documents from a third party pursuant to a subpoena shall reproduce those documents to the other parties within three (3) business days of receipt. The parties agree that they shall make reasonable efforts to reproduce such third-party materials in fewer than three (3) business days when necessary such as, for example, in the event such documents may be used in a deposition. Where reproduction of the documents within three (3) business days is not feasible, the party who received the documents shall provide prompt notice to the other parties and the issue will be resolved on a case-by-case basis.

## VII.   ELECTRONICALLY STORED INFORMATION

### A.   Email

1. The parties agree that no electronic mail (including attachments) need be searched or produced unless good cause for the search and production can be shown after a meet-and-confer. The parties agree that, in the event email is sought, the request for email shall be as specific and narrow as possible, including limiting the request to a small number of custodians and limiting the number of search terms. Email attachments maintained separately as independent documents or files may not be withheld from discovery on the basis of having been transmitted or obtained by email.

2. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper timeframe.

3. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave.

4. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A

11

disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

B. **Form of Production and Electronically Stored Information:** Unless otherwise agreed between the parties, all documents, including any electronically stored information ("ESI"), shall be produced in native-file format or as TIFF images as follows, subject to the technical capabilities of the producing party or its vendor:

1. If ESI (or non-ESI) is produced as TIFF images, it shall be produced as single-page TIFF images, black and white, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file) or Opticon (OPT file) format, including document breaks and page counts. The producing party may reproduce any document in color in JPG format or at a higher resolution. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the originally produced document where practicable. The receiving party may reasonably request the reproduction of any document in color in JPG format or at a higher resolution.

2. Document level extracted text files with a .txt extension will be provided for all produced documents. The text file name will correspond to the beginning production number of the image or native file. A field will be included in the DAT with the path to the corresponding text file. Where extracted text is unavailable, Optical character recognition ("OCR") data shall be included as

12

part of the document-level TXT file.  Such OCR data shall match the pagination of the corresponding TIFF images.  To the extent a producing party provides OCR data, the receiving party accepts the data "as is," and the producing party accepts no liability as to the accuracy of searches conducted using the OCR data.

3.  Images shall be produced using a unique file name that will be the production number of that page (*e.g.*, ABC000001.TIFF).  The production number shall appear on the face of the image.  For documents that are produced as native files, the producing party will include in the set of TIFF images a one-page slipsheet that reads "FILE PRODUCED NATIVELY" where the native file would otherwise have been produced.  The one-page slipsheet will include the production number of the corresponding native file and the confidentiality designation.  In addition, native files shall be produced using a name that bears the production number, for example: ABC000002.xls.  The producing party shall also include any confidentiality designation in the produced filename where possible and reasonable, for example: ABC000002_CONFIDENTIAL.xls.  The DAT file shall also include a path to the native file.

4.  Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository.  The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially

13

numbered after that first attachment.  Any parent-child relationship will be reflected in the DAT file.

5.  Productions that contain foreign language documents shall be Unicode compliant.

6.  To the extent possible, the unitization of a produced electronically stored document and any attachments or affixed notes shall be maintained as it existed in the original file or computer.  Scanned/paper documents should be logically unitized (*i.e.*, to preserve page breaks between documents and otherwise allow separate documents to be identified).

7.  If unitization cannot be maintained, the original unitization shall be documented in the associated load file or otherwise electronically tracked if possible.

8.  Each party will use reasonable efforts to filter out common system files and application executable files.

9.  A party is required to produce only a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians.  Metadata for any de-duplicated files shall reflect each custodian from whom the document was collected and processed.  To the extent that de- duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

10. The parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

11. No party shall be required to create any metadata for production (*e.g.*, hash value or other metadata not associated with ESI in the ordinary course of business) except that the parties will create a field to indicate whether or not a document has been marked confidential pursuant to the protective order (see below list of metadata fields). However, a receiving party may not rely solely on this field to identify information and documents that it is required to treat as confidential. Any document produced with a confidentiality banner on the produced image is to be afforded confidential treatment under the Protective Order regardless of whether there is an entry in this field.

