IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RAI STRATEGIC HOLDINGS, INC. and R.J. REYNOLDS VAPOR COMPANY, <br><br> *Plaintiffs*, <br><br> v. <br><br> ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA, INC.; AND PHILIP MORRIS PRODUCTS S.A., <br><br> *Defendants*. | Civil Action No. 1:20-cv-00393-LO <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff RJ Reynolds Vapor Company's motion to sever Defendants' patent infringement counterclaims and to transfer them to the Middle District of North Carolina. Dkt. 67. The matter is fully briefed. For the reasons set forth below, the Court **DENIES** the motion to sever, and will not transfer the counterclaims to the Middle District of North Carolina.

### I. FACTUAL BACKGROUND

On April 9, 2020, Plaintiffs RJ Reynolds Vapor Company ("RJR") and RAI Strategic Holdings, Inc. sued Altria Client Services LLC ("Altria"), Philip Morris USA, Inc. ("PM-USA"), and Philip Morris Products S.A. ("PMP") in the Eastern District of Virginia ("EDVa"). In their

1

complaint, Plaintiffs allege several patent infringement claims based on the Defendants' design, manufacture, and distribution of a competing vape product, IQOS.[1]

Relevant to RJR's motion to sever and transfer, two other cases are ongoing between various subsets of the parties:

1. In late May 2020, Defendant Altria and a non-party affiliate (US Smokeless Tobacco Company LLC or "USST")—but not PM-USA or PMP—sued RJR in the Middle District of North Carolina ("MDNC"). *See* Compl. 20-cv-472 (M.D.N.C. May 28, 2020, Dkt. 1). In the MDNC action, Altria and affiliate USST assert that RJR is infringing nine patents. Dkt. 81, at 6. They allege infringement based on RJR's design, manufacture, and distribution of competing vaping products—VUSE Alto and VUSE Vibe—which are also the subject of several of Defendants' counterclaims in the present action.[2] Dkt. 67, at 1.

2. Separately, an International Trade Commission ("ITC") case is ongoing between RJR and the Defendants. Dkt. 81, at 5. Though this ITC case is not at issue for purposes of the motions to sever and transfer, RJR has stayed three patent infringement allegations originally asserted in this action pending resolution of the ITC case. Dkt. 67, at 3; Dkt. 81, at 5; *see also* Dkt. 27. As a result, RJR's operative complaint now asserts only two patent infringement claims.

The following charts summarize the overlap between the patents and products at issue in the EDVa and MDNC actions:

---

[1] Plaintiffs allege that two of their patents are being infringed: (1) the '268 patent and (2) the '542 patent. The Plaintiffs' original complaint alleged infringement of an additional patent—the '591 patent—but this claim was dropped in their First Amended Complaint. Dkt. 52.

[2] In the MDNC action, Altria and USSTC also allege that RJR is infringing three unrelated patents by designing, manufacturing, and distributing its smokeless nicotine pouch product, Velo. Dkt. 67, at 3 n.3. Velo is not at issue in the present litigation.

| Chart 1: Eastern District of Virginia (20-cv-00393) (filed April 9, 2020) ||||| 
|---|---|---|---|---|
| **Source of Claims** | **Plaintiffs** | **Defendants** | **Patents at Issue (Owner)** | **Allegedly Infringing Products (Owner)** |
| Operative Complaint | RAI & RJR | (1) Altria; (2) PM-USA; (3) PMP | '268 (RJR) '542 (RJR) | IQOS (Altria/Philip Morris) |
| Counterclaims | (1) Altria; (2) PM-USA; (3) PMP | RJR | '374 (Altria/PM-USA) '545 (Altria/PM-USA) '265 (PMP) '556 (PMP) '911 (PMP) | Vuse Alto (RJR); Vuse Vibe (RJR); Vuse Ciro (RJR); Vuse Alto (RJR); |

| Chart 2: Middle District of North Carolina (20-cv-00472) (filed May 28, 2020) ||||| 
|---|---|---|---|---|
| **Source of Claims** | **Plaintiffs** | **Defendants** | **Patents at Issue (Owner)** | **Allegedly Infringing Products (Owner)** |
| Operative Complaint | (1) Altria; (2) US Smokeless Tobacco (USST) | RJR | '070 (Altria or USST) '242 (Altria or USST) '269 (Altria or USST) '319 (Altria or USST) '357 (Altria or USST) '517 (Altria or USST) '541 (Altria or USST) '824 (Altria or USST) '996 (Altria or USST)  * Only six of the nine patents at issue are being asserted against | Vuse Alto (RJR); Vuse Vibe (RJR); Velo Smokeless Nicotine Pouch (RJR) |

|  |  |  | RJR's Vuse products. *See* Dkt. 67, at 1. |  |
|--|--|--|--|--|
|  |  |  |  |  |

