IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RAI STRATEGIC HOLDINGS, INC. and R.J. REYNOLDS VAPOR COMPANY,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA INC.; and PHILIP MORRIS PRODUCTS S.A.,<br><br>Defendants and Counterclaim Plaintiffs. | Case No. 1:20-cv-00393-LO-TCB<br><br>**CONFIDENTIAL —**<br><br>**FILED UNDER SEAL** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE
UNTIMELY DISCLOSED INFRINGEMENT CONTENTIONS**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.      Defendants' Opposition Ignores the Facts That Were Available to Them. ......................... 1

II.     Defendants' Opposition Ignores the Prejudice to Reynolds. .............................................. 6

CONCLUSION ................................................................................................................................ 9

# INTRODUCTION

For all their overheated accusations of gamesmanship and "baseless discovery conduct," Defendants have no answer to the central fact behind Reynolds's motion: The information they cite in their supplemental infringement contentions was available to them months, not days, before they acted. The truth is that there is no gamesmanship here—Reynolds is simply seeking a fair opportunity to defend itself against Defendants' allegations of patent infringement. It would be unfair to allow Defendants to add ten new claims to the case on the eve of expert reports and after the Court's *Markman* process has concluded. Defendants' opposition fails to even acknowledge that prejudice to Reynolds, let alone offer any measures to mitigate it.

In reality, the only way to eliminate the prejudice to Reynolds under the current schedule is to limit Defendants to the nine asserted claims of the '374 patent that the parties have been litigating for months. Far from "draconian" (Opp. at 3), that measured relief would ensure that both parties have a fair opportunity to contest the merits of Defendants' patent infringement claims. Reynolds respectfully requests that its motion be granted.

# ARGUMENT

**I.      Defendants' Opposition Ignores the Facts That Were Available to Them.**

As Reynolds explained in its opening memorandum, Reynolds disclosed the relevant information to Defendants' counsel in documents produced for the companion ITC case on June 1. (Dkt. 392 ("Memo.") at 2, 3.) That is before Defendants even pleaded their counterclaims for patent infringement on June 29, and more than five months before they first asserted infringement of claims 16-25 of the '374 patent. While Defendants claim that they "had no ability to use such documents in this case[] until September 17, 2020" when the parties formalized their cross-use agreement, that is no answer. They still waited more than two months after the cross-use agreement to assert claims 16-25 based on supposedly new discovery.

More importantly, as Reynolds explained in its motion, Defendants needed no documents from Reynolds to ascertain the basis for their new infringement claims. Defendants do not dispute that they have long understood the operation and components of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Memo. at 7, Ex. G at 3.) Their only response is that "▮▮▮▮▮▮▮▮▮▮▮▮ is not at issue in this case with respect to the '374 patent" (irrelevant) and Reynolds's ▮▮▮▮▮▮▮▮▮▮▮ "provides no information as to the accused Vuse products" (equally irrelevant, and obvious). In fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants' counsel admitted during the meet and confer on this motion that he first learned ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ last week. That demonstrates that Defendants failed to investigate their claims fully before rushing to assert them in response to Reynolds's suit.

Moreover, while Defendants claim Reynolds first identified ▮▮▮▮▮▮ in this litigation in a November 17 interrogatory response (*see* Opp. at 9), that is not true. Reynolds specifically pointed Defendants to documents identifying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on October 14, a month earlier than they claim. (Ex. I at 1 (identifying RJREDVA_001148862); Ex. J (RJREDVA_001148862).)[1] Reynolds also pointed Defendants to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, on October 22, before the deadline for substantial completion of document production and a month before Defendants supplemented their

---

[1] Reynolds did the same for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. I at 1 (identifying RJREDVA_000960655, RJREDVA_001032031, and RJREDVA_0011449092); Exs. K, L, M (identified documents).)

2

infringement contentions.  (Ex. N at 2 (identifying RJREDVA_000958597); Ex. O.)[2]  Defendants simply failed to investigate the documents Reynolds identified to them.

There is more.  ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████  *Every single claim* of the '321 patent includes a puff sensor that uses an oscillation circuit to measure capacitance.  (Ex. S at 2-4.)  ████████
████████████████████████████████████████████████████
████████████████████████████████

In fact, Defendants produced documents just yesterday (in response to Reynolds's motion to compel, Dkt. 385) showing that ██████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[2] Reynolds similarly produced and identified ██████████████████████████████████ before the October 23 deadline for substantial completion of document production.  (Ex. N. at 2 (identifying RJREDVA_001548315, RJREDVA_001549556); Exs. P, Q (identified documents).)

