UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RAI STRATEGIC HOLDINGS, INC. AND R.J. REYNOLDS VAPOR COMPANY<br><br>　　　　Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>ALTRIA CLIENT SERVICES LLC; PHILIP MORRIS USA, INC.; and PHILIP MORRIS PRODUCTS S.A.<br><br>　　　　Defendants and Counterclaim Plaintiffs. | Case No. 1:20-cv-00393-LO-TCB<br><br>**ORAL ARGUMENT REQUESTED** |

**BRIEF IN SUPPORT OF PMI/ALTRIA'S MOTION TO EXCLUDE OPINIONS OF RJR'S EXPERTS BASED ON REJECTED CLAIM CONSTRUCTIONS**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| | A.   '265 Patent | 2 |
| | B.   '556 Patent | 3 |
| | C.   '374 Patent | 4 |
| | D.   '911 Patent. | 5 |
| III. | LEGAL STANDARD | 6 |
| | A.   Admissibility of Expert Testimony Under Federal Rule of Evidence 702 | 6 |
| | B.   Experts Must Apply The Court's Claim Constructions | 6 |
| IV. | ARGUMENT | 7 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

## CASES

*Cordis Corp. v. Boston Sci. Corp.*,
   658 F.3d 1347 (Fed. Cir. 2011) .......................................................................................... 6

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005) ....................................................................................... 6, 8

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................... 6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) .................................................................................. 1, 6, 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................................................... 6

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006) ....................................................................................... 6, 7

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ......................................................................................... 7, 9

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
   No. 15-cv-597, 2017 WL 404519 (W.D. Tex. Jan. 27, 2017) ............................................ 7

I. INTRODUCTION

RJR's experts should be precluded from relying on rejected claim constructions. During the claim construction process, RJR argued that several claim terms in the Asserted Patents should ***not*** be given their plain and ordinary meaning, and proposed constructions of the terms based on purported limitations and disclaimers from the specifications and file histories. *See generally* Dkt. 223. In its November 24, 2020 claim construction order, the Court rejected RJR's proposals, finding that the disputed terms "are all well known common English words" that should be "given their common meaning." Dkt. 360. RJR's technical experts, however, continue to rely on RJR's rejected constructions under the pretext that RJR's rejected constructions now ***are*** somehow the plain meaning. That is plainly false, contradicts what RJR argued during claim construction, and is an impermissible end run around the Court's claim construction order. As the Federal Circuit has held, "[o]nce a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). The Court should follow this controlling law and preclude RJR's technical experts from misapplying the Court's claim construction order to rely on RJR's rejected constructions at trial.

II. FACTUAL BACKGROUND

During the claim construction process, RJR argued that the following terms required construction and, because of alleged disclaimers from the prosecution history and in the specification, should not be given their plain meaning:

- "dimensions substantially as a cross-section of a cigarette or a cigar"  ('265 Patent)
- "provided in a vicinity of the opening of the housing"  ('556 Patent)

1

- "second capillary material . . . spaced apart from the opening by the first capillary material" ('556 Patent)

- "detect a blowing action" ('374 Patent)

- "capacitor consisting essentially of a flexible conductive membrane and a rigid conductive plate spaced apart by an insulating ring spacer . . . and an air dielectric between the flexible conductive membrane and the rigid conductive plate" ('374 Patent)

- "at least one cavity in a wall of the aerosol-forming chamber" ('911 Patent)

- "recessed in the wall of the aerosol-forming chamber" ('911 Patent)

Dkt. 223 at 12-15, 19-21, 26-31, 33-40.

The Court rejected RJR's proposed constructions, holding that none of the disputed terms from the '265, '556, '374, and '911 Patents were subject to disclaimers or other restrictions on claim scope. Dkt. 360. As shown below, however, RJR continues to rely on its rejected constructions. The Court also declined to construe those terms, affording them their plain and ordinary meaning. *See id.*

### A.     '265 Patent

The '265 Patent discloses a novel vaporizer device with a heater in the shape of a dual coil and/or sinuous line. *See, e.g.*, Dkt. 199-1, '265 Patent at cl. 1. During claim construction, RJR argued that the term "dimensions substantially as a cross-section of a cigarette or a cigar" should not be construed according to its plain meaning and is either indefinite or limited to "an essentially circular shape." Dkt. 223 at 19. The Court rejected RJR's proposed construction. Dkt. 360. Yet Dr. Suhling seeks to testify that "a POSITA would understand 'dimensions substantially the same as a cross-section of a cigarette or cigar' to define an essentially circular shape"—the very limitation that RJR tried to import and the Court rejected. Ex. 1 (Suhling Rbt.) ¶ 82; *see also id.* at ¶ 81 (opining that "'dimensions substantially the same as a cross-section of a cigarette or cigar' are dimensions of a circle.").

