```
                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA


   RAI STRATEGIC HOLDINGS, INC.,   )
                                   )
        et al.,                    ) Civil Action
                                   ) No. 1:20-cv-00393-LO-TCB
        Plaintiffs,                )
                                   ) April 1, 2022
        v.                         ) 10:42 a.m.
                                   )
   ALTRIA CLIENT SERVICES, LLC,    )
                                   )
        et al.,                    )
                                   )
        Defendants.                )
```

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*BEFORE THE HONORABLE THERESA C. BUCHANAN,*
*UNITED STATES DISTRICT COURT MAGISTRATE JUDGE*


APPEARANCES:

For the Counterclaim         **William Sutton Ansley, Esq.**
Plaintiffs:                  Weil, Gotshal & Manges
                             2001 M Street, NW
                             Suite 600
                             Washington, DC 20036
                             202-682-7000
                             Email: Sutton.Ansley@weil.com

                             **Lawrence Jay Gotts, Esq.**
                             Latham & Watkins LLP (DC)
                             555 11th St NW
                             Suite 1000
                             Washington, DC 20004-1304
                             (202) 637-2200
                             Fax: (202) 637-2201
                             Email: Lawrence.gotts@lw.com

For the Counterclaim         **Charles Bennett Molster, III, Esq.**
Defendants:                  The Law Offices of Charles B.
                             Molster III, PLLC
                             2141 Wisconsin Ave NW, Suite M
                             Washington, DC 20007
                             703-346-1505
                             Email: Cmolster@molsterlaw.com

```
     APPEARANCES: (Cont.)


     For the Counterclaim       Jason Todd Burnette, Esq.
     Defendants:                Jones Day
                                1420 Peachtree Street, NE
                                Suite 800
                                Atlanta, GA 30309
                                404-521-3939
                                Email: Jburnette@jonesday.com

     Court Reporter:            Scott L. Wallace, RDR, RMR, CRR
                                Official Court Reporter
                                United States District Court
                                401 Courthouse Square
                                Alexandria, VA 2231-5798
                                703.549.4626
                                scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

```
 1                MORNING SESSION, APRIL 1, 2022

 2   (10:11 a.m.)

 3        THE COURTROOM CLERK:  RAI Strategic Holdings, Inc., et al.

 4   versus Altria Client Services, LLC, et al., Case 20-cv-393.

 5        MR. MOLSTER:  Good morning, Your Honor.  Charles Molster

 6   on behalf of the Reynolds entities.  With me is Jason Burnette

 7   from the Atlanta office of Jones Day.  With the Court's

 8   permission, he'll handle the motions today.

 9        THE COURT:  Okay.  Thank you.

10        MR. GOTTS:  Good morning, Your Honor.  Larry Gotts on

11   behalf of PMI Altria from Latham Watkins.  With me today is

12   Mr. Sutton Ansley from Weil.  Also, he's representing us for the

13   Altria parties.

14        THE COURT:  All right.  This is on PMI's motion for a rule

15   to show cause why sanctions should not be opposed, and I have

16   read all of the pleadings including the reply.  Do you have

17   anything that you would like to add to those?

18        MR. GOTTS:  Nothing to add, Your Honor.  I could talk Your

19   Honor through some of the issues, if you would like, or --

20        THE COURT:  Well, I guess I had a couple of questions.

21        MR. GOTTS:  Okay.

22        THE COURT:  Altria, albeit with different counsel, knew of

23   this document last August, did it not?

