```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3      --------------------------x
       ALTRIA CLIENT SERVICES, LLC:     Civil Action No.:
 4     et al.,                      :
                                    :     1:20-cv-393
 5              Plaintiffs,         :
          versus                   :     Friday, June 3, 2022
 6                                  :
       RAI STRATEGIC HOLDINGS,      :
 7     INC., et al.,                :
                                    :
 8              Defendants.         :
       --------------------------x
 9

10          The above-entitled status conference was heard
       before the Honorable Leonie M. Brinkema, United States
11     District Judge.  This proceeding commenced at 11:02 a.m.

12                     A P P E A R A N C E S:

13     FOR THE COUNTERCLAIM  MAXIMILIAN GRANT, ESQUIRE
       PLAINTIFFS:           LATHAM & WATKINS, LLP (DC)
14                           555 11th Street, NW
                             Suite 1000
15                           Washington, D.C.  20004
                             (202) 637-2200
16
                             CLEMENT NAPLES, ESQUIRE
17                           LATHAM & WATKINS, LLP (NY)
                             1271 Avenue of the Americas
18                           New York, New York  10020
                             (212) 906-1331
19
                             ELIZABETH WEISWASSER, ESQUIRE
20                           WEIL GOTSHAL & MANGES LLP (NY)
                             767 5th Avenue
21                           New York, New York  10153
                             (212) 310-8000
22
       FOR THE COUNTERCLAIM  CHARLES B. MOLSTER, III, ESQUIRE
       DEFENDANTS:           THE LAW OFFICES OF CHARLES B. MOLSTER,
23                           III, PLLC
                             2141 Wisconsin Avenue, NW
24                           Suite M
                             Washington, D.C.  20007
25                           (703) 346-1505
```

                                                              1

```
 1              A P P E A R A N C E S:  (Cont.)

 2   FOR THE COUNTERCLAIM   STEPHANIE PARKER, ESQUIRE
     DEFENDANTS:            GILLIAN SCHROFF, ESQUIRE
 3                          JONES DAY (GA)
                            1221 Peachtree Street, NE
 4                          Suite 400
                            Atlanta, Georgia  30361
 5                          (404) 521-3939

 6                          DAVID MAIORANA, ESQUIRE
                            JONES DAY (OH)
 7                          901 Lakeside Avenue
                            Cleveland, Ohio  44114
 8                          (216) 586-3939

 9   COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                            Official Court Reporter
10                          United States District Court
                            401 Courthouse Square
11                          Alexandria, Virginia  22314
                            (571) 298-1649
12                          S.AustinReporting@gmail.com

13       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

14

15

16

17

18

19

20

21

22

23

24

25
                                                      2
```

```
 1                    P R O C E E D I N G S

 2          THE DEPUTY CLERK:  Civil Action 20-393, Altria

 3   Client Services, LLC, et al. versus RAI Strategic Holdings,

 4   Inc., et al.

 5          Would counsel please note their appearances for

 6   the record.

 7          MR. GRANT:  Good morning, Your Honor.  Max Grant,

 8   Elizabeth Weiswasser, and Clem Naples on behalf of the

 9   plaintiffs this morning.

10          THE COURT:  Good morning.

11          MR. MOLSTER:  Good morning, Your Honor.

12   Charles Molster on behalf of the Reynolds entities.  With me

13   at counsel table is Stephanie Parker from the Atlanta office

14   of Jones Day; David Maiorana who is from the Cleveland

15   office of Jones Day; and Gillian Schroff who is also from

16   the Atlanta office of Jones Day.

17          THE COURT:  Very good.  Good morning.

18          MR. MOLSTER:  Thank you.

19          THE COURT:  It's my first time meeting most of

20   you.  As you know at this point, because Judge O'Grady has

21   become ill, I've been asked to take over this case, and I

22   think it's best that we do today on the record.  We did have

23   a phone conference yesterday that was on the record.

24          Mr. Molster, your connection was really poor, and

25   so that --
```

3

```
 1            MR. MOLSTER:  I apologize for that, Your Honor.

 2            THE COURT:  No, that's not your fault.  I'm just

 3     saying the transcript is not very clear.  I want to make

 4     sure -- because this obviously is a significant case, and I

 5     want to make sure that the record is fully established.

 6            So what we discussed yesterday was, among other

 7     things, the fact that I would be taking this trial, but I

 8     was sensitive to the fact that it might be -- that you

 9     all -- and you had to agree to this, that if all the parties

10     involved were concerned about having a different judge try

11     the case, that I would then let you know that Judge O'Grady

12     would not be available to try this case until August 15.

13            My understanding from email communications is that

14     the -- Mr. Grant, you and your client do not want the trial

15     date changed, you want to get it done.

16            MR. GRANT:  That's correct.

17            THE COURT:  All right.  And I understand,

18     Mr. Molster, that your client is objecting.

19            Now, there has not been an agreement to go to the

20     August time, and I also understand that, you know,

21     Judge O'Grady did address earlier requests, Mr. Molster, by

22     your client, to have the trial put off later.  He denied

23     that.  And, as I've said, I'm not going to upset any of his

24     rulings.  And so the law of the case, in my view, is it's

25     going to go forward next week over your objection; all
```

