# EXHIBIT 3

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF VIRGINIA
 3                     Alexandria Division
 4   RAI STRATEGIC HOLDINGS,       :
 5   INC. and R.J. REYNOLDS        :
 6   VAPOR COMPANY,                :
 7      Plaintiffs/                :
 8      Counterclaim Defendants,   :  Case No.
 9    v.                           :  1:20-cv-00393-LO-TCB
10   ALTRIA CLIENT SERVICES LLC;   :
11   PHILIP MORRIS USA INC.; and   :
12   PHILIP MORRIS PRODUCTS S.A.,  :
13      Defendants/                :
14      Counterclaim Plaintiffs.   :
15
16                      CONFIDENTIAL
17     VIDEOTAPED DEPOSITION of JAMES FIGLAR, Ph.D.
18                 Friday, June 3, 2022
19                    6:54 a.m. CST
20   Job No.: 450979
21   Pages: 1 - 175
22   Reported By:  Michelle M. Yohler, CSR, RMR, CRR
```

| | | |
|---|---|---|
| 1 | A That is correct. | 07:02:30 |
| 2 | Q And who is Mr. Araya? | 07:02:30 |
| 3 | A He's the executive vice president of | 07:02:32 |
| 4 | marketing for Reynolds in Winston-Salem. So I had | 07:02:37 |
| 5 | a conversation with him to talk about marketing. | 07:02:42 |
| 6 | If you remember, I think one of my earlier | 07:02:48 |
| 7 | depositions you asked me about Reynolds' | 07:02:49 |
| 8 | marketplace strategy and where their projections | 07:02:54 |
| 9 | were and that I knew what the strategic plan was. | 07:02:56 |
| 10 | And think I alluded to that in earlier | 07:03:00 |
| 11 | depositions, and I wanted an update from Jorge on | 07:03:03 |
| 12 | how those -- how the year went when I wasn't | 07:03:06 |
| 13 | there. And so I got that update at that time in | 07:03:09 |
| 14 | early April. | 07:03:11 |
| 15 | Q Okay. And you also spoke with Mr. Richard | 07:03:12 |
| 16 | Baker [sic]; is that right? | 07:03:18 |
| 17 | A Bakker, yes, that's correct. | 07:03:19 |
| 18 | Q Okay. And who is Mr. Bakker? | 07:03:21 |
| 19 | A He is the CFO of Reynolds American. | 07:03:23 |
| 20 | Q And just -- | 07:03:26 |
| 21 | A Chief financial officer of Reynolds. | 07:03:27 |
| 22 | Q And just -- we'll circle back to it, but | 07:03:30 |

| | | |
|---|---|---|
| 1 | just generally, what did you talk to Mr. Bakker | 07:03:32 |
| 2 | about? | 07:03:34 |
| 3 | A  I wanted -- I specifically wanted to | 07:03:35 |
| 4 | understand how -- well, how did the year go for | 07:03:37 |
| 5 | Reynolds when I was not there in terms of the | 07:03:42 |
| 6 | overall financials of the company. | 07:03:44 |
| 7 | But then I also was interested in -- | 07:03:46 |
| 8 | because I know one of the strategic objectives we | 07:03:48 |
| 9 | had was to try to make sure that the vapor | 07:03:52 |
| 10 | category in total was going to be profitable for | 07:03:59 |
| 11 | Reynolds, and so we talked about -- we talked | 07:04:01 |
| 12 | about that and found out that -- and he was quite | 07:04:03 |
| 13 | happy about it, obviously, that the Vuse portfolio | 07:04:06 |
| 14 | was turning a profit in 2021 and looks to continue | 07:04:10 |
