**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

RAI STRATEGIC HOLDINGS, INC. and
R.J. REYNOLDS VAPOR COMPANY,

Plaintiffs and Counterclaim Defendants,

     v.

ALTRIA CLIENT SERVICES LLC; Philip
Morris USA INC.; and Philip Morris
PRODUCTS S.A.,

Defendants and Counterclaim Plaintiffs.

Case No. 1:20-cv-00393-LMB-TCB

**REYNOLDS'S OBJECTIONS TO THE COURT'S PROPOSED FINAL JURY**
**INSTRUCTIONS AND VERDICT FORM**

Defendant Reynolds respectfully submits the following objections and suggested revisions

to the Court's proposed final jury instructions (attached as Exhibit 1) and verdict form (attached

as Exhibit 2).  Reynolds preserves its objections (*see* Dkt. 1315) to the parties' Joint Proposed

Final Jury Instructions (Dkt. 1204-1) and to Philip Morris's additional proposed instructions (Dkt.

1314) to the extent they are not reflected in the Court's proposed instructions.

**I.     DOCTRINE OF EQUIVALENTS**

For the reasons that follow, the proposed instructions and verdict form questions on

doctrine of equivalents are unnecessary (in the case of the '265 patent) or legally unsupportable

(in the case of the '911 patent).

**A.     The '265 Patent**

At trial, Philip Morris's expert on the '265 patent, Dr. Walbrink, offered a doctrine of

equivalents opinion on only one claim term—"vaporizer membrane."  *See* June 9, 2022 (AM) Trial

1

Tr. 16–17 ("I find it does include a vaporizer membrane. And even if you weren't to find it literally included in there, it also meets the requirements underneath an analysis called the doctrine of equivalents.").  To streamline the issues for the jury, Reynolds proposes the following stipulation be read to the jury, contingent on the Court's removing the doctrine of equivalents question from the verdict form (Ex. 2, Section I, Question 2):

> R.J. Reynolds Vapor Company stipulates that VUSE Alto contains a vaporizer membrane as disclosed in Claim 1 of the '265 patent (PX-002, column 9, lines 42, 47–48).

With this stipulation, the doctrine of equivalents is no longer relevant to Philip Morris's claim of infringement of the '265 patent, and the question on this theory of infringement should be removed from the Court's verdict form.

### B.       The '911 Patent

Similarly, Philip Morris's expert on the '911 patent, Dr. Abraham, offered a doctrine of equivalents opinion on only one claim term, "cavity," for the Alto product.  *See* June 8, 2022 (PM) Trial Tr. 74 ("I think the Alto literally does have the claimed cavity. As I've shown from the documentation, the engineering CAD drawings, and my own investigation, but if it's decided that they don't literally have the cavity, they would also infringe under something called the doctrine of equivalents ….").  However, Dr. Abraham offered only a literal infringement opinion on the claim term, "blind hole":

> Q. Let's turn, then, to that fifth part of Claim 1. What did you find for Alto, Dr. Abraham?
>
> A. In my investigation I found that the Alto had the fifth part of the claim as well.
>
> Q. Okay. Let's go to the next demonstrative, 65. Tell the jury how you know that.
>
> A. On the screen you see photograph PX 38 at page 34, that's a photograph that I took, and I've got a white box around an area that I want to draw your attention to. On the right-hand side is an image from the CAD file, PX 265A, and I found that their device has a cavity in a wall of the aerosol-forming chamber with an

open end and a closed end and a longitudinal direction, and I also found it's a blind hole because you can't see the cavity if you're from the perspective of the red eyeball.

Q. And is that that same "blind hole" term, the one you referenced earlier with that passage from the patent?

A. Yes, it is.

Q. Let's go to the next demonstrative, Dr. Abraham, Number 66. So in summary, what do you find about this fifth part of Claim 1, the one that talks about the blind hole for the Alto?

A. I find that the Alto has the fifth part of Claim 1.

*Id.* at 75–76.

Dr. Abraham also testified that the blind holes of the '911 patent are a type of cavity, one that you cannot see because they are inside the device and do not "go all the way through the wall." *Id.* at 38 ("Imagine you've got a device and instead of looking at it this way, you look at it this way. You don't see those cavities because they're inside. They don't go all the way through the wall, so that's what a blind -- that's what a cavity being a blind hole means."); *see also id.* at 40 ("these are just two different ways that the patent describes these blind hole cavities"). That testimony accords with the language of claim 1, which discloses that "the at least one cavity is a blind hole," '911 Patent, 18:22, and the prosecution history of the '911 patent, which shows that Philip Morris narrowed the application by defining the claimed cavity as a blind hole. *See* June 10, 2022 (AM) Trial Tr. 20 ("So originally in the patent application, the words 'blind hole' were not in there"); *id.* at 21 ("So what happened is the patent examiner objected saying that Rose disclosed cavity, and in Philip Morris's argument to the Patent Office they defined what defines "non-blind.").