12. A party producing documents pursuant to this paragraph will provide an ASCII- delimited load file (DAT) with at least the following metadata fields:

| Field Name | Field Description | Sample Value |
|---|---|---|
| BegBates | Beginning production number for a given file/document | ABC00000001 |
| EndBates | Ending production number for a given file/document | ABC00000025 |
| File Name | Name of the file | Contract.docx |
| BegAttach | Bates number for the first page of first attachment | ABC00000002 |
| EndAttach | Bates number for the last page of last attachment | ABC00000005 |
| Pgcount | Total number of pages in the document | 13 |
| Title | The Title property of a file | Title (subject line for emails, file name for non-email) |
| All Custodians | Identify all custodians where document was de-duped | Doe, John; Doe, Jane |
| All Filepaths | Identify all filepaths where documented was de-duped | C:\temp; f:\DepartmentShare |
| Author | The Author property of an efile document | John Doe |

15

| Field Name | Field Description | Sample Value |
|---|---|---|
| FileExtension | The file extension | Doc |
| FileSize | Filesize in bytes | 64590 |
| Hash | Unique identifier of the file (MD5 or SHA) | De4532af543509 kd |
| DateCreated | Document date created | mm/dd/yyyy |
| Last Modified | Date Document was last modified | mm/dd/yyyy |
| Confidentiality | Confidentiality designation | CONFIDENTIAL |
| TextLink | Contains path to .TXT files | \FullText\001\AB C00002.txt |
| NativeLink | Contains path to native files | \Natives\001\AB C000002.xls |

C.      **Natives:**  The producing party has the option of producing as native files any spreadsheet, presentation, or database file, and other documents that cannot be converted to a TIFF image format in a readily-usable and legible format.  In addition, a producing party shall not be required to produce in TIFF format when the conversion to image TIFF format would impose unreasonable cost on the producing party and/or would result in unintelligible documents.  If documents are produced in native format, the producing party shall also provide extracted text files. A producing party shall reasonably comply with reasonable requests that spreadsheets and other documents produced in TIFF format that are unintelligible or not readily usable be produced in another format, such as native format.  The parties also shall reasonably comply with reasonable requests for the production of higher-resolution or color images.  The producing party shall have the option of producing the native-file version of the documents in response to such requests.

D.      **Sources Not To Be Searched:**  Absent a showing of good cause by the requesting party, the parties agree that the following sources need not be searched and therefore need not be preserved: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is unintelligible on the systems in use; residual,

fragmented, damaged, permanently deleted, slack, and unallocated data; voicemail systems; text messages; mobile devices; personal home computers; instant messaging logs; and social media or other web-based communications.  The parties agree to meet and confer if relevant unique hard copy documents or physical materials are discovered during the document collection process.

## VIII.  CROSS-USE

The parties have produced and continue to produce documents in the case captioned: *In The Matter Of Certain Tobacco Heating Articles And Components Thereof*, U.S. International Trade Commission, No. 337-TA-1199 (the "ITC Case"), which may also relate to this matter.  The parties therefore agree that all materials produced in the ITC Case by any party shall be treated by the parties as those produced in this matter, under the Protective Order entered in this matter.

## IX.  PROTECTIVE ORDER

A.    **Reynolds's Position:**  The parties shall submit a stipulated Protective Order on or before **September 9, 2020**, or should they fail to agree by that date, they shall file any motions for entry of a Protective Order, noticed for hearing on **September 11, 2020**, or the next date available on the Court's motion calendar.

B.    **Defendants' Position:** The parties shall submit a Protective Order on or before **September 2, 2020**.

C.    The parties agree that, until the Court enters a Protective Order, all documents produced pursuant to this Plan and in response to discovery requests shall be restricted to the parties' outside counsel.  Other than due to confidentiality restrictions to a third party, no party may fail to provide discovery based on the fact that the Protective Order has not yet been entered.