These charts indicate that none of the patents at issue in the Plaintiffs' operative complaint in this action, the Defendants' counterclaims, or the complaint in the MDNC action overlap. They also show that two out of the three Defendants named in this action (PM-USA and PMP) are not plaintiffs in the MDNC action. Finally, they demonstrate that there exists some product overlap between the counterclaims in this action and the products at issue in the MDNC action: infringement is alleged in both cases based on RJR's design, manufacture, and distribution of Vuse Alto and Vuse Vibe. However, the counterclaims in this action assert patent infringement based on two additional RJR vape products in its VUSE product family: Vuse Alto and Vuse Ciro. And, the MDNC action deals with a product—RJR's smokeless tobacco pouch, Velo—entirely unrelated to any of the claims and counterclaims in this action.

## II. LEGAL STANDARD

Rule 21 provides that the court "may . . . sever any claim against a party." Fed. R. Civ. P. 21. Commonly, Rule 21 is invoked to sever parties improperly joined or where "venue is improper as to some but not all defendants." *See C.L. Ritter Lumber Co., Inc. v. Consolidation Coal Co.*, 283 F.3d 226 (4th Cir. 2002); *Sehler v. Prospect Mortg., LLC*, 2013 WL 6145705, at *2 (E.D. Va. Nov. 21, 2013); *see also* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1689 (3d ed. 2020). However, even where the parties are appropriately

4

joined and venue is proper, a court may sever any claim and proceed with it separately or transfer it to a more convenient forum. *See* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1689.

Courts in the Fourth Circuit wield "virtually unfettered discretion" in determining whether and when to sever a claim. *Grayson Consulting, Inc. v. Cathcart*, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (citing *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 604 n.9 (E.D. Va. 2005)); *see also Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003) (citing *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031–32 (4th Cir. 1983)) ("A district court possesses broad discretion in ruling on a requested severance under Rule 21."). Nonetheless, there exists a presumption against severance. *See Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, 2017 WL 2216298, at *2 (D.S.C. May 19, 2017); *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007). This presumption favors resolution of all claims in a single action. *See Equity Residential*, 483 F. Supp. 2d at 489.

Courts in the Fourth Circuit weigh multiple factors when determining whether to sever claims under Rule 21. These factors include:

> (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

*Id.* (citing *German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995)); *see also Allstate*, 2017 WL 2216298, at *2 (citing *Equity Residential* for the proposition that, for a movant to overcome the presumption against severance, it must "show that (1) it will be severely prejudiced without a separate trial, and (2) the issue to be severed is so 'distinct and separable' from the others that a trial of that issue alone may proceed without injustice"); *Audio*

5

*MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 805 (E.D. Va. 2017) (analyzing whether severance will "best serve the convenience of the parties, avoid prejudice, and minimize expense and delay"); *Latson v. Clarke*, 2016 WL 11642365, at *5 (E.D. Va. Oct. 14, 2016) (analyzing whether severance of claims will further fundamental fairness, augment judicial economy, reduce the potential for delay, and minimize the risk of duplicative litigation); *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995) (analyzing whether severance will "serve the ends of justice and further the prompt and efficient disposition of litigation").

### IV. DISCUSSION

The above-stated factors counsel against severing Defendants' counterclaims at this stage in the litigation.

#### A. Whether the issues are "significantly different from one another"

This is not a case in which a party is seeking severance of non-patent infringement counterclaims from patent infringement claims. If it were, the Court would be more inclined to find that the issues raised by the respective parties are significantly different from one another. *See, e.g., Westinghouse Air Brake Technologies Corporation v. Siemens Mobility, Inc.*, 330 F.R.D. 143 (D. Del. 2019) (granting Rule 21 motion to sever four antitrust counterclaims, one Lanham Act counterclaim, and one state law deceptive trade practice counterclaim from a plaintiff's patent infringement claim); *Augme Technologies, Inc. v. AOL Inc.*, 2012 WL 2402065 (S.D.N.Y. 2012) (granting Rule 21 motion to sever a patent infringement claim from a trademark claim); *Sanofi-Synthealbo v. Apotex Inc.*, 2006 WL 3103321 (S.D.N.Y. Nov. 2, 2006) (granting Rule 21 motion to sever several antitrust counterclaims from patent infringement claims). This inclination owes to the incongruent discovery obligations and pre-trial burdens that may be

6

created when disparate causes of action are raised in claims and counterclaims. *See Westinghouse*, 330 F.R.D. at 148.