3

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

Defendants belabor the fact that one of the June 1 documents describing ██████ ██████████████████████████ was not previously identified in Reynolds's interrogatory responses. (*E.g.*, Opp. at 7 n.1.) That is not surprising because until late November Defendants asserted no patent claims that required an oscillator and none of their requests for production or interrogatories asked for such oscillators to be identified. Besides, as Reynolds pointed out in its opening memorandum, a simple text search for "puff" and "oscillator" would have turned up the document. If Defendants had conducted a sufficient investigation before asserting their claims, they surely would have located the information they claim to have recently discovered.[3] Their claim that the document was "buried in Reynolds' production and omitted from its initial and supplemental interrogatory responses" is baseless. (Opp. at 11.)

Moreover, Defendants did not need to "divine[]" the significance of the document through magical intuition or clairvoyance. Contrary to Defendants' representations, the document itself ███████████████████████████████████████████████████████████ ███████████

---

[3] Defendants' argument on the importance of the newly asserted claims suggests that they did not intend to assert claims 16-25 until they developed misgivings about the validity of their other asserted claims. *See infra* Part II and Opp. at 15-16.

4



(Dkt. 392, Ex. C at 4 (RJREDVA_000841861).) To suggest that this would not have given Defendants enough to assert infringement of claims 16-25 against at least those products is silly—especially given the threadbare detail of Defendants' original infringement contentions.

No matter how strenuously Defendants claim their supplementation was caused by Reynolds's late production of documents or interrogatory responses or deposition testimony, they cannot change the fact that they already had access to the information they needed to assert infringement of claims 16-25. Reynolds's later production of cumulative documents and deposition testimony does not excuse Defendants' lack of diligence.

## II.     Defendants' Opposition Ignores the Prejudice to Reynolds.

Defendants' arguments on the law are no better than on the facts. Far from being "harmless" and "substantially justified," Defendants' late assertion of ten new patent claims is prejudicial to Reynolds and unwarranted.

Defendants' claim that there was no surprise to Reynolds cannot be taken seriously. (*See* Opp. at 12-13.) The fact that Reynolds seasonably supplemented its interrogatory responses for claims 1-4 and 6-10 shows nothing more than Reynolds's diligence in disclosing its invalidity contentions to Defendants with respect to the claims Defendants had asserted. Adding or refining contentions about the claims at issue in the case is wholly different from adding ten entirely new, never-before-asserted patent claims two weeks before expert reports. Moreover, Reynolds's timely supplementations do not show, as Defendants suggest, that Reynolds was on notice claims 16-25 would be asserted all along. (Opp. at 12-13.) Neither does the fact that Reynolds pleaded affirmative defenses of non-infringement and invalidity. (*Id.* at 13.) Defendants' pleading alleging infringement of the '374 patent only identified claim 1 as being asserted. (*See* Dkt. 392 at 2 (citing Dkt. 39 at ¶ 29).) But Defendants contend that by pleading non-infringement and invalidity, Reynolds must have known Defendants would assert claims 16-25 later in the case. (*See* Opp. at 13.) That is absurd. By that logic, *any* patent defendant who pleads non-infringement or invalidity waives its objections to late disclosure of newly asserted claims.

Defendants next argue that there is no prejudice because claims 16-25 were asserted with "two months left in discovery, weeks before any expert discovery, and before any trial date has been set." (Opp. at 14.) The idea that there were "weeks before any expert discovery" when Defendants asserted the new claims is silly. The parties' opening expert reports on issues for which they bear the burden of proof—invalidity for Reynolds—are due on December 9, two weeks after Defendants served their supplemental infringement contentions and five days after this motion is set for hearing. Expert reports do not materialize overnight. As Reynolds explained in its opening memorandum, Defendants must analyze the new claims and their differences from the previously asserted claims, identify any new prior art made relevant by those differences, and work with its expert to prepare an analysis of those claims, all in two weeks. Even in this district, that is not "more than ample time." (Opp. at 14.) If that were true, Reynolds would not have brought this motion.

Defendants next argue that the lack of a fixed trial date alleviates the prejudice to Reynolds. (Opp. at 14.) That ignores the immediate, serious prejudice of Reynolds's having no time to prepare its expert reports on invalidity (and no opportunity to seek claim constructions from the Court). And as the Court knows from the briefing on Defendants' motion to stay, the pretrial conference is set for January 15. Regardless of when trial takes place, there is no time under the current schedule to add ten new claims at this late stage.