2

B.  '556 Patent

The '556 Patent discloses a vaporizer device with a unique arrangement of capillary materials.  *See, e.g.*, Dkt. 199-2, '556 Patent at Abst.  During claim construction, RJR argued that the term "opening" should be limited to "a passage or hole through which liquid aerosol-forming substrate can flow."  *See, e.g.*, Dkt. 226 at 10-11.  The Court rejected RJR's proposed construction.  Dkt. 360.  Mr. Kodama now seeks to testify that the Accused Products (i.e., the VUSE Solo, Vibe, Ciro, and Alto e-vapor products) purportedly do not infringe because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 2 (Kodama 556 Rbt.) ¶ 66.

RJR also argued during claim construction that the term "spaced apart" in the '556 patent should not be construed according to its plain meaning and, instead, should require the second capillary material to be "separated from the opening by a distance defined by the thickness of the first capillary material," citing the discussion of a prior art reference called Dubief.  Dkt. 309 at 18, 20.  The Court rejected RJR's proposed construction.  Dkt. 360.  Mr. Kodama, however, seeks to testify that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Here, again, Mr. Kodama's opinions rest on RJR's erroneous and rejected construction preventing anything except a "first capillary material" to divide the "second capillary material" and "opening."

3

### C. '374 Patent

The '374 Patent discloses an electronic vaping device including a novel puff detection mechanism. *See e.g.*, Dkt. 194-2, '374 Patent at cl. 1. During claim construction, RJR argued that the term "detect a blowing action" should be narrowly construed to mean "determine the presence of a blowing action." Dkt. 223 at 38-39. RJR, however, withdrew that proposed construction, representing to the Court at the *Markman* hearing that RJR was "fine with the plain and ordinary meaning" of "detect." Ex. 3 (Markman Hr'g Tr.) at 95:5-15 (representing that if PMI/Altria is "going to stand by the representations in their responsive claim construction brief that the device really does have to detect something, ***then we're fine with the plain and ordinary meaning of the claim term***[.]").[1] Based on RJR's representation, the Court afforded the term "detect a blowing action" its plain and ordinary meaning. *Id*. at 97:12-13. Dr. Blalock, however, seeks to testify at trial that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

RJR also argued that the "capacitor" limitation in the '374 Patent should be construed to "exclud[e] any other layer or material between the membrane and the plate," citing an alleged disclaimer in the prosecution history. Dkt. 223 at 35-37. The Court rejected this construction, finding that "[n]one of the terms were modified by a clear disclaimer in the prosecution." Dkt. 360 at 1. Dr. Blalock, however, contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] All emphases added unless noted otherwise.

4

▬▬▬—transparently citing to the exact same portions of the file history that RJR relied on during claim construction to advance its rejected construction. *Cf.* Ex. 4 (Blalock Rbt.) ¶¶ 103, 110-113 *with* Dkt. 223 at 35-37.

### D. '911 Patent.

The '911 Patent describes a leak prevention mechanism for electronic vaporizers. *See* Dkt. 199-3, '911 Patent at Abstract. During claim construction, RJR sought to narrow various claim terms, including "at least one cavity in a wall of the aerosol-forming chamber" and "recessed in the wall of the aerosol-forming chamber," based on purported disclaimers from the file history in relation to the Rose prior art reference. Dkt. 223 at 27, 30 (citing the discussion of "Rose" in the prosecution history). The Court rejected RJR's proposed constructions. Dkt. 360 at 1. Yet Mr. Kodama now cites the same statements about Rose in the prosecution history to attempt to limit the same claim terms of the '911 Patent, brazenly opining that ▬▬▬



*See, e.g.*, Ex. 5 (Kodama '911 5/14 Rpt.) at ¶¶ 65-79 ▬▬▬ ; Ex. 5 (Kodama '911 5/14 Rpt.) ¶¶ 47-56; *see also* Ex. 6 (Kodama Dep.) at 154:8-155:6.

***

---

[2] This opinion is also improper because it is a legal determination that must be made by the Court.

Notwithstanding the above, RJR contends that it is justified in relying on its rejected proposed constructions because they *are* the plain meaning and supposedly consistent with the Court's order giving the terms their plain and ordinary meaning. However, RJR's experts are merely applying the Court's rejected constructions, and thus, those opinions should be excluded.

### III. LEGAL STANDARD

#### A. Admissibility of Expert Testimony Under Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 only permits expert testimony based on "scientific, technical, or other specialized knowledge" if it is reliable and "will help the trier of fact to understand the evidence or to determine a fact in issue." Faced with the proffer of expert testimony, a court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This determination requires assessing whether the expert's testimony is "scientifically valid." *Id*. RJR, as the party offering the testimony, has the burden to show that its expert's testimony is admissible. *Daubert*, 509 U.S. at 589.