24        MR. GOTTS:  So, correct, Your Honor.  So, Altria is -- if

25   I could lay out the lay of the land.  There are two cases, this
```

```
 1   case and a case in North Carolina.  Altria and Reynolds are
 2   involved in the case in North Carolina.  Weil is counsel in that
 3   case, not in this case until three weeks or so ago.
 4           THE COURT:  Right.
 5           MR. GOTTS:  So, correct, Your Honor.  They were aware of
 6   the documents.  Altria as an entity was certainly not because
 7   they were AEO, Attorneys' Eyes Only documents.  Weil was aware of
 8   the documents -- wasn't aware of any relevance of that document
 9   to this case and wasn't involved in this case.  We, of course,
10   Latham, was not in that case and didn't have any involvement.
11           So, the only parties who knew who were involved in both
12   cases and knew of the documents and its potential relevance was
13   the Jones Day lawyers.
14           THE COURT:  Well, that brings me to, I guess, my second
15   question.  I already ruled, and I still see no reason why my
16   thought process was incorrect.  Why, when you have an actual
17   agreement, why are the negotiations relevant?
18           MR. GOTTS:  Okay.  So, Your Honor, two things:  One is the
19   primary basis for this motion is not relating to your prior
20   ruling, but let me just --
21           THE COURT:  I know what you're saying is they failed to
22   produce it in response to your request, and that's a separate
23   issue from my ruling.
24           MR. GOTTS:  Well -- okay, I'm sorry.
25           THE COURT:  But I guess that relates to why is this so
```

1  sanctionable?
2       MR. GOTTS:  Yeah.  Well, Your Honor, two things:  One,
3  your prior ruling did not address documents.  I understand you
4  probably would have come out the same way on documents.
5       THE COURT:  Right.
6       MR. GOTTS:  Which is why we didn't press the issue, but it
7  did not address documents.
8       What Your Honor -- Your Honor's ruling -- and then I want
9  to talk about why I think it's not germane to this issue -- but
10 Your Honor's ruling, Your Honor, was that, I understand
11 settlement negotiations; I might come out differently; I
12 understand the motion; you have a document, so why does it matter
13 what the offers back and forth would be when you have the final
14 document?  That's different, though, from communications,
15 documents and evidence that show parties knew certain things
16 which then -- so we're not using it for purposes of what was the
17 negotiation posture, it's what they knew, right.
18      In this case what we know is that the Jones Day lawyers
19 knew what representations they made and proposed in there that
20 went to factual issues, not to the negotiations back and forth,
21 but the fact that they had knowledge of these prior license
22 agreements and the rates associated with that, right.  So that
23 was a fact.  I don't think that goes to the same issue, even what
24 Your Honor suggested, right, because --
25      THE COURT:  Well, you have the contracts.

*1*            MR. GOTTS:  No, no.  But this wouldn't come from the
*2*    contracts.  This came from draft agreements that showed they had
*3*    knowledge of these █████████████████████████████████
*4*    ██████████, right.
*5*            THE COURT:  All right.
*6*            MR. GOTTS:  So it's not in the four corners of that
*7*    agreement.  You would never know.  But it's in discovery that we
*8*    would have gotten through the course of things that were known
*9*    and exchanged by virtue of that.
*10*           That said, Your Honor.  We can put aside -- to the side
*11*    what happened with regard to Your Honor's prior ruling.  And what
*12*    we do know is that in the *Daubert* proceedings in this case, Jones
*13*    Day took positions that, with regard to these other prior license
*14*    agreements, not the ones that were being negotiated between
*15*    Fontem and NuMark and RJR, but they took positions with these
*16*    other license agreements that there was no information -- they
*17*    had no information regarding the ████████ in those agreements.
*18*    And these are pretty bold statements, Your Honor.  They said,
*19*    "there's no evidence that any party ever agreed to ████████
*20*    ███████ in these other agreements."  That's all under Judge
*21*    O'Grady.
*22*           They said -- they referred to the other licenses as
*23*    "fictional foundation and lacking factual support."  They said,
*24*    ████████████████████████████████████████████████████████████████
*25*    ████████████████████████████████████████

*1*      They said -- and note this is at the hearing -- "And
*2* notably, no one knows the terms of those prior license
*3* agreements."  If you go back to the draft agreements, which they
*4* didn't produce, we know that ████████████████████████████
*5* ████████████████████████████████████████████████████████████
*6* ████████████████████████████

*7*      Those agreements flatly point out that the representations
*8* to Judge O'Grady were just wrong and false.  You can't -- maybe
*9* under Your Honor's ruling they didn't have to produce the
*10* documents, but on relevance grounds at the time -- but what you
*11* can't do, Your Honor, is not produce documents, make -- take
*12* positions that you have no information on, there's no evidence,
*13* right, in front of Judge O'Grady seeking to exclude our damages
*14* expert when you know that the documents that you choose not to
*15* produce refute that, okay.

*16*      And even more importantly, once they had taken a position
*17* in front of Judge O'Grady that contradicted the documents they
*18* knew they had in their files, I would submit, even if you
*19* disagreed with us on relevance beforehand, those documents
*20* instantaneously become relevant.  If you have documents in your
*21* hand that refutes what you're telling a United States district
*22* judge and trying to exclude our expert, those documents are
*23* relevant.  But, in any event, that's sanctionable.  You don't get
*24* to keep things in your pocket, secret them from discovery, and
*25* then take contrary positions which you know are factually false

1   when the falsity is proven by the documents that you held onto.
2           THE COURT:  Okay.  I think I understand.  Thank you.
3           MR. GOTTS:  Thank you, Your Honor.
4           THE COURT:  Do you have anything to add to your
5   opposition?
6           MR. BURNETTE:  Just briefly.  Jason Burnette on behalf of
7   the Reynolds entities.  Your Honor's ruling was correct on the
8   discoverability of the no negotiations leading up to the
9   Reynolds-Fontem agreement.  And the motion to compel leading up
10  to that hearing by Philip Morris did argue that the deposition
11  that was requested was necessary to find the underlying
12  documents, and you, yourself, asked about document requests
13  during that hearing.  So documents were kind of in the air for
14  that hearing.
15          And obviously Your Honor's ruling broadly encompasses all
16  of the negotiations leading up to the final RJR Reynolds
17  agreement.  It's not a misrepresentation for parties to make an
18  argument to the Court that something is irrelevant.  That was the
19  basis of their motion.
20          THE COURT:  Well, I guess his point is that the counsel
21  knew that there were -- that ███████████████████████████████
22  ███████████████ during the negotiations but failed to disclose
23  that.  They at least made a different representation to the
24  Court.
25          MR. BURNETTE:  At the time of the motion to compel, that