                                                          4

```
 1   right?
 2                MR. MOLSTER:  Understood, Your Honor.
 3                THE COURT:  All right.  And I assure you that I
 4   will be spending the weekend learning more than I probably
 5   want to know about e-cigarettes and the patents that are
 6   involved.  I've already done some work on this case already.
 7   So I will try to be as conversant with the issues as Judge
 8   O'Grady would have been.
 9                And I was telling my law clerk, and certainly,
10   Mr. Molster, you'll remember the old days when the Court ran
11   on a master calendar, and it was not uncommon to have one
12   judge who might have done a motion to dismiss, a different
13   judge do the motion for summary judgment, and yet a
14   different judge try the case.  So this is like going back to
15   the old days.
16                MR. MOLSTER:  I remember it well, Your Honor.
17                THE COURT:  All right.  And we managed to
18   function.
19                So this case will go to trial next week.  We
20   cannot start until Wednesday.  We're going to start
21   Wednesday at 10:00 with jury selection.
22                Before that time, I will review the FJC Tutorial,
23   which has been submitted to me for consideration.  I will
24   also take a careful look at the proposed voir dire,
25   particularly any that you want the Court to ask.  And then I
```
                                                              5

```
 1   will -- as I said to you yesterday, I will conduct the voir
 2   dire, but you will have an opportunity if you object to put
 3   those objections on the record.
 4           We are going to have to proceed with safety
 5   precautions.  I'm pleased you're all wearing masks.  The
 6   official order hasn't gone out yet, but there will be a new
 7   posting at the front of the courthouse.
 8           That does remind me.  You've indicated, Mr. Grant,
 9   that many of your witnesses are international; maybe some of
10   the defense are as well.  There is a protocol that the Court
11   requires for testing.  I hope all of your international
12   witnesses are already in the States, but, if not, you need
13   to be making sure that they are monitoring their health
14   situation, all right, so we don't have a problem in that
15   respect.
16           MR. GRANT:  That's correct, Your Honor.  They've
17   also been here for somewhere between five and seven days,
18   and we have tested them, so we have a relatively high level
19   of confidence at this stage.
20           THE COURT:  Good.  And, Mr. Molster, how about for
21   your -- do you have any foreign travelers?
22           MR. MOLSTER:  We have one witness who's
23   international, Your Honor, and who I believe is coming in
24   tomorrow -- Sunday -- this weekend.
25           THE COURT:  Make sure that that person -- I mean,
```

6

```
 1    I know the airlines still have a protocol, but still, as you
 2    know, you can get the virus, and it can take a couple of
 3    days to develop.  Because what I don't want to do is have to
 4    delay the trial because we have a problem within the
 5    courtroom itself.
 6           We are going to put some plexiglass back.  There
 7    will be plexiglass around the witness box.  There will be
 8    one or two pieces in front of my court reporter.  I'm not
 9    going to put plexiglass back at the lectern.  Now -- and
10    when you're at the lectern, I will allow counsel to take
11    their mask off.  Obviously if any of you start feeling ill,
12    you're not to come to the courthouse, and you're to let our
13    chambers know promptly.  But it's too difficult to hear
14    testimony or conversations with counsel.
15           So any time any lawyer is talking, you've got to
16    be at the lectern, and you may then have your mask off.  For
17    that reason, we are not going to have you sitting right next
18    to the lectern.
19           So, Mr. Molster, for the trial itself, you'll have
20    to be in the middle seat or depending upon how you all are
21    working yourselves.
22           MR. MOLSTER:  Understood, Your Honor.
23           THE COURT:  I don't have a problem with three
24    attorneys at the second table.  So the maximum number of
25    attorneys in the well, five per side.  It's better not to
```

7

```
 1    have that many, but that's up to you all.  And I understand

 2    different lawyers are taking different witnesses.  So the

 3    lawyers who are sitting in the spectator area, when it's

 4    your time to handle a witness, you just, you know, change

 5    positions.

 6             MR. GRANT:  I presume it's acceptable if one of

 7    those five slots are taken by a corporate representative?

 8             THE COURT:  Of course.

 9             MR. GRANT:  Thank you.

10             MR. MOLSTER:  Your Honor, with respect to --

11             THE COURT:  Yeah.  Why don't we get used to being

12    at the lectern.

13             MR. MOLSTER:  Sorry, Your Honor.

14             With respect to the seating, I'm wondering if it

15    would be possible if we could have a couple of chairs maybe

16    inside the well but away from the tables for lawyers.

17             THE COURT:  Why can't they sit in the well -- I

18    mean in the spectator area?

19             MR. MOLSTER:  If that's what the Court would

20    prefer, that's fine.

21             THE COURT:  Yeah.  It's not -- we have, as you can

22    see, different levels of this floor because of the

23    technology that runs underneath it.

24             MR. MOLSTER:  Right.

25             THE COURT:  There's no safe place to put chairs
```

```
 1   over there.  All right.  So I don't see any reason why --

 2   you know, we can -- I don't expect that many members of the

 3   public to come to this trial.

 4             MR. MOLSTER:  Right.

 5             THE COURT:  If it's just full of lawyers --

 6             MR. MOLSTER:  It's pretty exciting stuff, Judge,

 7   you know.  Don't undersell us.

 8             THE COURT:  Yeah, I now.

 9             But in terms of -- you know, if you want your

10   lawyers to be in the first two rows or something like that,

11   that's not a problem.

12             MR. MOLSTER:  That would be great.

13             THE COURT:  We're not imposing any distancing --

14   any formal distancing requirements.  I am going to have the

15   jurors -- we're going to sit eight jurors, sit every other

16   seat to give them a sense of -- a little bit of a sense of

17   spacing.

18             But in terms of, you know, the spectators, all

19   your lawyers can sit elbow to elbow if that's how they want

20   to sit.

21             MR. MOLSTER:  One other question.  We did last

22   time jury selection upstairs.  Are we going to do jury

23   selection in here?

24             THE COURT:  We're going to do jury selection in

25   here.  You should have gotten the jury list yesterday.
```