| 15 | to do so moving forward. | 07:04:13 |
| 16 | So that's a -- that was great news from my | 07:04:15 |
| 17 | perspective for the company. | 07:04:19 |
| 18 | Q  And you also talked to, it looks like, | 07:04:20 |
| 19 | Aaron Williams and Elaine Round? | 07:04:32 |
| 20 | A  That's correct. | 07:04:35 |
| 21 | Q  And those are both related to FDA PMTA | 07:04:36 |
| 22 | issues; is that right? | 07:04:42 |

| | |
|---|---|
| 1   BY MR. NAPLES: | 07:30:29 |
| 2       Q   Did Reynolds make any -- reach any | 07:30:29 |
| 3   conclusions about whether using its, kind of, | 07:30:31 |
| 4   surrogate analysis for youth, whether youth are | 07:30:36 |
| 5   more likely to use menthol than regular tobacco | 07:30:41 |
| 6   products? | 07:30:44 |
| 7           MR. QUINLAN:  Object to form.  Beyond the | 07:30:44 |
| 8   scope. | 07:30:47 |
| 9   BY THE WITNESS: | 07:30:48 |
| 10      A   Again, my recollection of the data is the | 07:30:49 |
| 11  answer to that would be, no, that the likelihood | 07:30:53 |
| 12  was the same.  Especially with regard to people's | 07:30:56 |
| 13  preferences going into the survey, right?  So -- | 07:30:58 |
| 14  BY MR. NAPLES: | 07:31:02 |
| 15      Q   Understood.  Let me pause you there for a | 07:31:02 |
| 16  second, Dr. Figlar. | 07:31:04 |
| 17      A   Okay. | 07:31:05 |
| 18      Q   Did -- did Reynolds reach any conclusions | 07:31:05 |
| 19  about whether any particular class of people is | 07:31:08 |
| 20  more likely to use menthol than regular tobacco | 07:31:12 |
| 21  products? | 07:31:16 |
| 22          MR. QUINLAN:  Object to form.  And before | 07:31:17 |

| | | |
|---|---|---|
| 1 | you answer, Dr. Figlar, Mr. Naples, we offered | 07:31:19 |
| 2 | this deposition so that you could learn about the | 07:31:23 |
| 3 | conversations that Dr. Figlar had with his | 07:31:25 |
| 4 | colleagues.  This isn't an opportunity for you to | 07:31:27 |
| 5 | ask Dr. Figlar questions you could have asked him | 07:31:30 |
| 6 | at his past two depositions. | 07:31:32 |
| 7 | I'm going to give you leeway.  I'm not | 07:31:33 |
| 8 | trying to cut you off.  I'm not trying to shut you | 07:31:36 |
| 9 | down.  But, as Dr. Figlar said, he's got to get on | 07:31:39 |
| 10 | a plane tomorrow morning.  You know, it's 2:00 | 07:31:42 |
| 11 | where he is, now 2:30.  We're not going to go for | 07:31:45 |
| 12 | eight hours today to have you ask whatever | 07:31:48 |
| 13 | question you feel like you want to ask about | 07:31:50 |
| 14 | whatever topic you feel like you want to ask him | 07:31:51 |
| 15 | about. | 07:31:54 |
| 16 | We offered him up so you can learn about | 07:31:54 |
| 17 | the conversations.  I've given you plenty of | 07:31:57 |
| 18 | leeway so far.  I just want to note for the record | 07:32:00 |
| 19 | that we're not going to do this all day. | 07:32:00 |
| 20 | Dr. Figlar is not going to stay here until | 07:32:03 |
| 21 | 10:00 p.m. his time.  He's got to get ready to | 07:32:03 |
| 22 | travel for this trial tomorrow. | 07:32:05 |