The blind hole as described in the '911 patent is thus a type or subset of cavity, and a product can only infringe if it contains a cavity *that is* a blind hole. In this situation, an equivalent

to a cavity cannot also be a literal blind hole.  Consider the scenario where the jury determines that the Alto has a cavity only under the doctrine of equivalents.  It still has to find that the same Alto cavity is a blind hole.  Because there is no basis in the record for the jury to find that the Alto has an equivalent to a blind hole, the jury can find infringement only if the Alto has a literal blind hole.  And, the jury cannot find the Alto has a literal blind hole (a subset of cavity) where it has already found it does not have a literal cavity.  The doctrine of equivalents has no role to play in the jury's resolution of infringement claim as to the '911 patent.

If the Court agrees, then the question on doctrine of equivalents for the '911 patent (Ex. 2, Section II, Question 2), should be omitted from the verdict form.  If both the '265 and '911 doctrine of equivalent questions are omitted from the verdict form, then the Court should omit the corresponding instruction on doctrine of equivalents.  Ex. 1, Instr. No. 21, at 23–24.

## II.      APPORTIONMENT

Reynolds objects to the omission of its proposed Final Instruction No. 51 (as filed in Dkt. 1204-1 at 113) ("Reasonable Royalty – Apportionment").  Apportionment remains an issue in this case because it is part of Philip Morris's burden to prove damages.  The jury need not believe Mr. McAlexander's apportionment opinion.  *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005).  Indeed, the jury has heard evidence significantly undercutting that apportionment opinion.  The jury should be permitted to assess Mr. McAlexander's apportionment under the law as instructed by the Court.  Reynolds therefore preserves its objection as stated during the charge conference.  June 13, 2022 (PM) Trial Tr. at 40:3-13.

## III.     REYNOLDS'S PROPOSED CHANGES TO PROPOSED FINAL JURY INSTRUCTIONS

Reynolds respectfully submits the following edits to the Court's proposed Jury Instructions of June 13, 2022 (Exhibit 1):

***Instruction No. 10:***  Reynolds suggests that the Court omit "or done" (line 2), "or other conduct" (line 5), "or other conduct" (line 6), and the entire third paragraph (a single sentence beginning "An act or omission") to conform to the Court's ruling to omit references to inconsistent conduct.  6/13/22 Tr. 44:23-45:1.

***Instruction No. 12:***  Reynolds requests that the first statement of the issue be revised to read: "Has Philip Morris proven by a preponderance of the evidence that the VUSE Alto directly infringes the specified claims of the '265 Patent and that the VUSE Solo G2 or VUSE Alto directly infringes the specified claims of the '911 Patent."  This change reflects that only the VUSE Alto has been accused of infringing the specified claims of the '265 Patent.

Reynolds further requests that the Court replace "infringement, validity, and damages" (lines 14-15) with "infringement and validity," since licensing and patent ownership are relevant to the factors listed in Instruction No. 35.

***Instruction No. 24:***  Reynolds requests that the Court replace "that is, you must be left with a clear conviction that the particular claim is invalid" with "which means that Reynolds must show that it is highly probable that the claim is invalid," to conform to the Court's ruling on Instruction No. 13.  *See* 6/13/22 Tr. 45:8-11.

***Instruction No. 27:***  Reynolds proposes deleting this instruction, as the parties do not dispute that the prior art references in this case are printed publications.

***Instruction No. 30:***  Reynolds suggests replacing "asserted patents that Reynolds contends is obvious" with "'911 Patent."

Dated: June 14, 2022

Respectfully submitted,

/s/ David M. Maiorana

Stephanie E. Parker
JONES DAY
1221 Peachtree Street, N.E.
Suite 400
Atlanta, GA 30361
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
Email: separker@jonesday.com

David M. Maiorana (VA Bar No. 42334)
Ryan B. McCrum
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: dmaiorana@jonesday.com
Email: rbmccrum@jonesday.com

Anthony M. Insogna
JONES DAY
4655 Executive Drive
Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200
Facsimile: (844) 345-3178
Email: aminsogna@jonesday.com

John J. Normile
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: jjnormile@jonesday.com

William E. Devitt
JONES DAY
77 West Wacker
Suite 3500
Chicago, IL 60601
Telephone: (312) 269-4240
Facsimile: (312) 782-8585
Email: wdevitt@jonesday.com

Alexis A. Smith
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 243-2653
Facsimile: (213) 243-2539
Email: asmith@jonesday.com

Sanjiv P. Laud
JONES DAY
90 South Seventh Street
Suite 4950
Minneapolis, MN 55402
Telephone: (612) 217-8800
Facsimile: (844) 345-3178
Email: slaud@jonesday.com

Charles B. Molster
THE LAW OFFICES OF
CHARLES B. MOLSTER, III PLLC
2141 Wisconsin Avenue, N.W. Suite M
Washington, DC 20007
Telephone: (202) 787-1312
Email: cmolster@molsterlaw.com

*Counsel for RAI Strategic Holdings, Inc. and R.J. Reynolds Vapor Company*

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of June, 2022, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

*/s/ David M. Maiorana*
David M. Maiorana (VA Bar No. 42334)
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: dmaiorana@jonesday.com

*Counsel for RAI Strategic Holdings, Inc. and R.J. Reynolds Vapor Company*