## X.  PRIVILEGED INFORMATION

A.    **Application of U.S. Law:**  Regardless of the country where documents, information and/or communications were created, occurred and/or are maintained, the parties agree that the full

17

protections of United States privilege law apply to all aspects of this matter and any related matters, and that for purposes of applying United States privilege law, all foreign lawyers and patent agents will be considered U.S. lawyers and patent agents, respectively.

B.    **Support Personnel:**    Counsel's outside support personnel, including translators, graphics personnel, trial consultants, document collection and review personnel, and the like, are included within counsel's privilege and Protective Order provisions, subject to the requirements of the Protective Order.

C.    **Inadvertent Disclosure**

1.    If a document or information inadvertently produced in discovery is subject to a claim of attorney-client privilege, work product, or other immunity ("privileged information"), the inadvertent production of that privileged information shall not be deemed to constitute a waiver of any applicable privileges or protections.  Likewise, consistent with Federal Rule of Evidence 502(d), the inadvertent production of any privileged or work product documents or information is not a waiver in the pending case or in any other federal or state proceeding.  For example, the inadvertent production of privileged information in this case as part of a production by a party is not itself a waiver of any privileged or protection in this matter or any other federal or state proceeding.

2.    When a receiving party identifies potentially privileged information that may have been inadvertently produced, it shall promptly notify the producing party. After a producing party receives such a notice, or if it discovers an inadvertent production on its own, the producing party shall promptly provide notice to any party that received the privileged information that: (a) identifies the

18

privileged information; (b) identifies the author(s) and recipient(s); (c) specifies the claimed privilege or protection; and (d) explains the basis for the claimed privilege or protection.

3.  After receiving such a notice, the receiving party shall (a) within seven (7) days, return or destroy the specified privileged information along with any copies it has of the document or information; (b) not use, review, or disclose the document or information until the claim is resolved; and (c) within seven (7) days, take reasonable steps to retrieve the document or information if the person disclosed it to others before being notified and inform by the producing party of that fact.

4.  Such return or destruction shall not preclude the receiving party from subsequently seeking to compel production of the privileged information. The party that produced the document must preserve the document or information until the claim of privilege or protection is resolved.

D.  **Privilege Logs:**  The parties agree that the preparation and exchange of privilege logs is a costly and burdensome exercise. Accordingly, the parties shall not, as a general matter, exchange privilege logs, except to the extent required above. However, nothing shall prohibit a party from making a request for a privilege log as to a specific custodian or issue upon a showing of good cause. In the event a dispute arises where a party believes that the production of a privilege log limited in scope may be appropriate, the parties agree to meet and confer in good faith regarding the propriety and scope of such a privilege log.

## XI.    <u>EXPERT DISCOVERY</u>

A.  The parties agree to be bound by Federal Rule of Civil Procedure 26(b)(4) as to discovery of expert materials.

B.    **Reynolds's Position**

1.    The parties should make expert disclosures relating to the Reynolds Patents at the times set forth in **Exhibit A**.

2.    In the event that RJRV's motion to sever and transfer Defendants' infringement counterclaims is denied, the parties should make expert disclosures relating to the Defendants' Patents at the times set forth in **Exhibit A**.

C.    **Defendants' Position:** Expert disclosures relating to all patents should proceed on the dates as set forth in **Exhibit B**. Defendants' proposed schedule follows the Court's order (Dkt. 79) that all discovery, including discovery on Defendants' counterclaims, be completed by January 8, 2021. Further, as discussed above, Defendants filed their counterclaims before Plaintiffs filed their operative complaint. *See supra*, Section I.B.

XII.    **CLAIM CONSTRUCTION**

A.    If any party is relying on expert testimony (including declarations) to support claim construction arguments in its claim construction brief, that party will make the relevant expert(s) available for deposition no later than seven (7) business days prior to the claim construction hearing, though the deposition may take place after this time by mutual agreement between the parties. Any such deposition will be limited to three (3) hours, and questioning shall be limited to the content of the expert's claim construction opinions.