But where, as here, a Defendant asserts patent infringement counterclaims in response to a Plaintiff's own patent infringement claims, the Court must analyze whether the dueling patents and the alleged infringement thereof implicate "*significantly* different issues." *Latson*, 2016 WL 11642365, at *3 (emphasis added). To determine whether one issue is "significantly different" from another, courts in the Fourth Circuit look to whether "the issue to be severed is so 'distinct and separable' from . . . others [in the case] that a trial of that issue alone may proceed without injustice." *See Equity Residential*, 483 F. Supp. 2d at 489 (citing *Jeanty v. County of Organe*, 379 F. Supp. 2d 533, 548–49 (S.D.N.Y. 2005); *Lusk v. Pennzoil United, Inc.*, 56 F.R.D. 645, 647 (N.D. Miss. 1972)).

While the Court recognizes that the infringement claims and counterclaims relate to different patents incorporated into competing products, it rejects the sweeping generalization that infringement by one side is always irrelevant to infringement by the other side. *See* Dkt. 92, at 6. Rather than assuming patent infringement actions based on competing products automatically raise issues "significantly different from one another," the Court finds it appropriate to engage in a fact-bound inquiry undergirded by the presumption against severance. *See Allstate*, 2017 WL 2216298, at *2 (citing *Equity Residential*, 483 F. Supp. 2d at 489).

On the facts of this case, the Court finds that the issues raised by the competing patent infringement counterclaims are not significantly different from those raised by the Plaintiffs. The case of *Remcor Products Co. v. Servend Intern., Inc.* is instructive. 1994 WL 594723 (N.D. Ill. Oct. 28, 1994). There, a manufacturer of ice and beverage dispensers asserted a patent infringement claim against a competitor. *Id.* at *1. The Defendant-competitor then filed a patent

7

infringement counterclaim based on its own patent. *Id.* The Plaintiff moved to sever the counterclaim. The Court denied the motion. It observed:

> The resolution of the parties' claims would be best promoted if . . . [D]efendant's counterclaim was not severed from [P]laintiff's claim. This case involves patent infringement claims by both [Plaintiff] and [Defendant] relating to their competing ice/beverage dispensers. [Plaintiff] alleges that various [Defendant] ice/beverage machines infringe [Plaintiff's] patent by utilizing [Plaintiff's] patented cold plate technology to dispense a chilled beverage. [Defendant] alleges in its counterclaim that various [Plaintiff] ice and ice/beverage dispensers infringe [Defendant's] ice dispenser patent by incorporating [Defendant's] patented paddlewheel technology to transport ice from the ice storage area to the dispensing chute of [Plaintiff's] ice and ice/beverage machines. While the patents at issue in [Plaintiff's] claim and [Defendant's] counterclaim are clearly different, both claims involve the same issue—the similarity of the ice/beverage dispensers.

*Id.*

*Remcor* counsels against severance based on the issues raised in the claims and counterclaims. RJR has not articulated specific facts demonstrating that the dueling patent infringement claims in the action will raise "significantly different" issues. Though RJR distinguishes the competing *products* at issue, it does not draw out detailed comparisons between the patents it asserts against Defendants' IQOS product, versus the patents that Defendants assert against it. In other words, RJR has failed to show that its patents and the Defendants' patents are so "significantly different from one another" that a trial of the competing patent infringement claims "cannot proceed without injustice." *See Equity Residential*, 483 F. Supp. 2d at 489. It fails to make this showing.

Nor do the cases RJR cites in support of its position mandate severance. In *Custom Optical*, the District Court of Maryland severed patent infringement claims and counterclaims, even though they involved competing products and the prospective litigation was slated to feature "related processes and certain common witnesses." 896 F. Supp. at 506–07. Nonetheless, *Custom Optical*'s sweeping language on issue and factual similarity must be read in

8

concert with its separate consideration of unfairness and prejudice to other plaintiffs and defendants involved in the litigation—parties not implicated by the counterclaims that were ultimately severed in the case. *See id.* at 507 ("Defendant's Counterclaim also involves different parties. Two of the three individual joint owners of the '485 patent are not parties to the current litigation and four parties in the current litigation have no interest in the Second Counterclaim at all. Permitting the Counterclaim to go forward in this case would mean that each Plaintiff uninvolved in the Counterclaim would bear the burden of extended and costly discovery, pretrial procedures and motions practice while they waited for adjudication of their own claims.").