The cases cited in Defendants' opposition confirm Reynolds's arguments. In *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, No. 2:18-CV-585, 2020 WL 1648470, (E.D. Va. Mar. 16, 2020), the Court granted a motion to strike newly disclosed evidence regarding the priority dates of several patents as to which the plaintiff, like Defendants here, failed to demonstrate a substantial justification for supplementing. The Court declined to strike a supplementation of the plaintiff's

7

contentions regarding infringement under the doctrine of equivalents because the arguments, disclosed three and a half weeks before expert reports, "affect[ed] only a few claims" and had already been addressed in expert reports when the Court decided the motion. *Id.* at 6. Here, Defendants are trying to more than double the number of asserted claims in the '374 patent by adding ten new claims just *two weeks* before expert reports. *Biedermann* supports Reynolds, not Defendants.

Defendants' argument on the "tremendous" importance of the newly asserted claims underscores Reynolds's point. (Opp. at 16.) As Defendants explain, "[c]laims 16-25 include elements relating to the oscillation circuitry not present in the originally asserted claims. The inclusion of these claims could thus have important implications on the issue of validity . . . [because] a jury could conceivably find Defendants' earlier-asserted claims invalid, while upholding the validity of claims 16-25 based on the additionally recited circuitry elements." (*Id.* at 15-16.) If that is so, how could it be fair to give Reynolds only two weeks to analyze the validity of those claims when Defendants have had the relevant information they needed to assert infringement for months? And how would the Court's decision in *Biedermann* support Defendants where that supplementation only affected the scope of a few already-asserted claims, whereas Defendants seek to add ten entirely new ones?

Defendants' arguments explaining their addition of claims 16-25 simply repeat the errors and omissions already refuted in Part I of this reply. (*See* Opp. at 16-18.)

As a last resort, Defendants argue that precluding their new claims would be "drastic" and "unwarranted" because the Court "has discretion to fashion whatever relief it deems appropriate." (Opp. at 18.) That argument rings hollow, as Defendants have proposed no lesser remedy to alleviate the prejudice caused by their late supplementation of their infringement contentions.

8

Evidently Defendants would prefer to maintain their unfair tactical advantage. In any event, as demonstrated above, there is no room in the current schedule to expand the scope of the case so dramatically at this point. Reynolds respectfully submits that preclusion of Defendants' new contentions is entirely appropriate and warranted.

## CONCLUSION

Reynolds respectfully requests that the Court strike Defendants' interrogatory responses to the extent that they assert infringement of claims 16-25 of the '374 patent.

Dated: December 3, 2020	Respectfully submitted,

	 /s/ David M. Maiorana	
Stephanie E. Parker	David M. Maiorana (VA Bar No. 42334)
JONES DAY	Ryan B. McCrum
1420 Peachtree Street, N.E.	JONES DAY
Suite 800	901 Lakeside Ave.
Atlanta, GA 30309	Cleveland, OH 44114
Telephone: (404) 521-3939	Telephone: (216) 586-3939
Facsimile: (404) 581-8330	Facsimile: (216) 579-0212
Email: separker@jonesday.com	Email: dmaiorana@jonesday.com
	Email: rbmccrum@jonesday.com

Anthony M. Insogna	John J. Normile
JONES DAY	JONES DAY
4655 Executive Drive	250 Vesey Street
Suite 1500	New York, NY 10281
San Diego, CA 92121	Telephone: (212) 326-3939
Telephone: (858) 314-1200	Facsimile: (212) 755-7306
Facsimile: (844) 345-3178	Email: jjnormile@jonesday.com
Email: aminsogna@jonesday.com

William E. Devitt	Alexis A. Smith
JONES DAY	JONES DAY
77 West Wacker	555 South Flower Street
Suite 3500	Fiftieth Floor
Chicago, IL 60601	Los Angeles, CA 90071
Telephone:  (312) 269-4240	Telephone:  (213) 243-2653
Facsimile:  (312) 782-8585	Facsimile:  (213) 243-2539
Email: wdevitt@jonesday.com	Email:  asmith@jonesday.com

Sanjiv P. Laud	Charles B. Molster, III Va. Bar No. 23613
JONES DAY	THE LAW OFFICES OF
90 South Seventh Street	CHARLES B. MOLSTER, III PLLC
Suite 4950	2141 Wisconsin Avenue, N.W. Suite M
Minneapolis, MN 55402	Washington, DC 20007
Telephone:  (612) 217-8800	Telephone:  (703) 346-1505
Facsimile:  (844) 345-3178	Email:  cmolster@molsterlaw.com
Email: slaud@jonesday.com

*Counsel for Plaintiffs RAI Strategic Holdings, Inc. and R.J. Reynolds Vapor Company*

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2020, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

/s/ David M. Maiorana
David M. Maiorana (VA Bar No. 42334)
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: dmaiorana@jonesday.com

*Counsel for Plaintiffs RAI Strategic Holdings, Inc. and R.J. Reynolds Vapor Company*