#### B. Experts Must Apply The Court's Claim Constructions

Parties and their experts must apply the Court's constructions of disputed claim terms. *See Exergen*, 575 F.3d at 1321. The Federal Circuit has repeatedly held that where—as here—an expert's testimony is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011); *see also, e.g.*, *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert testimony because it "was based on an impermissible claim construction"); *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("The risk of confusing the jury is high when experts opine on claim construction before the

6

jury[.]"); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) (explaining that "expert testimony to the contrary ignor[ing] the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible under *Daubert*"); *Liquid Dynamics*, 449 F.3d at 1224 n.2 (affirming exclusion of expert testimony as irrelevant where it was based on an impermissible claim construction). Other Courts are in accord. *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 15-cv-597, 2017 WL 404519, at *2 (W.D. Tex. Jan. 27, 2017) (finding an "attempt to have [the expert] 'explain' the plain and ordinary meaning of claim terms is a rather poorly disguised attempt to offer the jury constructions different from the Court's" that is a "blatant attempt to 'back door' [the] rejected claim construction into the trial, and is wholly inappropriate.").

## IV. ARGUMENT

RJR's technical experts, Dr. Suhling, Mr. Kodama and Dr. Blalock, seek to present non-infringement positions at trial that are contrary to the Court's claim construction order. *See supra* § II. As shown in the chart below, these opinions are improper and should be excluded.

| Patent | RJR's Rejected Claim Construction | RJR's Expert's Opinion |
|---|---|---|
| '265 | "dimensions substantially as a cross-section of a cigarette or a cigar" is either indefinite or limited to "*an essentially circular shape*." Dkt. 223 at 19. | "[A] POSITA would understand 'dimensions substantially the same as a cross-section of a cigarette or cigar' to define *an essentially circular shape*." Ex. 1 (Suhling Rbt.) ¶ 82. |
| '556 | "opening" means "a passage or hole *through which liquid aerosol-forming substrate can flow*." Dkt. 226 at 11. | ■■■ |
| '556 | The second capillary material must be "separated from the opening *by a distance 'defined by'* the thickness of the first capillary material." Dkt. 226 at 14-15. | ■■■ |

7

| | | |
|---|---|---|
| '374 | "detect a blowing action" means "determine the presence of a blowing action" Dkt. 223 at 38-39. | |
| '374 | "capacitor" excludes "*any other layer or material between the membrane and the plate.*" Dkt. 223 at 35-37. | |

With respect to the '911 Patent, RJR's expert intends to testify to the jury that PMP allegedly disclaimed claim scope during prosecution of the '911 Patent based on statements concerning the Rose reference. Kodama '911 5/14 Rpt. at ¶¶ 47-56, 65-79. But RJR made the same disclaimer arguments based on the same reference during claim construction, which the Court rejected because "*[n]one of the terms were modified by a clear disclaimer in the prosecution*" Dkt. 360.

At bottom, RJR's attempt to have its expert present opinions that are inconsistent with the Court's claim construction order flouts controlling law holding that "[n]o party may contradict the court's construction to a jury." *Exergen*, 575 F.3d at 1321. Such opinions are unreliable, unhelpful, and risk confusing and misleading the jury into deciding infringement and validity issues based on an incorrect understanding of the scope of the asserted claims. *CytoLogix*, 424

---

[3] RJR's expert tries to hide the fact that he is simply applying the rejected construction by arguing that "there are multiple components, other than the first capillary material" in the space, but at bottom, he is simply applying RJR's rejected construction, notably relying on the same purported "disclaimer" in the file history that the Court determined was not a disclaimer.

F.3d at 1172 ("The risk of confusing the jury is high when experts opine on claim construction before the jury."). They are inadmissible and should be excluded. *See MarcTec, LLC*, 664 F.3d at 913 ("[E]xpert testimony to the contrary ignor[ing] the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible under *Daubert*.").

## V. CONCLUSION

PMI/Altria respectfully request that the Court exclude the portions of the reports and testimony of Dr. Suhling, Mr. Kodama and Dr. Blalock that are inconsistent with the Court's constructions.

Dated: January 21, 2022

Respectfully submitted,
By: /s/ *Maximilian A. Grant*
Maximilian A. Grant (VSB No. 91792)
(max.grant@lw.com)
Matthew J. Moore (pro hac vice)
matthew.moore@lw.com
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Clement J. Naples (pro hac vice)
clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel: (212) 906-1200; Fax: (212) 751-4864

Gregory J. Sobolski (pro hac vice)
greg.sobolski@lw.com
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Brenda L. Danek (pro hac vice)
brenda.danek@lw.com

9

LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700; Fax: (312) 993-9767

*Counsel for Defendants Altria Client Services LLC, Philip Morris USA Inc., and Philip Morris Products S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2022, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record:

/s/ Maximilian A. Grant

Maximilian A. Grant  (VSB No. 91792)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, DC 20004
Telephone:  (202) 637-2200
Facsimile:   (202) 637-2201
Email: max.grant@lw.com

*Counsel for Defendants Altria Client Services LLC, Philip Morris USA Inc., and Philip Morris Products S.A.*