```
 1   wouldn't be true, Your Honor, because the information that
 2   they're now relying on as being new evidence was after the motion
 3   to compel hearing, and that was produced in the other case.  At
 4   that time, yes, there was ███████████████████████████
 5   ████████████████████████████████████████████████████████
 6   ████████████████████████████████████████████████████
 7   ██████████████████████████████████████, and that's why this
 8   issue would become a mini-trial on the collateral importance of
 9   the negotiations.
10        THE COURT:  Well, I guess I'm not understanding you,
11   because the representation is that the statement that counsel
12   made that they -- that no one knew what the █████████████████
13   ██████████ is incorrect because they did know.
14        MR. BURNETTE:  The statement was ████████████████████
15   ████████████████████████
16        THE COURT:  Okay.
17        MR. BURNETTE:  The statement that is made in these draft
18   agreements is that -- it's ██████████████████████████████████
19   ████████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████████
21   ██████████████████████████████████.  That's nothing new.
22        THE COURT:  Okay.
23        MR. BURNETTE:  It's not a statement about, ████████████
24   ████████████████████████████████████████████████████████
25   ██████████████████████████████████████████████
```

*Scott L. Wallace, RDR, CRR, Official Court Reporter*

1    ███████████████." The point of that statement -- and I'm -- I
2    was the one who made that statement in front of Judge O'Grady, so
3    if I could just take a moment.
4           THE COURT:  Sure.
5           MR. BURNETTE:  The point of that argument was that Mr.
6    Meyer, PM's damages expert, doesn't have those license
7    agreements.  He hasn't seen them.  He admitted that in his
8    deposition.  What he relies on are press releases issued at the
9    time of those agreements, and those press releases on their face
10   say that those license agreements were global in scope, and one
11   of them is for a fixed sum.  Now that's important because the
12   ████████████████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████████████████
14   ██████████████████████████████.  So our argument was, Mr. Myer can't
15   rely on these press releases because on their face they show they
16   don't meet the ███████████████████████████████████████████████
17   ████████████████████████████████████████████████████, and he
18   hasn't seen the underlying agreements themselves, so he can't say
19   anything that's contrary to those press releases to say, No,
20   really, those ██████████████████████████████████████████████████
21   ██████████████████.  That was the point I was making, that no one
22   has seen the prior Fontem license agreements.  They're --
23          THE COURT:  Okay.
24          MR. BURNETTE:  This is a knowable fact.  These prior
25   license agreements exist, and Phillip Morris could have