9

```
 1                MR. MOLSTER:  We got it.  Thank you very much.

 2                THE COURT:  Okay.  Good.  That jury, as you know,

 3     has been screened for vaccination.

 4                MR. MOLSTER:  Understood.

 5                THE COURT:  I know that was over your objection,

 6     but that is absolutely how we've been proceeding.

 7                MR. MOLSTER:  Understood.

 8                THE COURT:  And I will start the voir dire with

 9     asking the jurors if anyone in their household has been sick

10     or if any of them are feeling under the weather.  And I'm

11     telling you right now, if any juror says yes, I'm excusing

12     them on the spot so that we don't have the problem, which

13     Judge Trenga had with his trial, where a juror came to court

14     not feeling well, and the next day it was reported she's

15     positive.  And that whole jury has now been exposed, and

16     they've had to continue the case five days.

17                So I don't want that to happen here.  All right.

18     So I'm going to do that, and I assume there's no objection.

19     Any juror who says they're not feeling well or their family

20     member has been sick, we're going to just excuse them.

21                MR. GRANT:  No objection from plaintiffs.

22                MR. MOLSTER:  No objection, Your Honor.

23                THE COURT:  All right.  That's fine.  Okay.  All

24     right.  Let me just see.  I had a bunch of things.

25                All right.  Now, in terms of the exhibits.  I'm
```

10

```
 1    told there are, what, 64 boxes.  I think one of you said

 2    there were 64 boxes of exhibits.

 3              MR. MOLSTER:  I think it's 23 -- if we're only

 4    talking about one set -- excuse me, Your Honor.

 5              THE COURT:  That's where the microphone is.

 6              MR. MOLSTER:  I think it's 23 -- I should know

 7    better, Judge.

 8              23 for our side, I believe, and 16, I believe, for

 9    their side.  I'm not 100 percent sure about their side.

10              THE COURT:  But a lot of boxes.

11              MR. MOLSTER:  A lot of boxes.

12              THE COURT:  All right.  How big are the notebooks

13    within the boxes?

14              MR. MOLSTER:  So we're trying to make them

15    manageable --

16              THE COURT:  All right.

17              MR. MOLSTER:  -- so that they're not falling

18    apart.

19              THE COURT:  But, I mean, are they the large ones?

20              MR. GRANT:  4 inches, Your Honor, for us.

21              THE COURT:  All right.  I don't want them any

22    bigger than that because they become unmanageable.

23              Now, the other thing is -- and I don't know how

24    you've organized your exhibits, but since the case doesn't

25    start until Wednesday, perhaps they can be redone.
```

11

```
 1          Have you tried to make the exhibits connected to

 2   the particular witness who's testifying?  In other words,

 3   are we going to have to be shifting book to book to book

 4   when you're talking to a witness, or are most of the

 5   exhibits needed for Witness Number 1 going to be in one or

 6   two specific binders?

 7          MR. MOLSTER:  We will have a witness binder

 8   specific to that witness with extra copies of the exhibits

 9   so the witness -- so we don't have to borrow -- we don't

10   have to bother the court security officer or fish around for

11   exhibits out of the boxes.

12          So each witness will have a witness binder.  We'll

13   have one for the Court, one for -- Scott Wallace had

14   requested he have a copy, which is fine, one for Yolanda,

15   obviously, and one -- if she wants one, and one for your law

16   clerk.

17          THE COURT:  That will be fine.

18          MR. MOLSTER:  Obviously one for the other side.

19          THE COURT:  All right.  That will be good.  And

20   then what I'll want is -- and this is a courtesy for the

21   other side as well -- the night before each day of trial, I

22   would like a list of the witnesses and in the order you plan

23   to call them.

24          MR. GRANT:  Your Honor, we have a very detailed

25   protocol that we've worked out.  I think it's actually
```