| | | |
|---|---|---|
| 1 | I just want to note that for the record | 07:32:07 |
| 2 | and objection, beyond the scope. | 07:32:11 |
| 3 | BY THE WITNESS: | 07:32:17 |
| 4 |    A   Can you -- can you rephrase your question, | 07:32:17 |
| 5 | Counselor. | 07:32:17 |
| 6 |       MR. NAPLES: Can I get the question read | 07:32:17 |
| 7 | back, please. | 07:32:17 |
| 8 |       (WHEREUPON, the record was | 07:32:17 |
| 9 | read by the reporter.) | 07:32:39 |
| 10 | BY THE WITNESS: | 07:32:39 |
| 11 |    A   Not that I'm aware of. I mean, we're | 07:32:39 |
| 12 | obviously aware of demographic information with | 07:32:41 |
| 13 | regard to menthol cigarettes, non-menthol | 07:32:44 |
| 14 | cigarettes, vapor products, et cetera, but we | 07:32:50 |
| 15 | don't typically collect that information; that | 07:32:54 |
| 16 | stuff is known in the literature. So -- | 07:32:56 |
| 17 | BY MR. NAPLES: | 07:32:59 |
| 18 |    Q   So, Dr. Figlar, what -- | 07:32:59 |
| 19 |       MR. QUINLAN: Objection. Objection. | 07:33:00 |
| 20 | Objection. Objection. Mr. Naples, I let you cut | 07:33:01 |
| 21 | him off once. You've now cut him off again. The | 07:33:03 |
| 22 | witness was obviously not finished with his | 07:33:06 |

1  BY MR. NAPLES:                                    07:34:54
2     Q  But are you aware of any targeted           07:34:54
3  advertising of menthol products to                07:34:57
4  African-Americans by Reynolds?                    07:34:59
5        MR. QUINLAN:  Object to form.  Beyond the   07:35:02
6  scope.                                            07:35:03
7  BY THE WITNESS:                                   07:35:05
8     A  Currently, no, I don't know -- I don't      07:35:07
9  know of any of that.  And I'm not a marketing     07:35:08
10 person, so no.                                    07:35:11
11 BY MR. NAPLES:                                    07:35:15
12    Q  Historically are you aware of any targeted  07:35:16
13 marketing of menthol products to African-Americans 07:35:18
14 by Reynolds?                                      07:35:20
15       MR. QUINLAN:  Object to form.               07:35:21
16       Mr. Naples, what are we doing here?  I      07:35:22
17 mean, we're talking about historical targeted --  07:35:24
18 potential targeted marketing of African-American  07:35:27
19 menthol combustible cigarette smokers?            07:35:31
20       We are so far afield from the topics that   07:35:34
21 Dr. Figlar is going to testify at this trial, that 07:35:36
22 he's been designated as a 30(b)(6) topic on, that  07:35:39

1  are even relevant at all to this litigation.  And         07:35:42
2  this isn't what we offered him up for a                   07:35:46
3  deposition.                                               07:35:48
4      So, again, I'm not telling you that you               07:35:48
5  can't ask him questions about the conversations he        07:35:51
6  had with his colleagues or reasonable follow-ups          07:35:52