B.    **Reynolds's Position**

1.    **Reynolds Patents:** Each side shall exchange their identification of claim terms from the Reynolds Patents that the parties contend need construction on **October 2, 2020.** The parties will then exchange preliminary claim constructions and identify extrinsic evidence in support of those constructions

20

on **October 9, 2020**. The parties will simultaneously file opening claim construction briefs on **October 23, 2020,** and responsive claim construction briefs on **November 6, 2020,** for a claim construction hearing on or around **November 13, 2020**.

2. **Defendants' Patents:** In the event that RJRV's motion to sever and transfer Defendants' infringement counterclaims is denied, each side shall exchange their identification of claim terms from the Defendants' Patents that the parties contend need construction on **December 15, 2020**. The parties will then exchange preliminary claim constructions and identify extrinsic evidence in support of those constructions on **December 22, 2020**. The parties will simultaneously file opening claim construction briefs on **January 15, 2021**, and responsive claim construction briefs on **January 29, 2021**, for a claim construction hearing on or around **February 5, 2021**.

C. **Defendants' Position:** Identification of claim terms, exchange of claim constructions and extrinsic evidence, claim construction briefing, and a claim construction hearing for all patents should proceed on the dates set forth in **Exhibit B**. Defendants' proposed schedule follows the Court's order (Dkt. 79) that all discovery, including discovery on Defendants' counterclaims, be completed by January 8, 2021. Further, as discussed above, Defendants filed their counterclaims before Plaintiffs filed their operative complaint. *See supra*, Section I.B.

## XIII. <u>ELECTRONIC SERVICE</u>

A. The parties agree that all documents that are not served through the Case Management/Electronic Case Filing (CM/ECF) system may be served via email, such email constituting effective service equivalent to hand delivery if directed to the designated email addresses, pursuant to Fed. R. Civ. Proc. 5(b)(2)(E):

| Party | Designated Email Address |
|---|---|
| Plaintiffs-Counterclaim Defendants | RJREDVA@jonesday.com |
| Defendants-Counterclaim Plaintiffs | pmiedva.lwteam@lw.com |

The parties further agree that if they serve documents by any other means, they will also provide courtesy copies of such documents on the opposing party using the email addresses above. The parties also agree that only individuals permitted access to documents in accordance with the Protective Order will be included in the above email distribution addresses.

B.      When the size of the file containing any such document is larger than 10 MB, and transmission by email is impractical, same day service of the documents in electronic form may be made via secure file transfer over FTP, extranet, or hand delivery of electronic media. Parties may also serve hard copies of documents if necessary for timely service, provided that electronic copies of those documents also shall be provided to the other parties.

C.      Correspondence that is not subject to service requirements and that does not purport to invoke or satisfy any duties or response deadlines may be transmitted via email to each of the designated service email addresses above. Email transmitted pursuant to this section addressed to an individual other than the designated service email addresses above shall not be deemed delivered for purposes of invoking a deadline.

## XIV.   *INTER PARTES* REVIEW

Defendant PMP has filed petitions for *Inter Partes* and Post Grant review of Plaintiffs' asserted patents. On May 8, 2020, PMP filed IPR2020-00921 on U.S Patent No. 9,814,268, and on June 26, 2020, PMP filed PGR2020-00071 and IPR2020-01188 on U.S. Patent No. 10,492,542.

Reynolds is currently evaluating and conducting its diligence on the Defendants' Patents asserted on June 29, 2020, and expects to file petitions for *Inter Partes* and/or Post Grant Review on some or all of the Defendants' Patents in the near future.

XV.     **DISPOSITIVE MOTIONS**

Dispositive motions may be filed at any time on or before the date of the applicable Final Pretrial Conference.

XVI.    **FINAL PRE-TRIAL CONFERENCE**

    A.     **Reynolds's Position**

        1.     **Reynolds Patents:**  As ordered by this Court, the Final Pre-Trial Conference will be held, **January 15, 2021 at 1:30 p.m**.  Reynolds requests that ordered Final Pre-Trial Conference be for claims relating to the Reynolds Patents only.