Similarly, in *Kraft Foods Holdings, Inc. v. Proctor & Gamble Co.*, the District Court for the Western District of Wisconsin severed dueling patent infringement claims asserted against similar, albeit technologically distinct products. *See* 2008 WL 4559703, at *3 (W.D. Wis. Jan. 24, 2008). However, *Kraft Foods* authorized severance, in part, because it was "permissible." *See id.* ("Accordingly, severance of P & G's counterclaim and third-party claim for infringement is *permissible*.") (emphasis added); *see also id.* at *2 ("The Seventh Circuit has reasoned that 'a district court *may* sever claims under Rule 21 . . .'") (emphasis added). This language is at odds with the presumption that courts in this Circuit apply in favor of claim consolidation.

*Kraft Foods* also employed a comparatively exacting "discrete and separate" standard in determining whether issues raised by competing claims and counterclaims were "significantly different." This standard looked to whether "one claim [is] capable of resolution despite the outcome of the other claim." *See id.* at *2 (citing *Gaffney v. Riverboat Serv. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006)); *see also* Dkt. 67, at 7. This is not the law in the Fourth Circuit. If it were, Defendants could conceivably argue that the Plaintiffs' two remaining patent infringement claims should be severed from one another, as each is "capable of resolution

9

despite the outcome of the other." Rather, courts in this Circuit have wide latitude to deny the severance of claims that are "capable of resolution despite the outcome of [another asserted] claim," even where the underlying causes of action are highly disparate. *See, e.g., Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 804 (E.D. Va. 2017) ("District courts are not required to bifurcate patent claims and antitrust claims, and retain 'considerable discretion in determining whether the severance of antitrust and patent issues would best serve the convenience of the parties, avoid prejudice, and minimize expense and delay.'").

In sum, the Court finds that the issues presented by the patent infringement claims and counterclaims are not so significantly different from one another that severance is warranted at this stage.

### B. Other Severance Factors

Most, but not all, of the remaining severance factors also counsel against severing Defendants' counterclaims.

First, the Court finds that the severable issues will require additional witnesses and different documentary proof—a factor that counsels for severance. *Latson*, 2016 WL 11642365, at *5. The Court agrees with RJR that the patents challenged by Defendants do not "share file histories, specifications, inventors, priority dates, or priority applications" with the patents that RJR challenges. Dkt. 92, at 6. At the same time, Defendants correctly observe that certain "common technical, commercial, and damages issues" may require "overlapping witnesses and evidence." Dkt. 81, at 9–10; *see also Remcor*, 1994 WL 594723, at *1 ("Both parties' dispensers have the same critical components including paddlewheels and cold plates. In enforcing its own patent, each party will present testimony and documents explaining the development and technology of each party's dispenser to demonstrate that the dispenser does not infringe on the

other party's patent rights. If separate trials were held for each of these patent claims, much of the same evidence would be required to be repeated at each trial."). However, on balance, the Court finds RJR's argument on this point more persuasive.

Second, severance will likely prejudice and inconvenience the Defendants if granted. *See Audio MPEG, Inc.*, 254 F. Supp. 3d at 805. *Samsung Elecs. Co. v. Nvidia Corp*—a case cited by Plaintiffs in support of their motion to sever—makes clear the importance of this factor. In *Samsung*, the Court ordered the severance of a Defendant's patent infringement counterclaims to "avoid the prejudice to the Plaintiff that is almost certain to occur by trying unrelated patent issues to a jury [and to] make case management more effective, thereby enabling the pretrial and trial process to achieve justice in this complex matter." 2015 WL 13723075, at *1 (E.D. Va. May 19, 2015). However, the Court in *Samsung* made this finding only because "severance [would] work no prejudice to the defendants." *Id.*

Here, prejudice to Defendant would almost certainly result from separating the claims. Not only would severance deprive the Defendants of their opportunity to assert permissive counterclaims authorized by the Federal Rules, but it would also force two of the Defendants—PM-USA and PMP—to twice litigate a similar matter involving "the same parties . . . with both sides represented by the same attorneys." Dkt. 81, at 10. This could potentially impose on Defendants the obligations of two discovery deadlines, two motions calendars, two Markman hearings, and two trials. *See Broadcom Corp. v. Sony Corp.*, 2016 WL 9108039, at *4 (C.D. Cal. Dec. 20, 2016). The possibility of prejudice resulting from severance is especially acute for PMP, which is headquartered in Switzerland. This factor therefore counsels against severance.