```
 1   subpoenaed the prior license agreements, given them to Mr. Myer,
 2   had him rely on those prior license agreements, but what they're
 3   doing now is seeking an evidentiary sanction to make up for that
 4   decision not to pursue that evidence during discovery, and now
 5   we're two months before trial.
 6           THE COURT:  Okay.  Thank you.
 7           MR. BURNETTE:  Thank you.
 8           THE COURT:  Did you have something you wanted to add?
 9           MR. GOTTS:  I did, Your Honor, because I think we're
10   perpetuating some of the mischaracterizations here,
11   unfortunately.  The statements that were made that we now raise
12   are now -- we now have the full agreements -- they're Exhibits 1
13   and 2 to our reply -- and those statements are requests for
14   information.  Those statements say point blank, ▮▮▮▮▮▮▮▮
15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  And then on the second agreement,
19   Exhibit 2, it point blank says -- and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  It's not
24   asking the question.
25           Now, what Mr. -- what counsel said here now today also
```

1   mischaracterizes the representation made to Judge O'Grady.  I
2   mean, we have it in our brief, but in Docket 892 it says, "there
3   is no evidence that any party ever agreed to ████████████
4   ████." That's not what they said.  What they said and what
5   they knew in the prior agreement is that it's not just the
6   question about having seen the license or anything else.  They
7   said there's no evidence.  They went on to say it's a fiction,
8   there's no factual support.  They went on to say that they don't
9   even know if any agreements ████████████████████████████
10  ████████████████████.
11          And finally, they said no one knows the terms.  Your
12  Honor, that's just false.  And it wasn't just a matter of, you
13  know, we haven't seen the license agreements.  They told Judge
14  O'Grady nobody knows what's in these licenses.  And not only did
15  they know and not only did they say very specific things at the
16  hearing, but we know now that the documents that they held back,
17  which we got through alternative sources, point blank show that
18  ████████████████████████████████████████, and that was in
19  their documents.  Now, ████████████████████████████████████.
20  You know what, I don't know why.  The agreements end up being
21  ████████████████████.  We don't have discovery on them.  But one
22  thing we do know, ████████████████████████████████████.  They
23  knew this, right, and it's not what they told Judge O'Grady.
24          THE COURT:  Okay.  I understand what you are saying.
25          You know, I think this is part of the problem when you go

 1   into negotiations, because what are put in them and why
 2   they're -- why certain statement are put in there are -- it's
 3   really just too much.  What the final agreement is is what is
 4   relevant, what is operative, and I think you're just going down a
 5   rabbit hole when you start chasing what is in draft agreements.
 6        I understand your argument that although it was subject --
 7   that it was subject to Attorneys' Eyes Only, and that's why your
 8   client didn't have access to this, even though it was produced in
 9   August, but I really think that this is just going too far
10   afield.  I really don't think, even if it was relevant, that this
11   is subject -- that this is sanctionable.
12        I think that -- I accept counsel's representations for
13   what he said and why he said it, and I -- although there could
14   have been some error there and it could have, perhaps, been
15   stated more clearly, I don't think it's sanctionable, and I'm not
16   going to impose sanctions as to this.  You've got the documents
17   now.  You can make whatever hay of it you want.
18        MR. GOTTS:  Your Honor, one further thing.  Under those
19   circumstances, we would, at the very least, like with the new
20   documents, have the right to supplement our expert reports to
21   address this, and we don't think under the circumstances where
22   they held back that they ought to be in a position to --
23        THE COURT:  Do you have any opposition to that?
24        MR. BURNETTE:  Your Honor --
25        THE COURT:  I don't know that it makes any difference in

```
 1   terms of his expert report, really.
 2           MR. BURNETTE:  Only that we would request the opportunity
 3   to -- I'm sorry.
 4           THE COURT:  To file your own reply?
 5           MR. BURNETTE:  Yeah, to respond, to have our expert
 6   respond to that.
 7           THE COURT:  I'll allow that.  How many days?
 8           MR. BURNETTE:  I think we would need 14 days.
 9           THE COURT:  Okay.  And how many days for your expert to
10   supplement his?  A week?
11           MR. GOTTS:  {Indiscernible}.
12           THE COURT:  All right.  And when is your trial date?
13           MR. BURNETTE:  June 6th, Your Honor.
14           THE COURT:  All right.  You've got plenty of time.  Let's
15   see.  Expert depositions.  So it won't change your expert
16   deposition date.  I don't want that to change.
17           MR. BURNETTE:  The experts have been deposed.
18           THE COURT:  Okay.  So I don't think you really need to
19   depose them on this, do you?
20           MR. GOTTS:  No, Your Honor.
21           THE COURT:  Okay.  So I'll allow you both to supplement;
22   two weeks for you, your reply two weeks after that, but
23   everything else will stay the same, okay.
24           MR. BURNETTE:  Thank you, Your Honor.
25           THE COURT:  Anything else brewing?  I haven't seen you all
```

```
 1   in a while.  I don't mean to imply that I missed you, but.....
 2          MR. BURNETTE:  Just busy getting ready for trial, Your
 3   Honor.
 4          MR. GOTTS:  Working hard, Your Honor.
 5          THE COURT:  Okay.  The Court stands in recess.
 6          (Thereupon, the proceedings adjourned at 10:27 a.m.)
 7
 8                       C E R T I F I C A T E
 9
10              I, Scott L. Wallace, RDR-CRR, certify that
     the foregoing transcript of proceedings was prepared from
11   an FTR Gold audio recording of proceedings in the
     above-entitled matter and was produced to the best of my
12   ability.  Indiscernible indications in the transcript
     indicate that the audio captured was not clear enough to
13   attest to its accuracy.
14      /s/ Scott L. Wallace                         4/4/22
15      -----------------------------          ----------------
        Scott L. Wallace, RDR, CRR                  Date
16        Official Court Reporter
17
18
19
20
21
22
23
24
25
```