                                                                 12

```
 1   two days before --

 2             MR. MOLSTER:  Three.

 3             MR. GRANT:  No, two days before that they be

 4   announced in the order we're disclosing direct exhibits so

 5   if there's objections, we can try to work them out --

 6             THE COURT:  Excellent.

 7             MR. GRANT:  -- and then bring them to the Court

 8   before the jury.

 9             THE COURT:  Excellent.

10             MR. GRANT:  This is all subject to a relatively

11   detailed stipulation.  I believe that's been filed.

12             MR. MOLSTER:  Yes.  It's a written stipulation

13   that's on file with the Court.

14             THE COURT:  All right.  I will make sure we've

15   pulled that so I'm on top of it as well.  But that's

16   excellent.  Good.

17             MR. MOLSTER:  Your Honor, one thing on exhibits.

18             Judge O'Grady offered that if we wanted to, with

19   certain particular witnesses, we could have binders of, I

20   think he said two or three or four exhibits that we could

21   publish to the jury in a binder for each juror in addition

22   to something on the screen because some people like to look

23   at the hard copy.  He didn't want us to -- you know, not

24   every witness and not a million documents.  I don't know if

25   that's something that is agreeable to Your Honor or not, but
```

13

```
 1   I just thought I'd raise it.

 2          MR. GRANT:  Your Honor, that's not how I recall

 3   Judge O'Grady's offer.  My recollection --

 4          MR. MOLSTER:  There's a transcript.

 5          THE COURT:  Wait.  Let's switch positions.  Again,

 6   I want to train you to be at the microphone, please.

 7          MR. GRANT:  It was tough to get him out of here.

 8          The -- my recollection was Judge O'Grady was less

 9   happy about the witness binders and suggested that a witness

10   binder would be fine as long as it only had a couple of

11   exhibits.  He, I don't think the record will reflect in any

12   way, indicated that those should go to the jury.  Of course

13   the jury will have the record evidence when they deliberate.

14          Given your Court's -- this Court's view on witness

15   binders, then I think it's quite easy.  But I don't think

16   there was any indication that the jurors should get binders

17   during the course of the trial.

18          THE COURT:  Well, let me put it this way:  It's a

19   patent case.  When I've tried other patent cases, we have,

20   in fact, given each juror the patents.

21          MR. GRANT:  For sure.

22          THE COURT:  All right.  Which they should have as

23   the evidence is coming in.  That -- so that would be a juror

24   notebook or package.

25          MR. GRANT:  Agreed.  And we can make juror
```

14

1    notebooks with specific exhibits that either the Court rules

2    or the parties agree should be in there.  But I agree

3    100 percent that the patents should be the first ones in

4    there.

5              THE COURT:  Why don't you, over the weekend,

6    because we've got time, see if you can come to an agreement

7    as to what an appropriate juror packet would be.  And what I

8    would tell the jury, though, I don't want them rummaging

9    through it.  And I'll tell you, jurors, at least in my

10   experience here, have been very, very good in following our

11   instructions.

12             For instance, we, often for transcripts, if we're

13   having a lot of wire tap evidence in the case, we would give

14   them the transcripts in a book but tell them don't turn to

15   the next page until you're directed to do so.

16             So I think if you can come to an agreement.  And I

17   have no problem with jurors having a set of key exhibits in

18   their possession as the trial progresses.

19             MR. GRANT:  We will do so.

20             THE COURT:  All right.

21             MR. MOLSTER:  Excuse me.  Yes, Your Honor.  Thank

22   you.

23             THE COURT:  That's fine.  All right.

24             Okay.  So the next thing we're going to have to

25   address is the technology.

                                                          15

1          Now, I'm assuming that many of the exhibits as

2     they're being discussed -- you're also going to be putting

3     them on the screen; correct?

4               MR. MOLSTER:  That's right, Your Honor.

5               THE COURT:  All right.

6               MR. MOLSTER:  And what we had arranged with

7     Judge O'Grady and Conklin Howard, his law clerk, was that we

8     would have one full set of exhibits in hard copy, which we

9     would deliver to the courtroom, but we would also have hard

10    drives of -- I'm sorry, thumb drives of --

11              THE COURT:  Of exhibits.

12              MR. MOLSTER:  -- exhibits electronically.

13              THE COURT:  Right.  Right.

14              MR. MOLSTER:  And so we were going to give a

15    copy -- I think Conklin wanted a copy, and we're happy to

16    obviously provide one to Mr. Loftus.

17              THE COURT:  And there's nothing unique about that.

18              Documents, however, do not look -- are usually not

19    very clear on the screen unless you've done a really good

20    job with your technology in blowing up the relevant portions

21    and you have them highlighted.  And I would expect that both

22    sides are sufficiently sophisticated that you've done

23    something like that.

24              But I will tell you, I have heard from jurors in

25    the past.  They get very frustrated if an exhibit is a

                                                              16

1    document -- and I think a great deal of this case will be

2    documents -- and they're struggling to see it on the screen.

3    That's a waste of their effort.  So I'm assuming that your

4    technology people have worked that out.

5              MR. GRANT:  We have, Your Honor.

6              THE COURT:  All right.

7              MR. GRANT:  And based on what I've seen in

8    hearings, I'm confident that Reynolds will as well.  And,

9    indeed, our technology person that will be displaying the

10   documents, the hot seat for the trial, is here.  So we're

11   happy to jointly coordinate with the Court and the Court's

12   technical staff as is convenient.