7  about those conversations, but now we're so far           07:35:56
8  afield, how did we even get here?                         07:35:58
9      So, again, I object.  We urge you to focus            07:36:00
10 on the topics that are relevant to this deposition        07:36:03
11 today.  We're not going to do this all day.               07:36:06
12     So that's my objection.                               07:36:10
13     MR. NAPLES:  Can you read my question                 07:36:13
14 back, please.                                             07:36:30
15     (WHEREUPON, the record was                            07:36:30
16 read by the reporter.)                                    07:36:31
17 BY THE WITNESS:                                           07:36:31
18   A   By -- look, by Reynolds, I'm not exactly            07:36:31
19 sure.  Look, we're going back in history, tobacco         07:36:34
20 litigation history, and smoking and health                07:36:41
21 litigation stuff.  I haven't thought about those          07:36:43
22 topics in a long time.                                    07:36:45

| | | |
|---|---|---|
| 1 | MR. QUINLAN: Object to form. Asked and | 07:56:10 |
| 2 | answered at every depo you've taken of Dr. Figlar, | 07:56:13 |
| 3 | and it's beyond the scope of this depo. | 07:56:16 |
| 4 | BY THE WITNESS: | 07:56:18 |
| 5 | A  I'm not quite -- absent -- | 07:56:19 |
| 6 | BY MR. NAPLES: | 07:56:20 |
| 7 | Q  FDA -- | 07:56:21 |
| 8 | A  -- I don't -- I'm not quite sure I | 07:56:21 |
| 9 | understand how you worded that question. | 07:56:23 |
| 10 | I mean, look, I think at the end of the | 07:56:26 |
| 11 | day, if the FDA -- either the FDA is going to | 07:56:28 |
| 12 | authorize the products to continue to be sold or | 07:56:31 |
| 13 | they're not. | 07:56:35 |
| 14 | If they do, Reynolds is going to continue | 07:56:35 |
| 15 | to sell Alto.  If they do not, then Reynolds | 07:56:38 |
| 16 | will -- will go through their full process -- | 07:56:41 |
| 17 | okay? -- because they have due process with regard | 07:56:44 |
| 18 | to, you know, asking for administrative review, | 07:56:46 |
| 19 | blah, blah, blah, blah.  But at the end of the | 07:56:48 |
| 20 | day, if the FDA still refuses to authorize the | 07:56:51 |
| 21 | product, they won't be able to sell it in the | 07:56:53 |
| 22 | United States. | 07:56:55 |

| | |
|---|---|
| 1    MR. QUINLAN:  Object to form.  Beyond the | 08:02:23 |
| 2 scope. | 08:02:26 |
| 3 BY THE WITNESS: | 08:02:26 |
| 4    A   Again, you're asking me to -- you're | 08:02:27 |
| 5 asking me to forecast stock prices.  If I could do | 08:02:29 |
| 6 that, you know, I probably would have retired from | 08:02:32 |
| 7 Reynolds a long time ago. | 08:02:34 |
| 8    But, you know, honestly, I don't know.  I | 08:02:35 |
| 9 think stock prices for large companies are | 08:02:38 |
| 10 dependent on a multitude of factors.  Could it? | 08:02:41 |
| 11 It might.  I don't know. | 08:02:46 |
| 12 BY MR. NAPLES: | 08:02:48 |