        2.     **Defendants' Patents:**  Due to almost 12 week difference in time between when Reynolds asserted their two active and un-stayed patent infringement claims and when Defendants asserted their five infringement counterclaims, Reynolds requests that the Final Pre-Trial Conference on claims relating to the Defendants' Patents (to the extent that they are not severed and not transferred) be held approximately 12 weeks later, on or around **April 9, 2020**.

    B.     **Defendants' Position:**  Pursuant to the Court's Order (Dkt. 79), the Final Pretrial Conference for all claims will be held on **January 15, 2021 at 1:30 p.m**.  Defendants' proposed schedule follows the Court's order (Dkt. 79) that all discovery, including discovery on Defendants' counterclaims, be completed by January 8, 2021.  Further, as discussed above, Defendants filed their counterclaims before Plaintiffs filed their operative complaint.  *See supra*, Section I.B.

    C.     The parties shall electronically file on or before the Final Pretrial Conference(s) the Rule 26(a)(3) disclosures and a list of the exhibits to be used at trial, a list of the witnesses to be called at trial and a written stipulation of uncontested facts.  The exhibits themselves or a copy should be exchanged with opposing counsel before the conference.  Objections to exhibits must be filed

within ten (10) days after the conference(s); otherwise the exhibits shall stand admitted in evidence. The original exhibits shall be delivered to the clerk as provided by Local Rule 79(A).  Dkt. 79.

## XVII.  *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE*

The parties agree that all *Daubert* motions to exclude expert testimony and all motions *in limine* shall be filed in time to be heard at least two weeks before the applicable trial.  The parties shall meet and confer and submit a briefing schedule for any such motions on or before the applicable Final Pretrial Conference.

## XVIII. MODIFICATION

The parties agree that a party's agreement to the deadlines and limitations in this plan is without prejudice to its right to seek modification of the plan and pretrial schedules pursuant to Rules 16 and 26.

**EXHIBIT A:  REYNOLDS'S PROPOSED SCHEDULES**

| Event | Proposed Deadline for Reynolds's Patents | Proposed Deadline for Defendants' Patents |
| --- | --- | --- |
| Rule 26(a)(1) Initial Disclosures | September 9, 2020 | September 9, 2020 |
| Rule 16(b) Pretrial Conference (11:00 am) | September 9, 2020 | September 9, 2020 |
| Deadline to Submit a Stipulated Protective Order, or Move for One to be Heard September 11, 2020 | September 9, 2020 | September 9, 2020 |
| Parties to Exchange Claim Terms for Construction | October 2, 2020 | December 15, 2020 |
| Parties to Exchange Preliminary Claim Constructions and Extrinsic Evidence In Support Thereof | October 9, 2020 | December 22, 2020 |
| Parties File Simultaneous Opening Claim Construction Briefs | October 23, 2020 | January 15, 2021 |
| Parties File Simultaneous Responsive Claim Construction Briefs | November 6, 2020 | January 29, 2021 |
| Claim Construction Hearing | November 13, 2020 | February 5, 2021 |
| Opening Expert Reports for Party with Burden of Proof | November 25, 2020 | February 19, 2021 |
| Responsive Expert Reports for Party without Burden of Proof | December 22, 2020 | March 19, 2021 |
| Close of Discovery (Fact and Expert) | January 8, 2021 | April 2, 2021 |
| Deadline to File Dispositive Motions | January 15, 2021 | April 9, 2021 |
| Parties to Electronically File On or Before PTC the Rule 26(a)(3) Disclosures; List of Exhibits for Trial; List of Witnesses for Trial; Written Stipulation of Uncontested Facts | January 15, 2021 | April 9, 2021 |
| Final Pretrial Conference (1:30 pm) | January 15, 2021 | April 9, 2021 |
| Objections to Exhibits | January 25, 2021 | April 19, 2021 |
| Briefing on *Daubert* Motions and Motions *In Limine* | TBD:  At least 14 days before trial | TBD:  At least 14 days before trial |
| Trial | TBD:  4-8 weeks after the Final Pretrial Conference | TBD: 4-8 weeks after the Final Pretrial Conference |