Third, RJR is unlikely to be prejudiced if Defendants' counterclaims are not severed. *See Latson*, 2016 WL 11642365, at *5. The present action involves RJR's assertion of two patents in

11

its infringement claims against Defendants. Dkt. 61, at 3. In the absence of a fact-intensive argument from RJR concerning the risk of jury confusion that would result from trying Defendant's five patent infringement counterclaims in conjunction with RJR's two patent claims, the Court will not presume prejudice.

Defendants direct us to *Broadcom Corp. v. Sony Corp.*, a Central District of California case in which the district court found that severing patent counterclaims in early anticipation of the potential for jury confusion was inappropriate. *See Broadcom*, 2016 WL 9108039 at *4 ("The Court agrees that severing the case because of jury confusion is premature at this stage in the litigation and that there are other procedural mechanisms to address this issue. Until this case is further developed, the parties and the Court will not know the extent of overlap between Broadcom's claims and Sony's counterclaims."). The Court finds this reasoning persuasive.

The Court recognizes that two district court cases in the Fourth Circuit have invoked the risk of jury confusion in orders granting motions to sever. *See Gregory v. FedEx Ground Package System, Inc.*, 2012 WL 2396873 (E.D. Va. May 9, 2012), *report and recommendation adopted*, 2012 WL 2396861 (E.D. Va. June 25, 2012); *Custom Optical*, 896 F. Supp. at 506–07. However, both these cases are distinguishable. *See Gregory*, 2012 WL 2396873 (recommending severance where case involved ten plaintiffs each asserting various claims); *Custom Optical*, 896 F. Supp. at 505–06 (granting motion to sever where case involved four plaintiffs, two defendants, two intervenors). At this juncture, the Court will not anticipate significant jury confusion absent a more concrete showing on the part of RJR, especially given the bilateral litigating posture of the parties and the limited number of patents involved. The Court reserves the right to reassess this risk of jury confusion and to sever or bifurcate the claims at a later date should the need arise. *See Feit Elec. Co., Inc. v. Cree, Inc.*, 2016 WL 10587196, at *1 (M.D.N.C. June 20, 2016)

("Even assuming adding additional patent claims with their related issues might unduly complicate this case, this court retains the power to sever any claim against a party. As a result, if these additional claims should in fact undermine judicial efficiency and/or cause prejudice to Plaintiff, the claims can be severed and tried separately.").

Finally, severance will not further the prompt and efficient disposition of the litigation in furtherance of judicial economy. *Latson*, 2016 WL 11642365, at *5. "As a general rule, holding multiple trials when claims could be consolidated in one trial is not conducive to judicial economy." *See Broadcom*, 2016 WL 9108039, at *4; *Thomas v. Wilber*, 2015 WL 4615911, at *6 (E.D. Cal. July 31, 2015). Again, severance of patent infringement claims at this stage could lead to "two discovery deadlines, two motions calendars, two Markman hearings, and two trials." *Broadcom*, 2016 WL 9108039, at *4.

Moreover, even setting aside potential burdens, severance would only, at best, result in a net even impact on judicial economy. That is because, as RJR has conceded, if this case is severed and subsequently transferred, it will "move to consolidate [the] transferred action with the existing North Carolina action." Dkt. 67, at 19. Though RJR asserts that this consolidation will "further foster[] judicial efficiency," *id.*, the Court finds this assessment dubious; the MDNC action has nine—rather than two—patent infringement claims before it, and involves a smokeless tobacco pouch product, Velo, entirely unrelated to RJR's Vuse line of vaping products. The Middle District of North Carolina is also a stranger to PM-USA and PMP, and has no patents before it that overlap with the counterclaims asserted by the Defendants. Thus, severance would almost certainly not augment prompt and efficient disposition of the litigation, but could substantially diminish it.

## V. CONCLUSION

For the reasons stated above, the Court finds that weight of the relevant factors counsels against severance. Accordingly, Plaintiff R.J. Reynolds Vapor Company's motion to sever Defendants' Infringement Counterclaims is hereby **DENIED**, and its motion to transfer is hereby **MOOT**.

It is **SO ORDERED.**

September 3, 2020
Alexandria, Virginia

/s/ Liam O'Grady
United States District Judge