13             THE COURT:  Well, behind you is the evidence

14   presentation system that's used in this court.  All right.

15   So that's where your tech people will be working.  And

16   normally we would have -- there's a chair right next to the

17   table.  So we don't need a table, we don't need a skirt, we

18   don't need a lot of the things that I've seen on your list,

19   because we're going to go over the request for electronics

20   in a minute; all right?

21             MR. GRANT:  Understood.

22             THE COURT:  All right.  But to the extent that you

23   haven't worked on this system -- and I recommend it be tried

24   in this courtroom, because each courtroom is a little bit

25   different.  That's the system that's going to be used.  We

17

1    also, like Judge O'Grady's courtroom, have screens out there

2    in the spectator area.  So any exhibit that is put up can be

3    seen by the public as well as the jury and the Court and the

4    witness.

5            What we don't have -- and I don't know whether

6    much of this will be necessary.  We don't have the

7    technology to capture any marking that a witness does on the

8    screen.  So the -- a witness can highlight on the screen by

9    putting his finger on it, but, unfortunately, we don't have

10   the ability to capture that.  So if anything like that is

11   part of your case, I recommend, if possible, that you have

12   the witness do the highlighting before he comes to court so

13   you have a hard copy of that, or you're going to need to

14   describe it appropriately for the appellate record; all

15   right?

16           MR. MOLSTER:  May we use an easel and flip chart

17   if --

18           THE COURT:  If necessary.  I don't think -- given

19   the distance between where the jury sits, I've not seen

20   easels or flip charts used well in this courtroom, but if

21   you think your person can do it.  The problem is, the

22   witness has to be speaking where we have the microphone.

23           MR. MOLSTER:  Right.

24           THE COURT:  And so it's difficult, frankly, for

25   them to stand up with a pointer.  So it's better not to do

                                                           18

```
 1    it that way; all right?

 2              MR. MOLSTER:  Understood.

 3              THE COURT:  Okay.

 4              MR. MOLSTER:  Do you ever put a screen down here,

 5    a big screen at the end of the jury box for the jury?

 6              THE COURT:  There's one right here.  This wooden

 7    thingy here has a screen that comes up.

 8              MR. MOLSTER:  Oh, great.  Okay.

 9              THE COURT:  So there's a large screen there, and

10    then we have individual boxes.

11              MR. MOLSTER:  And the floor monitors.

12              THE COURT:  Yeah.

13              MR. MOLSTER:  Okay.

14              THE COURT:  And I tell the jurors they can move in

15    the box if they're having trouble seeing.

16              MR. MOLSTER:  Great.  Thank you.

17              THE COURT:  Okay.  Now, in terms of the

18    technology, as I told you all yesterday, I don't allow cell

19    phones in my courtroom.  There will be no cell phones.

20    There will be no hotspots in the courtroom.  I'm giving each

21    side one laptop.  You should be able to have all your data

22    sufficiently on a laptop.

23              The court reporter who I'm going to use is Scott

24    because he's worked with you before.  I understand you've

25    requested daily and also realtime.  I am permitting him to
```

19

```
 1    do realtime.  He's going to give each side, I think it's
 2    two, it might be more than that, but at least two iPads from
 3    which you can retrieve the information.  It's an intranet
 4    connection; it's not an internet connection.
 5            He is going to want those Pads back at the end of
 6    each day of the trial because he has to recharge them, and
 7    then you'll get them the next morning.  All right.  But
 8    that's how we're going to proceed in that respect.
 9            So I think both sides need to redo their requests
10    for authorization because you asked for way too much there.
11            MR. MOLSTER:  Thank you.  We understand.
12            One of the questions -- well, one of the requests
13    was a printer to put in the witness rooms.
14            THE COURT:  I'm sorry?
15            MR. MOLSTER:  A printer to put in the witness
16    rooms.  Not in the courtroom, but just in the witness rooms.
17            THE COURT:  No.
18            MR. MOLSTER:  And we also had a request for a
19    monitor.  We also have our technical --
20            THE COURT:  You have monitors --
21            MR. MOLSTER:  Matt Barns -- Mark Burns.
22            THE COURT:  You have monitors at your table.  All
23    right.  We'll just set those up.
24            MR. MOLSTER:  Very well, Your Honor.
25            THE COURT:  All right.  So you'll resubmit.  So
```