| 13    Q   Would you consider the Vuse products in | 08:02:48 |
| 14 this case successful products? | 08:02:50 |
| 15    MR. QUINLAN:  Object to form.  Beyond the | 08:02:53 |
| 16 scope. | 08:02:54 |
| 17    Dr. Figlar -- you haven't asked a question | 08:02:55 |
| 18 that's relevant to his conversations with the five | 08:03:00 |
| 19 individuals, which is why we offered him up for | 08:03:02 |
| 20 this deposition, in about an hour. | 08:03:05 |
| 21    So I'm going to start instructing | 08:03:06 |
| 22 Dr. Figlar not to answer questions unless it's | 08:03:08 |

|   |   |   |
|---|---|---|
| 1 | relevant in some way to his conversations, which | 08:03:10 |
| 2 | is why we offered him up for this deposition. | 08:03:13 |
| 3 | Dr. Figlar has to leave tomorrow for his | 08:03:16 |
| 4 | flight to get here for trial.  I'm not going to | 08:03:19 |
| 5 | keep him there until 9:00, 10:00 at night so you | 08:03:21 |
| 6 | can ask him a bunch of questions you could have | 08:03:25 |
| 7 | asked him at his two other depositions. | 08:03:27 |
| 8 | This is a limited deposition that we | 08:03:29 |
| 9 | offered.  The judge said you could take a limited | 08:03:30 |
| 10 | deposition on the topics of what did he talk to | 08:03:32 |
| 11 | these five people who he talked to after his | 08:03:37 |
| 12 | deposition from Reynolds. | 08:03:39 |
| 13 | So from now on, every question that you | 08:03:40 |
| 14 | ask that's not even tangentially related to that, | 08:03:42 |
| 15 | I'm going to instruct Dr. Figlar not to answer. | 08:03:45 |
| 16 | MR. NAPLES:  Were you at the hearing, | 08:03:47 |
| 17 | Mike? | 08:03:49 |
| 18 | MR. QUINLAN:  I was. | 08:03:49 |
| 19 | MR. NAPLES:  You were.  Were you -- so you | 08:03:50 |
| 20 | were there when the judge said the kind of stuff | 08:03:52 |
| 21 | that Reynolds pulled is the kind of thing that | 08:03:53 |
| 22 | gets people disbarred, right?  Were you there for | 08:03:57 |

| | | |
|---|---|---|
| 1 | it out. | 08:05:25 |
| 2 |     Please read back the questions, Ms. Court | 08:05:25 |
| 3 | Reporter. | 08:05:27 |
| 4 |     (WHEREUPON, the record was | 08:05:53 |
| 5 | read by the reporter.) | 08:05:55 |
| 6 |     MR. QUINLAN:  Object to form. | 08:05:55 |
| 7 | BY MR. NAPLES: | 08:05:57 |
| 8 |   Q  You can answer, Doctor. | 08:05:57 |
| 9 |   A  Yes. | 08:05:59 |
| 10 |   Q  Why? | 08:06:00 |
| 11 |     MR. QUINLAN:  Object to form. | 08:06:02 |
| 12 | BY THE WITNESS: | 08:06:03 |
| 13 |   A  People buy them and use them and enjoy | 08:06:05 |
| 14 | them. | 08:06:08 |
| 15 | BY MR. NAPLES: | 08:06:08 |
| 16 |   Q  Why are they successful for Reynolds? | 08:06:08 |
| 17 |     MR. QUINLAN:  Object to form.  I instruct | 08:06:11 |
| 18 | Dr. Figlar, don't answer the question.  It's | 08:06:13 |
| 19 | beyond the scope.  We're not going to do this. | 08:06:15 |
| 20 | You're not going to be here all night. | 08:06:17 |
| 21 |     So, Dr. Figlar, I instruct you not to | 08:06:19 |
| 22 | answer. | 08:06:21 |