**EXHIBIT B:  DEFENDANTS' PROPOSED SCHEDULE**

| Event | Defendants' Proposed Date |
|---|---|
| File Protective Order | September 2, 2020 |
| Exchange Rule 26(a)(1) Initial Disclosures | September 9, 2020 |
| Parties to Exchange Proposed Terms for Claim Construction | October 2, 2020 |
| Parties to Exchange Preliminary Claim Constructions and Extrinsic Evidence in Support Thereof | October 9, 2020 |
| Substantially Complete Document Production | October 23, 2020 |
| Parties File Simultaneous Opening Claim Construction Briefs | October 23, 2020 |
| Parties File Simultaneous Responsive Claim Construction Briefs | November 6, 2020 |
| Claim Construction Hearing | November 10-13, 2020 |
| Close of Fact Discovery | November 13, 2020 |
| Opening Expert Reports for Party with Burden of Proof | November 20, 2020 |
| Responsive Expert Reports for Party without Burden of Proof | December 18, 2020 |
| Close of Expert Discovery | January 8, 2021 |
| Parties to Electronically File On or Before Final Pretrial Conference Rule 26(a)(3) Disclosures, List of Trial Exhibits, Witnesses, Written Stipulation of Uncontested Facts | January 15, 2021 |
| Last Day to File Dispositive Motions | January 15, 2021 |
| Final Pretrial Conference (1:30 p.m.) | January 15, 2021 |
| File Objections to Trial Exhibits | January 25, 2021 |
| *Daubert* motions/Motions in Limine | Set for hearing at least 14 days before trial |
| Trial | TBD |

26

Dated:  September 2, 2020

Stephanie E. Parker
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Email: separker@jonesday.com

Anthony M. Insogna
JONES DAY
4655 Executive Drive
Suite 1500
San Diego, CA 92121
Telephone:  (858) 314-1200
Facsimile:  (844) 345-3178
Email: aminsogna@jonesday.com

William E. Devitt
JONES DAY
77 West Wacker
Suite 3500
Chicago, IL 60601
Telephone:  (312) 269-4240
Facsimile:  (312) 782-8585
Email: wdevitt@jonesday.com

Sanjiv P. Laud
JONES DAY
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
Telephone:  (612) 217-8800
Facsimile:  (844) 345-3178
Email: slaud@jonesday.com

Respectfully submitted,

*/s/ David M. Maiorana*
David M. Maiorana (VA Bar No. 42334)
Ryan B. McCrum
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:  (216) 586-3939
Facsimile: (216) 579-0212
Email: dmaiorana@jonesday.com
Email: rbmccrum@jonesday.com

John J. Normile
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email: jjnormile@jonesday.com

Alexis A. Smith
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Telephone:  (213) 243-2653
Facsimile:  (213) 243-2539
Email:  asmith@jonesday.com

Charles Bennett Molster , III
The Law Offices of Charles B. Molster III PLLC
2141 Wisconsin Ave Nw Suite M
Washington, DC 20007
Telephone:  703-346-1505
Email:  Cmolster@molsterlaw.com

*Counsel for Plaintiffs RAI Strategic Holdings, Inc. and R.J. Reynolds Vapor Company*

27

Gregory K. Sobolski
gregory.sobolski@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600; Fax: (415) 395-8095

Brenda L. Danek
brenda.danek@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700; Fax: (312) 993-9767

By: */s/ Maximilian A. Grant*
Maximilian A. Grant  (VSB No. 91792)
max.grant@lw.com
Matthew J. Moore
matthew.moore@law.com
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004
Tel: (202) 637-2200; Fax: (202) 637-2201

Clement J. Naples
clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel: (212) 906-1200; Fax: (212) 751-4864

*Counsel for Defendants-Counterclaim Plaintiffs Philip Morris Products S.A., Altria Client Services LLC, and Philip Morris USA, Inc.*

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of September, 2020, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record:

/s/ David M. Maiorana
David M. Maiorana (VA Bar No. 42334)
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: dmaiorana@jonesday.com

*Counsel for Plaintiffs*
*RAI Strategic Holdings, Inc. and*
*R.J. Reynolds Vapor Company*