                                                                    20

```
 1    I'm not going to sign the ones because I'd have to cross out
 2    too much stuff.
 3              MR. GRANT:  Understood.
 4              THE COURT:  All right.
 5              MR. MOLSTER:  Understood.  Thank you, Your Honor.
 6              THE COURT:  All right.  Other than that, I want to
 7    make crystal clear, Mr. Grant, so when I leave, I'll ask
 8    Ms. Guyton, my courtroom deputy, to show you the board so
 9    there's no question about backstriking since we had that
10    discussion, or are you 100 percent comfortable with it?
11              MR. GRANT:  Yeah, no.  I just want to understand
12    the Court's procedure.  We just picked a jury, and what the
13    judge did there was put -- to select eight with three
14    peremptories, put 14 in the box and then you select it.  But
15    I understand the Court's process, which is one I'm also
16    familiar with, which is pulling up random jurors rather than
17    us knowing the set from which we're working.
18              I understand.  Of course I've got no problem.
19    It's your court, and we'll do it your way, for sure.
20              THE COURT:  All right.  That's fine.  That's fine.
21              Yes.
22              MR. MOLSTER:  Ms. Parker had a couple of questions
23    about opening statements.  If you wouldn't mind allowing her
24    to address the Court.
25              THE COURT:  Okay.
```

```
 1            MR. MOLSTER:  Thank you, Your Honor.

 2            MS. PARKER:  Good morning, Your Honor.

 3            THE COURT:  I like them short.  I've never seen an

 4    effective opening statement that went more than about

 5    20 minutes.

 6            MS. PARKER:  So that was one of my questions, Your

 7    Honor.  When we had the discussion with Judge O'Grady about

 8    openings, he said that would come out of our time.  You

 9    know, it's going to be a timed trial with the clerk and the

10    parties keeping up with the time.  And we could use whatever

11    we wanted, but he thought somewhere between 30 and

12    45 minutes would be appropriate.

13            Is that consistent with Your Honor's --

14            THE COURT:  I just said 20.

15            MS. PARKER:  -- request?  Pardon?

16            THE COURT:  I just said 20.

17            MS. PARKER:  20.  Okay.

18            THE COURT:  Yep.  All right.

19            MS. PARKER:  In terms of the timing, keeping up

20    with the timing, how would Your Honor like us to proceed in

21    terms of coordinating that with the Court?

22            THE COURT:  Okay.  I've not done that before, so

23    I'm intrigued.  I've thought about doing it.  I've never

24    done it because it seems to me that I would rather just give

25    each side a time frame, and the next day, the plaintiff
```

                                                              22

```
 1    rests.  But I realize the problem with that is that means
 2    cross-examination can throw that off.  So I think, given the
 3    nature of this case and because we are on a tight time
 4    schedule -- and you may have to reevaluate your schedule
 5    because I've given you the -- Friday the 17th we've got to
 6    be done.  And that means all the evidence is in and I've
 7    instructed the jury.  And I suspect it's going to take two
 8    or three hours to instruct the jury, although I'm going to
 9    try to pare down some of those jury instructions.  So that's
10    what you have to be thinking about.  All right.  That's why
11    shortening is important.  All right.
12            Again, repeating what I said yesterday, I
13    understand that there are, what, ten claims over five
14    patents or something like that.  It would be very wise to
15    think about whether you really need all five of those
16    patents, whether you really need all of those claims, even
17    at this point.  It's not uncommon that a case really focuses
18    on two or three core issues.  And given the fact that life
19    is short, everything in life is finite, so are trials,
20    certainly in this court.  It's smart to focus on the
21    essentials.  All right.
22            And so 20 minutes per side for the opening
23    statements.
24            MS. PARKER:  Thank you, Your Honor.
25            In Your Honor's courtroom, do the jurors take
```

23

```
 1    notes?

 2              THE COURT:  Yes.  I let them take notes.

 3              MS. PARKER:  Okay.  From beginning with opening or

 4    beginning with the presentation of evidence?

 5              THE COURT:  When I give them my preliminary

 6    instructions, I give them an instruction about note-taking.

 7    And they get the notes -- they're going to get a little

 8    goody bag with hand sanitizer and bottles of water, et

 9    cetera.  And I give them -- we give them a notebook, and

10    they can take notes, yes.

11              MS. PARKER:  All right.  And this is my last

12    question.

13              THE COURT:  That's all right.

14              MS. PARKER:  So we had submitted, and I think

15    everybody's agreed on the preliminary instructions that

16    Judge O'Grady was going to use.

17              THE COURT:  Uh-huh.

18              MS. PARKER:  Will Your Honor use those same ones,

19    or should we check in with the Court later to find out --

20    what should we expect in terms of the preliminary

21    instructions to the jury?

22              THE COURT:  Well, that's one of the things I'm

23    still going over.  I mean, I give them the basic structure

24    of any civil case.  I give them basically -- but it's a

25    patent case.  So, again, one of the things I'm debating
```

                                                            24

```
 1   about is whether I'm going to use the FJC Tutorial.

 2             How long does that run?

 3             MR. MOLSTER:  I think it's about -- excuse me,

 4   Your Honor.  I think it's about 17 minutes.

 5             THE COURT:  17?

 6             MR. MOLSTER:  I think so.

 7             THE COURT:  Yeah.  I may use it; I may not.  And

 8   I'm certainly not going to duplicate what's there.  So they

 9   only are going to be told what is a patent one time.

10             So I can't tell you exactly at this point what I'm

11   going to be doing.  I will look through the proposed

12   instructions, and I will get back to you, probably by close

13   of business Monday, which ones I'm going to give; or I may

14   say I'm going to give a version of so you have some idea as

15   to what I'm going to do.  Because obviously for opening

16   statements, you may not need to go into that if I've already

17   given it to the jury.

18             MS. PARKER:  Does the podium move during opening?

19   How do we --

20             THE COURT:  Only slightly.  It will move so that

21   you're somewhat angled in their direction, but it's not a

22   super movable -- and our staff does that; you don't touch

23   it.

24             MS. PARKER:  Okay.  Thank you, Your Honor.

25             THE COURT:  Okay.  All right.
```