```
 1   BY MR. NAPLES:                                      08:06:22
 2      Q  You can answer the question, Dr. Figlar.      08:06:22
 3      A  I've been instructed not to.  I usually       08:06:24
 4   follow the counsel's --                             08:06:27
 5      Q  You're the -- you're the client here, so      08:06:30
 6   you get to do whatever you want.  You don't have    08:06:31
 7   to take his advice.                                 08:06:33
 8      A  Understood.  I won't answer this one.         08:06:36
 9      Q  You're not going to answer if the Vuse        08:06:38
10   products are successful?                            08:06:40
11         MR. QUINLAN:  He's not going to answer the   08:06:42
12   question because I told him not to because we're    08:06:43
13   so far afield of why we offered this deposition.    08:06:46
14   BY MR. NAPLES:                                      08:06:46
15      Q  How about, let me do it this way:             08:06:50
16   Dr. Figlar, when you retired at the end of          08:06:52
17   December 2020, why, in your view, were the Vuse     08:06:56
18   products successful?                                08:07:03
19      A  Because they were an alternative to           08:07:06
20   combustible cigarettes that are likely less         08:07:12
21   hazardous than smoking cigarettes.  And they were   08:07:15
22   the -- in my opinion, probably one of the best      08:07:17
```

| | | |
|---|---|---|
| 1 | already know when you left Reynolds at the end of | 09:01:14 |
| 2 | 2020? | 09:01:17 |
| 3 | A  Yeah, again, just confirmation of | 09:01:17 |
| 4 | what -- what I already knew.  So I got a little | 09:01:19 |
| 5 | bit more detail because I asked her, well, you | 09:01:22 |
| 6 | know, how did -- you know, how did the Vuse Solo | 09:01:25 |
| 7 | application look?  What were -- what were FDA's, | 09:01:27 |
| 8 | you know, kind of, critiques. | 09:01:30 |
| 9 | The only thing that I -- I guess I didn't | 09:01:32 |
| 10 | know was, in essence, FDA wants even more | 09:01:35 |
| 11 | information with regard to non-tobacco flavors. | 09:01:38 |
| 12 | So you're talking about the berries-type flavors. | 09:01:41 |
| 13 | It's going to be a significant more -- | 09:01:46 |
| 14 | significantly more information's going to be | 09:01:52 |
| 15 | needed before FDA is going to approve -- not | 09:01:55 |
| 16 | approve -- authorize those types of flavors. | 09:01:57 |
| 17 | And so I kind of knew that going in, but | 09:02:01 |
| 18 | that was confirmation from my perspective from her | 09:02:08 |
| 19 | and FDA, you know, through -- through the | 09:02:12 |
| 20 | application process. | 09:02:14 |
| 21 | Q  How did she say the Vuse Solo looked -- | 09:02:15 |
| 22 | the Vuse Solo application looked? | 09:02:19 |

| | | |
|---|---|---|
| 1 | A  Well, I mean, it's great -- right? -- I | 09:02:22 |
| 2 | mean, it was authorized.  The tobacco flavors were | 09:02:24 |
| 3 | authorized.  So I learned through her that they | 09:02:26 |
| 4 | weren't going to approve menthol because it looks | 09:02:29 |
| 5 | like it's going to be more of a global-type | 09:02:33 |
| 6 | decision. | 09:02:36 |
| 7 | And that the non-tobacco flavors, it | 09:02:37 |
| 8 | wasn't going to be like what we had in our | 09:02:39 |
| 9 | application -- right? -- they're going to want | 09:02:41 |
| 10 | individual data -- you know, even though they | 09:02:44 |
| 11 | talked about bridging, and we talked about | 09:02:46 |
| 12 | bridging in our depositions, and the FDA approved | 09:02:48 |
| 13 | of our -- not approved, but they liked our | 09:02:52 |
| 14 | bridging strategy going in, but ultimately, it | 09:02:55 |
| 15 | wasn't enough for them. | 09:02:59 |
| 16 | So there's going to be a lot more data | 09:03:00 |
| 17 | that's going to be needed if you have an | 09:03:02 |
| 18 | expectation to getting a non-tobacco flavor | 09:03:04 |
| 19 | authorized through the agency.  So I learned that | 09:03:06 |
| 20 | through her. | 09:03:09 |
| 21 | Q  Okay.  Mr. Araya, same question, can you | 09:03:10 |
| 22 | just tell me what Mr. Araya told you that you | 09:03:17 |

```
1        C E R T I F I C A T E   O F   R E P O R T E R

2

3        I, MICHELLE M. YOHLER, a Certified

4   Shorthand Reporter within and for the County of

5   Will, State of Illinois, do hereby certify:

6        That previous to the commencement of the

7   examination of the witness, the witness was duly

8   sworn to testify the whole truth concerning the

9   matters herein;

10       That the foregoing deposition transcript

11  was reported stenographically by me, was

12  thereafter reduced to typewriting under my

13  personal direction and constitutes a true record

14  of the testimony given and the proceedings had;

15       That the said deposition was taken

16  remotely before me at the time and place

17  specified; revie was not waived.

18       That I am not a relative or employee or

19  attorney or counsel, nor a relative or employee of

20  such attorney or counsel for any of the parties

21  hereto, nor interested directly or indirectly in

22  the outcome of this action.
```

1     IN WITNESS WHEREOF, I do hereunto set my

2 hand and affix my seal of office at Chicago,

3 Illinois, this 3rd day of June, 2022.

_____

Michelle M. Yohler, CSR, RMR, CRR

Certified Shorthand Reporter

CSR No.: 84-4531