25

```
 1              MR. GRANT:  Just very briefly, Your Honor.  In

 2     terms of the time limits, that's the way it's done in most

 3     patent cases.  The paralegals keep time.  In the last dozen

 4     trials I've done, there's never been a dispute that rose to

 5     the level of having to bring it to the Court about

 6     reconciling time estimates.

 7              THE COURT:  I have no problem with you all just

 8     working them out once you've revised them, I guess.

 9              MR. GRANT:  We'll do that.

10              THE COURT:  And I'd like to know -- just let me

11     know what your schedule is.

12              MR. GRANT:  For sure.

13              THE COURT:  All right.

14              MR. GRANT:  And we're happy to provide those time

15     hacks to the clerk so everybody knows how it's going.

16              Just in terms of how the Court understands, there

17     are five patents, but there's also four products.  Those

18     patents cover different -- not all of them are co-extensive,

19     and each patent has a different damages analysis associated

20     with it.

21              So I just want the Court to understand that what

22     you'll see in opening is they cover different distinct

23     technologies; they're not related in the sense of covering

24     the same technologies; and the damages numbers for each one

25     is different.
```

```
 1              THE COURT:  I assume you're bringing physicals

 2    into this courtroom?

 3              MR. GRANT:  We will.

 4              THE COURT:  All right.  Yeah.  That's important

 5    for this type of a patent.

 6              MR. GRANT:  Agreed.

 7              THE COURT:  Yeah.  I'm so glad there are no

 8    algorithms.  I have to tell you, I wasn't going to take the

 9    case until I heard it was physicals.  I thought, ah, that's

10    easy.  It's a pleasure to have something, you know, that I

11    can understand.

12              MR. GRANT:  It's an aggressive prediction, Your

13    Honor, but I think you're going to enjoy this trial.

14              THE COURT:  All right.  We'll see.  We'll see.

15              I haven't looked at your proposed voir dire, but I

16    assume you do have questions about people's attitudes

17    towards e-cigarettes and that sort of thing.

18              MR. GRANT:  We do, Your Honor.  And, you know, one

19    of the things that came up with Judge O'Grady was tobacco

20    companies.  But obviously everybody who is a party here is a

21    big tobacco company.

22              THE COURT:  That's right.

23              MR. GRANT:  So I don't see that as being a big

24    issue.

25              THE COURT:  Right.  Okay.  Okay.  All right.
```

```
 1              Yes.
 2              MR. MOLSTER:  Your Honor, you know, to that point,
 3    we're the only ones that are defendants here.  As to the
 4    issue of two tobacco companies, we're the only ones whose ox
 5    can get gored by this jury.
 6              Secondly, I want to raise the issue of
 7    confidential business information.  We raised it with Judge
 8    O'Grady.  We've got some source code issues and other
 9    confidential business information.
10              I think our plan was to try to -- we could put
11    those exhibits under seal and try to talk about them
12    generically.  He was not willing to seal the courtroom in
13    terms of testimony.  I don't know if that's the law of the
14    case also in your --
15              THE COURT:  I would never seal a courtroom for --
16    no, that's not going to happen.  Do the best you can.  I
17    mean, I don't have -- I'm assuming the plaintiff -- are you
18    objecting to any of that?
19              MR. GRANT:  Your Honor --
20              THE COURT:  You don't know yet?
21              MR. GRANT:  I'm confident we'll work it out.  This
22    doesn't worry me at all.
23              THE COURT:  Okay.  That's fine.
24              In terms -- just so I have a sense, how many
25    experts are being called in this case?  You've got -- both
```

28

```
 1   on liability and damages or just on damages?

 2            MR. GRANT:  Liability because a patent case with

 3   distinct technologies.

 4            THE COURT:  All right.

 5            MR. GRANT:  There's also damages and FDA.  So

 6   there's five on our side.

 7            THE COURT:  Five for the plaintiff?

 8            MR. GRANT:  Yes.

 9            THE COURT:  All right.  Mr. Molster, how many

10   experts do you think you've got?

11            MR. GRANT:  Five technical experts and one damages

12   expert.

13            THE COURT:  All right.  And they don't overlap,

14   each expert has their own clear area of expertise?

15            MR. GRANT:  That's my understanding, Your Honor.

16            THE COURT:  All right.  It is my practice -- and

17   you may have stipulated to the curriculum vitae.

18            Is there any fight about the experts in terms of

19   their qualifications?

20            MR. GRANT:  Your Honor, based on what I saw in a

21   related ITC trial, I don't think there's going to be any

22   objection to tendering and qualifying any of the experts.

23            THE COURT:  All right.  That's something that can

24   move the case along.  All right.  And I normally, with

25   experts unless there's some real genuine dispute, accept
```

                                                            29

```
1   people once you've proffered them.  I'm going to call Dr. So
2   and So as an expert in the area of such and such, and his
3   curriculum vitae is Exhibit 32.  That's it.  I don't have
4   them go through where they went to high school and college
5   and all that kind of stuff.  All right.  That shortens the
6   trial.  And I don't know if you had already planned that in
7   your questioning of the witnesses, but, you know, that
8   doesn't limit foundation to the -- you know, their
9   foundations as to how they came to their conclusions or
10  anything like that.  But I want to avoid wasting the jury's
11  time on those peripheral matters; all right?
12            MR. MOLSTER:  Understood, Your Honor.  Thank you.
13            THE COURT:  So is there anything else?  You've
14  seen the courtroom.  I know it's smaller than Judge
15  O'Grady's.  I'm assuming that -- having looked at it, we
16  will give each one of you a witness room where you can store
17  things.  And what we do is we lock up the courtroom -- those
18  rooms overnight so that you can leave your things there.
19            I'm going to try to start the trial at 9:00 after
20  the first day.  As I said, next week, we start Wednesday at
21  10:00 with the jury.  We'll go to 6.  Thursday, hopefully we
22  can get started at 9, go to 6.  Friday we will start at 9
23  and go until noon.  We will not be able to go beyond that
24  because of an investiture that's scheduled for the
25  afternoon.  And then the following week it will be 9 to 6 as
```

```
 1    best we can do.  All right.
 2              I may have a couple of criminal matters I have to
 3    take during the week.  I'm going to take them before 9:00.
 4    That may require some cleaning of your desks, but because
 5    right now this is the only trial I have scheduled, I'm
 6    hoping I can let you leave your things in the courtroom
 7    except for, you know, laptops and equipment that you might
 8    want to actually have locked up.  All right.
 9              So are there any other logistical issues that we
10    need to discuss?  So I've overruled the objection to the
11    case being continued.  It's going to go forward,
12    Mr. Molster, as scheduled starting on Wednesday.
13              MR. MOLSTER:  Understood, Your Honor.  Thank you.
14    I don't think we have anything else.  Thank you very much
15    for meeting with us this morning.
16              THE COURT:  All right.
17              MR. MOLSTER:  We're going to -- just to be clear,
18    we'll arrange a tech run-through with Lance maybe Monday.
19              THE COURT:  Right.  And so make sure that you've
20    gotten the revised technology --
21              MR. MOLSTER:  Request.
22              THE COURT:  -- authorizations because you can't
23    bring anything into the courthouse until you've got that.
24              MR. MOLSTER:  Understood.
25              THE COURT:  And we'll go ahead and enter that.
```

31

1              MR. MOLSTER:  Thank you.

2              MR. GRANT:  Your Honor, I understand we may have

3    some oversized exhibits.  Is it possible that we work

4    directly with your courtroom deputy just to talk logistics?

5              THE COURT:  Talk to Ms. Guyton.  When I leave, you

6    can talk to her about that.

7              MR. GRANT:  Thank you very much.

8              THE COURT:  All right.  And there's some

9    logistical things we've talked about in terms of how things

10   will be delivered to the courtroom.  So you need to stay in

11   court and talk to my staff about that.

12             MR. GRANT:  Of course.

13             THE COURT:  All right.  If there are any

14   last-minute issues that could delay things on Wednesday, you

15   need to file -- if there's, you know, some last-minute

16   glitches that come up, I don't want to take up the jury's

17   time on Wednesday.

18             Actually, we could do it -- I don't have anything

19   scheduled.  We could do them at 9:00 Wednesday morning.  All

20   right.  The point is, I don't want to have to delay the

21   trial because there's some new motion in limine or whatever.

22   I am going to talk to Judge O'Grady or have his staff

23   communicate with him.

24             He's got a draft order that memorializes the

25   rulings he made at your last hearing.  We talked a little

                                                        32

1    bit about them yesterday.  I'm going to make sure that he's

2    comfortable with the draft order.  I've looked at it, I've

3    suggested one change to it.  And if he authorizes me to, I'm

4    going to sign it so that you have it just for the record so

5    you just don't have the transcript.  All right.

6              So is there anything else that we need to address

7    right now?

8              MR. GRANT:  Just one thing, Your Honor.  Since

9    you're communicating with Judge O'Grady and his staff, I

10   would ask that on behalf of both parties you send our best

11   wishes for a speedy recovery.

12             THE COURT:  Thank you.  Thank you.

13             MR. MOLSTER:  Ditto, Your Honor.  Thank you very

14   much.

15             THE COURT:  All right.  Very good.  I'll recess

16   court.  You all stay and work with my staff so the logistics

17   are finished.

18             (Proceedings adjourned at 11:35 a.m.)

19             ----------------------------------

20   I certify that the foregoing is a true and accurate

21   transcription of my stenographic notes.

22

23             _____

24             Stephanie M. Austin, RPR, CRR

25

                                                              33